Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiffs and the Proposed Class

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | CASE No.: 2:15-CV-05146-CAS (JEMx)<br>c/w: 2:15-CV-05173-CAS (JEMx)<br><br>**JOINT STIPULATION IN CONNECTION WITH PLANTIFFS' MOTION TO COMPEL**<br><br>CLASS ACTION<br><br>JUDGE: Hon. John E. McDermott<br>Hearing Date: March 14, 2017<br>Time: 10:00 a.m.<br>Complaint Filed: July 8, 2015<br>Discovery Cut-Off:   December 31, 2017<br>Pretrial Conference Date:   None<br>Trial Date:   None |

# TABLE OF CONTENTS (Civ. L. R. 37-2.1)

I.   Plaintiffs' Introduction ....................................................................3

II.  Defendants' Introduction...............................................................3

III. Documents Concerning the 2015 Audit .........................................6

    A.   Plaintiffs' Position ...............................................................6

    B.   Defendants' Position.............................................................9

        1.   Background Facts .......................................................9

        2.   The Requested Post-Class Period Documents Are Not
            Relevant ...................................................................10

            a.   Post-Class Period Documents Cannot Provide
               Contemporaneous Evidence of Falsity or Scienter .......10

            b.   Post-Class Period Documents Created After New
               Developments or Containing "Hindsight" are not
               Relevant........................................................11

        3.   The Theoretical Relevance of the Requested Discovery is
            not Proportional to the Needs of the Case Given the Burden
            of Expanding an Already Lengthy Production Period ...........15

IV.  The Relevant Requests and Responses ........................................17

JOINT STIPULATION IN CONNECTION WITH PLAINTIFFS' MOTION TO COMPEL – No. 2:15-CV-05146-
CAS (JEMx)

## I.  Plaintiffs' Introduction

Plaintiffs' Requests for Production of Documents (the "Requests") were served in July 2016. The Parties have engaged in exhaustive discussions to resolve their disputes. The parties have met and conferred at least four times, and exchanged at least 5 lengthy letters. In addition, Defendants amended their initial responses to the Requests. As a result of these discussions, the Parties have eliminated very nearly all of their disputes. There remains only one.[1]

The class period in this securities class action is March 30, 2011 through July 6, 2015. The parties disagree about whether Defendants should be required to produce documents created in the course of the audit of Silver Wheaton Corp.'s ("SW" or "Silver Wheaton") 2015 financial statements, which took place nine months after the close of the Class Period. While Defendants claim such documents are not relevant, Plaintiffs' expert confirms that following the Canada Revenue Agency's ("CRA") formal reassessment of Silver Wheaton of $207 million in back taxes in July 2015, in preparing the 2015 year-end financial statements Silver Wheaton would be required to determine the likelihood that it would overcome the CRA's Reassessment on appeal. To do so, it would have to obtain a legal opinion and disclose it to its auditor. This analysis, coupled with any other non-privileged analysis, is highly relevant to Plaintiffs' claims.

## II.  Defendants' Introduction

This case is a securities class action arising under Section 10(b) and Rule 10b-5 of the Securities Exchange Act.   It is predicated upon an audit of Silver Wheaton Corp. ("Silver Wheaton" or the "Company"), a Canadian company, conducted by the Canada Revenue Agency ("CRA") between October 2009 and

---

[1] At the time the Joint Stipulation was served, the Parties disagreed on two matters, but they were able to resolve one disagreement after service but before filing of the Joint Stipulation, which has been edited to reflect the resolution.

JOINT STIPULATION IN CONNECTION WITH PLAINTIFFS' MOTION TO COMPEL – No. 2:15-CV-05146-CAS (JEMx)

July 2015 of the Company's international transactions that occurred between 2005-2010.   The Company's international transactions are conducted by its Cayman Islands subsidiary, Silver Wheaton (Caymans) Ltd. ("SW Cayman"). On July 6, 2015, the Company announced that it had received a proposal letter from the CRA (official notices of reassessment were issued on September 24, 2015).   The Company promptly contested the reassessments and, in January 2016, filed an appeal against the CRA in the Tax Court of Canada.   Whether Silver Wheaton has any liability to the CRA for Canadian taxes will ultimately, and appropriately, be decided by the Canadian courts.

Plaintiffs allege that, during the purported class period of March 30, 2011 to July 6, 2015, Silver Wheaton's financial statements were false and misleading because the Company should have accounted differently for, or made further disclosures about, a potential tax liability that could arise out of the CRA audit. Plaintiffs further contend that Defendants' accounting decisions during the class period with respect to a potential CRA liability were made with scienter, *i.e.*, were intentionally fraudulent or deliberately reckless.   Thus, the issues relevant to this case are Defendants' accounting decisions and state of mind with respect to a potential liability for the CRA audit between March 2011 and July 2015.

As a result of extensive meet and confer negotiations, the parties reached agreement with respect to virtually all of the Requests.   Indeed, based on correspondence from Plaintiffs in September 2016, Defendants believed the parties had reached agreement with respect to the issue that is the subject of this motion – the production time period for the contested Requests.   Depending on the specific request, Defendants have agreed to extremely broad production time periods dating back to 2005 (the first year subject to the CRA audit) for certain requests and extending through September 24, 2015 (three months after the class period ends when the reassessments were issued) for certain requests.

Defendants have also compromised with respect to this motion.    Plaintiffs originally sought both pre- and post-class period documents in response to Requests 1-5 and 34.    Although Defendants disagree regarding the relevance of the pre-class period documents, Defendants agreed to produce pre-class period documents dating back to October 2009 – more than one year before the class period begins – thereby increasing the total production period for the Requests at issue to nearly six years.

Plaintiffs nevertheless continue to demand that Defendants produce documents created up to nine months after the end of the class period that concern the Company's audit of 2015, which concluded at the end of March 2016. Plaintiffs argue that the documents are relevant because the Company was required to make a new evaluation in March 2016, when it filed its 2015 annual financial statements, about whether its accounting for a potential CRA liability in prior years was proper.    This argument fails because there is no basis to believe the Company or its auditors (Deloitte) concluded there was anything incorrect in the prior financial statements.    The Company has not restated or otherwise amended any of its class period financial statements, and Deloitte stands by its prior clean audit opinions issued during the class period.    Thus, there is no basis to believe anything in the later documents would bear upon class period accounting decisions or Defendants' state of mind.    Moreover, since the end of the class period, the landscape has changed dramatically.    The notices of reassessment were issued in September 2015 and, in January 2016, the Company filed an appeal in the Tax Court of Canada.    Thus, the Company's evaluation in March 2016 of the potential liability arising out of the CRA reassessments was based upon new information that did not exist and thus has no bearing on the Company's evaluations during the class period.

Plaintiffs also argue that documents created through March 2016 might

show whether the Company withheld relevant information from its auditors. This is rank speculation.    Plaintiffs have no basis to allege that the auditors did not understand the operative facts about the operations of the Company and its Cayman subsidiary.    As noted, the Company's prior financial statements have not been restated, and the auditors stand by their prior clean audit opinions.    That would not be the case if material facts had been misrepresented to the auditors.

Finally, significant burden and expense would be imposed on Defendants if they now were required to produce documents for the expanded time period.    In reliance on the prior negotiations and correspondence with Plaintiffs, Defendants collected enormous volumes of paper and electronic information.    If production were ordered for the later period, Defendants would be required to re-collect additional paper and electronic information from the same custodians, which is time intensive and costly.    The additional information would also have to be processed and reviewed, which adds to the burden and expense.    This additional burden outweighs any speculative or theoretical relevance the requested information may have.

## III.  Documents Concerning the 2015 Audit

### A. Plaintiffs' Position

Silver Wheaton is a Canadian company with principal offices in Vancouver, Canada. Silver Wheaton is in the streaming business, meaning that it purchases contracts to buy the future precious metals production of mines throughout the world. During the 2005 to 2010 tax period, more than 90% of Silver Wheaton's revenue was derived from streaming contracts entered into by its Cayman Islands subsidiary ("SW Cayman") even though all of the financing, identification, evaluation and negotiation of the contracts was done by SW's Canadian company ("SW Canada"). For tax purposes, SW attributed all of the income from its SW Cayman contracts to SW Caymans. It paid no income tax on this purportedly non-

Canadian income.

Canadian tax laws regulate transactions between in-country and out-of-country related parties like parents and subsidiaries. In such transactions, the Canadian taxpayer must show that the transaction's terms were those that would have been reached by arm's-length parties and that the primary purpose of the arrangement is not to avoid income taxes. The Complaint alleges that Silver Wheaton ran afoul of these regulations because SW Caymans was no more than a conduit set up and controlled SW Canada to evade Canadian tax laws – making no important decisions of its own, contributing little actual work, and risking little independently of SW Canada. In fact, until 2007, "SW Caymans" was just a desk in another Cayman Islands firm which ran SW Caymans' operations for a flat fee of $2,000/month.

In its Class-Period financial statements, Silver Wheaton was required to consider whether any tax position taken would stand up to an audit. So long as such a reassessment was possible, i.e., not "remote", SW was required to disclose, among other things, the fact of an uncertain tax position liability, and the approximate amount it would face if its taxes were reassessed. ¶132 (citing International Financial Reporting Standards ("IFRS") 12 and 37¶86). If it was *probable* that SW's taxes would be reassessed, SW was required to record a contingent tax liability on its balance sheet. ¶131 (citing IAS 12 and 37). Accordingly, Silver Wheaton was required to consider, for all Class Period financial statements, whether the CRA was likely to reassess its taxes, and was required to make disclosures to its auditor.

On July 6, 2015, Silver Wheaton disclosed that the CRA had reassessed Silver Wheaton's 2005-2010 taxes, imposing back taxes, interest, and penalties of $207 million. The actual assessments were received in September and this was disclosed in Silver Wheaton's 2015 year end financials. In preparing the year end

financials and the interim financials Silver Wheaton would be required to consider whether an accrual would be required for income taxes for previous years based on managements' assessment of their transfer pricing tax position and the probability of success of their objection of the assessment. Silver Wheaton was thus required to evaluate whether it was likely that its transfer pricing arrangements with SW Caymans violated Canadian tax law and was likely to draw a tax penalty for not only the year ended December 31, 2015, but also for the 2005 through 2010 tax years. Faced with new circumstances – the Reassessment – Silver Wheaton was required to obtain evidence concerning whether the Reassessment would be upheld by Canadian courts. In fact, Silver Wheaton was required to obtain (and disclose to its auditor) a formal legal opinion concerning the appeal. Dineley Dec. ¶14. Accordingly, as Plaintiffs' expert has told them, such documents are necessary to the expert's analysis as to whether Silver Wheaton's accounting for its uncertain tax position liability violated applicable accounting standards. Dineley Dec. ¶13.

During this discussion, information that Silver Wheaton had withheld from its auditor may have surfaced. As Judge Snyder held, such information may be highly probative of scienter. *In re Silver Wheaton Corp. Sec. Litig.*, No. CV15-5146-CAS(JEMX), 2016 WL 3226004, at *12 (C.D. Cal. June 6, 2016) ("[E]vidence that defendants hid information from their independent auditors provides further proof of scienter.") Accordingly, Plaintiffs are entitled to documents from the 2015 audit of Silver Wheaton's financial statements.

Defendants have cited the burden of production. Plaintiffs are mindful of the burden on Defendants. Plaintiffs have told Defendants they are willing to narrow search terms for the period between July 2015 and March 2016 to reduce Defendants' burden of reviewing and producing documents. But to allow

Defendants to categorically evade production of these potentially highly relevant documents goes too far.

Defendants have also claimed that documents from outside the Class Period are not relevant. But the Class Period does not define the universe of relevant documents. Rather, "[a]ny information that sheds light on whether class period statements were false or materially misleading is relevant." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001); *accord In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 272 (3d Cir. 2005) *and Pub. Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972, 989 (8th Cir. 2012); *see also Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 970 (N.D. Cal. 2005) ("The proposed class period dates function only to define the plaintiff class, not to restrict the universe of relevant or actionable facts in this case.")

**B. Defendants' Position**

   **1.  Background Facts**

Silver Wheaton is a Canadian company that is the largest pure precious metals streaming company in the world.   Silver Wheaton is the parent of a group of companies, including SW Caymans, which enter into "streaming agreements." A streaming agreement is a long-term agreement to purchase silver or gold that may later be produced in consideration for an upfront payment and an additional per ounce payment on delivery of the silver or gold.   Such silver and gold is then sold to generate revenue.   Silver Wheaton enters into streaming agreements in respect of mines located in Canada; SW Cayman enters into streaming agreements in respect of mines located outside of Canada in countries such as Mexico, Brazil, Peru, Sweden and Greece.

During 2005-2010, the years at issue in the CRA reassessments, and subsequently, the Company provided or contracted others to perform certain services for SW Cayman; SW Cayman paid fees to Silver Wheaton for such

services totaling in excess of Cdn$33 million.   PricewaterhouseCoopers ("PwC") has prepared annual transfer pricing studies for the Company, which confirm that the Company's treatment of SW Caymans is consistent with Canadian transfer pricing tax law.

Throughout the relevant period, the Company's public filings in both Canada and in the U.S. with the SEC contained detailed descriptions of its corporate structure and operations, including the fact that profit earned by SW Cayman is subject to the Cayman Islands' 0% tax rate.   Deloitte has audited Silver Wheaton since 2004.   Its audit reports have consistently opined that the Company's consolidated financial statements present fairly its financial condition and comply with applicable accounting standards.   The Company disclosed the existence of the CRA audit to Deloitte and PwC when it began in the fall of 2009. It publicly disclosed the CRA audit in its SEC filings beginning in March 2012.

### 2.   The Requested Post-Class Period Documents Are Not Relevant

#### a.     Post-Class     Period     Documents     Cannot     Provide     Contemporaneous Evidence of Falsity or Scienter

To establish two of the essential elements of a Section 10(b) claim – that Defendants made a false or misleading statement and acted with scienter – Plaintiffs must establish that Defendants were aware of *contemporaneous* information that rendered the challenged statement knowingly false when made. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008) (a strong inference of scienter may only be shown through "specific *contemporaneous statements or conditions* that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements *when made*.") (emphasis added) (citation omitted).   It is well-established that hindsight does not suffice to state the requisite elements of a Section 10(b) claim.   *See Morgan v. AXT, Inc.*, No. C 04-4362 MJJ, 2005 WL 2347125, at *14 (N.D. Cal. Sept. 23,

2005) (ruling on motion to dismiss; company's post-class period decision to write-off $2.1 million "does not necessarily read back on what the Company should have done, but did not do, during the Class Period, or on the falsity of the Company's financial statements during that period"; "This is a classic example of pleading fraud by hindsight . . ..").

The challenged financial statements were issued between March 2011 and March 2015.   To establish that these financial statements were false, Plaintiffs must show that Defendants possessed *contemporaneous* information that rendered each financial statement false at the time it was made and *contemporaneous* information showing that Defendants acted with scienter.

As discussed above, Defendants have already agreed to produce an extensive volume of documents pre-dating the class period in response to Requests 1-5 and 34, thereby increasing the total production period for those Requests to nearly six years.   The relevance of the documents Plaintiffs now seek by this Motion – nine months of post-class period documents pertaining to the Company's preparation of its fiscal year 2015 financial statements in 2016 – is so attenuated and speculative that the Court should not order further production.

### b. Post-Class Period Documents Created After New Developments or Containing "Hindsight" are not Relevant

Plaintiffs assert that the requested post-class period documents would assist their expert's analysis "as to whether Silver Wheaton's accounting for its uncertain tax position liabilities violated applicable accounting standards" because, in preparing fiscal year 2015 financial statements, "Silver Wheaton would be required to consider whether an accrual would be required for income taxes for previous years based on managements' assessment of their transfer pricing tax position and the probability of success of their objection of the assessment."   *See* Section III.A, *supra*.   Yet, Plaintiffs acknowledge that

11

conducting such an analysis in 2016 necessarily involved "*new circumstances – the Reassessment*" that did not exist during the class period.   *Id.* (emphasis added).   Indeed, Plaintiffs' expert, Stephen Dineley, states:   "*following* the CRA's formal reassessment," Silver Wheaton "would be required to make a *new evaluation* as to whether an accrual would be required for previous years' income taxes."   Declaration of Stephen Dineley in Support of Motion to Compel ("Dineley Decl."), ¶ 13 (emphasis added).   Clearly, any "new" evaluation in 2016 cannot speak to the Company's contemporaneous assessments of the CRA audit or state of mind during the class period.

As explained in Defendants' expert declaration, the CRA's reassessments, and any analyses prepared after receipt of the reassessments, are irrelevant to an analysis of the financial statements issued during the class period.   *See* Declaration of Charles Landers ("Landers Decl."), ¶ 13.   Documents generated *after* the class period clearly did not exist *during* the class period and thus could not have been considered by Silver Wheaton, its auditor or the individual defendants during the class period.   *Id.* ¶ 11.   An analysis of the financial statements issued during the class period should solely be based on the information available and known by management during that same time period and should not include information learned, or analyses conducted, in future periods.   *Id.* ¶ 14.

There is no reason to believe that documents created after the class period contain information that calls into question the Company's accounting decisions during the class period.   Silver Wheaton has not restated any of its class period financial statements, as it would be required to do if it had discovered a material error in a subsequent period.   *Id.* ¶ 15.   Indeed, nowhere do the Company's 2015 financial statements suggest there were prior accounting errors.   *Id.* Moreover, Deloitte stands by its prior audit opinions covering the class period.

If Deloitte believed the prior financial statements were materially incorrect for any reason, including because material information had been withheld from them, Deloitte was required to notify Silver Wheaton, regulatory agencies, and persons known to be relying on the financial statements that its report should no longer be relied upon.   *Id.*   That has not occurred.   All of this shows that the CRA reassessments constituted "new information" that is not relevant to the earlier financial statements, and that this new information was considered on a prospective basis only.   *Id.* ¶ 16.

Plaintiffs contend that among the relevant documents may be legal opinions that Silver Wheaton obtained concerning the Tax Court of Canada appeal.   *See supra* Section III.A; Dineley Decl. ¶ 14.   Setting aside privilege issues,[2]  this argument likewise fails.   A legal opinion rendered in 2016 about the merits of a tax position in connection with a pending tax case, issued after the receipt of reassessments, would not constitute contemporaneous evidence of Defendants' accounting decisions or state of mind during the class period.

Plaintiffs' contention that the requested documents should be produced because "information that Silver Wheaton had withheld from its auditor may have surfaced" during discussions in 2016 is both baseless and contradicted by the allegations in the Complaint.   *See supra* Section III.A.   Plaintiffs offer no factual basis for their continuing speculation that information was previously withheld from the auditor.   If such information had surfaced, as noted above, the

---

[2]  As part of the meet and confer process, Defendants asked Plaintiffs to confirm that they were not by this motion seeking to compel the production of privileged documents or otherwise seeking a ruling about the applicability of privilege. Plaintiffs confirmed that they were not.   *See* Declaration of Jerome F. Birn, Jr. ("Birn Decl."), Exs. A-B.   To the extent the Court orders further production, Defendants will review responsive documents for privilege and provide a privilege log consistent with the Federal Rules of Civil Procedure.

auditors may have taken a different position, but they have not.   One allegation in the Complaint along these lines comes from a former employee who was a junior accounting clerk in the Caymans (FE1) until November 2013.   She alleges that a paper file of wire transfer records at the Cayman subsidiary was temporarily missing from her desk when the auditors visited; she has no idea whether the auditors actually reviewed wire transfer records.   Complaint ¶¶ 184-189.   This trifling allegation has nothing to do with Plaintiffs' allegations about the accuracy of the Company's consolidated financial statements; moreover, the CRA audit and the reassessments have nothing to do with the way that the Company or its Cayman subsidiary handled wire transfers.

Plaintiffs cite a number of cases that are inapposite because they dealt with a different question:   whether information from outside of a class period is relevant in considering whether a plaintiff met its pleading burden.[3]   *See supra* Section III.A.   None of these cases considered whether a plaintiff is entitled to post-class period discovery under the current Fed. R. Civ. P. 26(b)(1), as amended in 2015, described below.

---

[3]  *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) (considering information from outside the class period in determining whether plaintiffs satisfied pleading burden on motion to dismiss); *In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 272 (3d Cir. 2005) (considering pre-class period information in determining whether plaintiffs satisfied pleading burden on motion to dismiss); *Pub. Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972, 989 (8th Cir. 2012) (considering information from outside the class period in determining whether plaintiffs satisfied pleading burden; affirming dismissal but reversing denial of motion to amend complaint); *Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 970 (N.D. Cal. 2005) (considering information from before and during the class period in determining whether plaintiff satisfied pleading burden on motion to dismiss).

### 3. The Theoretical Relevance of the Requested Discovery is not Proportional to the Needs of the Case Given the Burden of Expanding an Already Lengthy Production Period

Fed. R. Civ. P. 26(b)(1) explains that requested discovery must not only be "relevant to any party's claim or defense," but also "proportional to the needs of the case," considering several issues, including "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(1) was amended in 2015. According to the Advisory Committee Notes, among the important reasons for the amendment was to "restore[] the proportionality factors to their original place in defining the scope of discovery." FED. R. CIV. P. 26 advisory committee's note to 2015 amendment. Emphasizing the importance of "[r]estoring proportionality as an express component of the scope of discovery," the Advisory Committee specifically stated that "'the information explosion of recent decades has greatly increased both the potential cost of wide-ranging discovery and the potential for discovery to be used as an instrument for delay or oppression.' What seemed an explosion in 1993 has been exacerbated by the advent of e-discovery." *Id.* (quoting FED. R. CIV. P. 26 advisory committee's note to 2013 amendment). Here, the burden and expense involved in re-collecting, reviewing, and producing an additional nine months of documents would be substantial and outweigh any theoretical relevance.

Plaintiffs originally served sixty-eight (68) document requests, many containing multiple subparts, seeking documents not just concerning the class period (itself more than four years long) but also demanding voluminous pre- and post-class period documents covering more than twelve years. After the parties met and conferred on September 19, 2016, Defendants sent Plaintiffs a detailed 15-page letter with proposed categories of documents for production and proposed

JOINT STIPULATION IN CONNECTION WITH PLAINTIFFS' MOTION TO COMPEL – No. 2:15-CV-05146-CAS (JEMx)

time periods in response to each document request.   Defendants repeatedly have compromised and agreed to produce various categories of documents created from 2005 through September 24, 2015 (again, the applicable time period depends upon the category).   In addition, Defendants agreed to engage in further meet and confer discussions, if, after reviewing the voluminous discovery that Defendants agreed to produce, Plaintiffs believed certain additional documents were necessary.

On September 26, 2016, Plaintiffs responded, stating "[w]hile we appreciate your compromises to resolve outstanding disputes, there remain *three issues*."   *See* Birn Decl. Ex. C, at 1 (emphasis added).   None of the "three issues" concerned the production time period for Requests 1-5 or 34 – all of which Plaintiffs now seek to revisit.

Relying in good faith upon the negotiations and agreements made over the prior months, Defendants since then have undertaken significant discovery efforts and incurred substantial expenses with respect to amassing and processing paper and electronic documents for review.   Defendants currently believe that they will review well in excess of 500,000 documents based on the already agreed-to scope. Plaintiffs should not now be permitted to revisit the applicable time period and insist upon production of post-class period documents that are of little if any relevance to their claims.

Despite Plaintiffs' suggestions to the contrary, it is not just a matter of running search terms through electronically stored information ("ESI").   *See supra* Section III.A.   Additional ESI will need to be re-collected and processed. After processing, the parties' search terms will need to be run against the additional ESI.   The hits generated will then need to be reviewed by attorneys for production.

In addition to the re-collection, processing, and review of additional ESI,

JOINT STIPULATION IN CONNECTION WITH PLAINTIFFS' MOTION TO COMPEL – No. 2:15-CV-05146-CAS (JEMx)

paper documents also will need to be re-collected, imaged, processed, and reviewed for production.    Not only will such efforts involve significant attorney time, but substantial vendor costs will also be incurred in the processing of the additional hard copy documents.    Given the limitations of optical character recognition, or OCR, search terms do not work effectively on hard copy documents.    Accordingly, an additional nine months of hard copy documents will have to be reviewed on a linear basis, *i.e.*, document-by-document and/or page-by-page, without the benefit of search terms having narrowed the review universe.    The expense associated with such additional linear review is considerable.

In sum, the significant burden and expense associated with the collection, the extremely time-intensive review, and the processing and production of an additional nine months of post-class period electronic and paper documents far outweighs their speculative or theoretical relevance.    Where, as here, the burden of producing post-class period documents outweighs any potential relevance, such discovery is not warranted.    *See, e.g.*, *In re Bridgepoint Educ., Inc. Sec. Litig.*, No. 12CV1737 JM (JLB), 2014 WL 3867495, at *2 (S.D. Cal. Aug. 6, 2014) (where the "last remaining challenged statement" and the date on which the "truth was revealed" preceded the discovery sought by plaintiffs, the "burden and expense of reviewing documents from this additional period outweighs the limited probative value of any responsive documents.").

## IV.  The Relevant Requests and Responses

### DOCUMENT REQUEST NO. 1:

All  documents  evidencing,  referring  or  relating  to  Silver  Wheaton's evaluation of its contingent transfer pricing tax position liability and/or the CRA Audit in connection with the preparation of Silver Wheaton's financial statements for the fiscal years 2009 through 2015.

**RESPONSE TO DOCUMENT REQUEST NO. 1:**

Defendants incorporate by reference their General Objections, Objections to Definitions and Instructions, and Objections to Relevant Time Period as though fully set forth herein. Defendants object to this request on the grounds that it is vague and ambiguous, particularly with respect to the use of the words and phrases "evaluation" and "contingent transfer pricing tax position liability." Defendants further object to this request on the ground that it contains inaccuracies and mischaracterizations. Defendants further object to this request to the extent it calls for the production of Privileged Information.

Subject to and without waiving the foregoing objections, and pursuant to a suitable protective order, Defendants will produce documents concerning the evaluation of the CRA Audit and/or transfer pricing pertaining to SW Caymans in connection with the preparation of annual or quarterly financial statements that were created from March 30, 2011[4] through July 6, 2015, the end of the putative Class Period.

**DOCUMENT REQUEST NO. 2:**

All documents evidencing, referring or relating to Silver Wheaton's potential transfer pricing tax reassessment following initiation of the CRA Audit in evaluating its accounting for contingent liabilities in connection with the preparation of Silver Wheaton's financial statements for the fiscal years 2010 through 2015.

**RESPONSE TO DOCUMENT REQUEST NO. 2:**

Defendants incorporate by reference their General Objections, Objections to Definitions and Instructions, and Objections to Relevant Time Period as though fully set forth herein. Defendants object to this request on the grounds that it is vague and ambiguous, particularly in its use of the phrases "potential . . .

---

[4] Defendants have agreed to expand the period to begin in October 2009.

JOINT STIPULATION IN CONNECTION WITH PLAINTIFFS' MOTION TO COMPEL – No. 2:15-CV-05146-CAS (JEMx)

reassessment" and "initiation of the CRA Audit." Defendants further object to this request on the ground that it contains inaccuracies and mischaracterizations. Defendants further object to this request to the extent it calls for the production of Privileged Information.

Subject to and without waiving the foregoing objections, and pursuant to a suitable protective order, Defendants will produce documents concerning the evaluation of the CRA Audit and/or transfer pricing pertaining to SW Caymans in connection with the preparation of annual or quarterly financial statements that were created from March 30, 2011 through July 6, 2015, the end of the putative Class Period.

**DOCUMENT REQUEST NO. 3:**

All documents evidencing, referring or relating to Silver Wheaton's evaluation of the application of ASC 740, IAS 12, IAS 37, and FASB 5 as it related to its contingent transfer pricing tax position liability, its accounting for contingent liabilities and its accounting for the potential results of the CRA Audit in connection with the preparation of Silver Wheaton's financial statements for the fiscal years 2010 through 2015.

**RESPONSE TO DOCUMENT REQUEST NO. 3:**

Defendants incorporate by reference their General Objections, Objections to Definitions and Instructions, and Objections to Relevant Time Period as though fully set forth herein. Defendants object to this request on the grounds that it is vague and ambiguous, particularly with respect to the use of the words and phrases "evaluation," "contingent transfer pricing tax position liability," "accounting for contingent liabilities," and "potential results." Defendants further object to this request on the ground that it contains inaccuracies and mischaracterizations. Defendants further object to this request to the extent it purports to characterize

GAAP and/or IFRS standards. Defendants further object to this request to the extent it calls for the production of Privileged Information.

Subject to and without waiving the foregoing objections, and pursuant to a suitable protective order, Defendants will produce documents concerning the evaluation of the CRA Audit and/or transfer pricing pertaining to SW Caymans in connection with the preparation of annual or quarterly financial statements, including the application of the referenced IFRS and GAAP standards to the extent applicable, that were created from March 30, 2011 through July 6, 2015, the end of the putative Class Period. Other than the categories of documents identified in response to the foregoing request and in response to Plaintiffs' other document requests, no other categories of documents shall be produced in accordance with Defendants' general and specific objections.

**DOCUMENT REQUEST NO. 4:**

All documents evidencing, referring or relating to Silver Wheaton's determination that it was not required to record a liability on its balance sheet for the effects of the contingent tax position liability resulting from the CRA Audit or from the CRA's October 27, 2009 request for production of documents related to its transfer pricing tax position.

**RESPONSE TO DOCUMENT REQUEST NO. 4:**

Defendants incorporate by reference their General Objections, Objections to Definitions and Instructions, and Objections to Relevant Time Period as though fully set forth herein. Defendants object to this request on the grounds that it is vague and ambiguous, particularly with respect to the use of the words and phrases "determination," "effects of the contingent tax position liability resulting from the CRA Audit or from the CRA's October 27, 2009 request for . . . documents" and "transfer pricing tax position." Defendants further object to this request on the ground that it contains inaccuracies and mischaracterizations. Defendants further

object to this request to the extent it purports to characterize GAAP and/or IFRS standards. Defendants further object to this request to the extent it calls for the production of Privileged Information.

Subject to and without waiving the foregoing objections, and pursuant to a suitable protective order, Defendants will produce documents concerning the evaluation of the CRA Audit and/or transfer pricing pertaining to SW Caymans in connection with the preparation of annual or quarterly financial statements that were created from March 30, 2011[5] through July 6, 2015, the end of the putative Class Period.

**DOCUMENT REQUEST NO. 5:**

All documents evidencing, referring or relating to Silver Wheaton's determination that it was neither not-remote, nor probable, that the CRA would reassess Silver Wheaton a material amount of income taxes as a result of the CRA Audit.

**RESPONSE TO DOCUMENT REQUEST NO. 5:**

Defendants incorporate by reference their General Objections, Objections to Definitions and Instructions, and Objections to Relevant Time Period as though fully set forth herein. Defendants object to this request on the grounds that it is vague and ambiguous, particularly with respect to the use of the words and phrases "determination," "neither not-remote, nor probable," and "as a result of the CRA audit." Defendants further object to this request to the extent it purports to characterize GAAP and/or IFRS standards. Defendants further object to this request to the extent it calls for the production of Privileged Information.

Subject to and without waiving the foregoing objections, and pursuant to a suitable protective order, Defendants will produce documents concerning the evaluation of the CRA Audit and/or transfer pricing pertaining to SW Caymans in

---

[5] Defendants have agreed to expand the period to begin in October 2009.

connection with the preparation of annual or quarterly financial statements that were

created from March 30, 2011[6] through July 6, 2015, the end of the putative Class

Period.

**DOCUMENT REQUEST NO. 34**

All documents, including all communications, provided to or received from

Silver Wheaton's auditors during the period from January 1, 2005 through May 1,

2016 that evidence, refer to or relate to: (a) transfer pricing, (b) income taxes, (c)

the CRA, (d) any tax audit of Silver Wheaton, (e) contingent liabilities, (f) tax

position liabilities, (g) agreements between Silver Wheaton and any of its

subsidiaries, (h) the application of ASC 740, IAS 12, IAS 37, or FASB 5, (i)

accounting for the possible effects or results of the CRA Audit.

**RESPONSE TO DOCUMENT REQUEST NO. 34**

Defendants incorporate by reference their General Objections, Objections to

Definitions and Instructions, and Objections to Relevant Time Period as though

fully set forth herein. Defendants object to this request on the grounds that it is

overly broad and unduly burdensome, particularly with respect to Plaintiffs' overly

broad definition of "Communication" and with respect to the overly broad subject

matter delineated in the request. Defendants object to this request on the grounds

that it is vague and ambiguous, particularly with respect to the word and phrases

"tax position liabilities," "agreements," and "possible effects or results."

Defendants further object to this request to the extent it purports to characterize

GAAP and/or IFRS standards. Defendants further object to this request to the extent

it purports to characterize the Company's obligations under Canadian law.

Defendants further object to the definition of "Silver Wheaton" to the extent it

encompasses any entity other than SW Canada and SW Caymans. Defendants

further object to this request to the extent that it seeks documents that are not

---

[6] Defendants have agreed to expand the period to begin in October 2009.

relevant to any claim or defense. Defendants further object to this request to the extent it calls for the production of Privileged Information.

Subject to and without waiving the foregoing objections, and pursuant to a suitable protective order, Defendants will produce communications with Deloitte concerning: (i) transfer pricing relating to SW Caymans for the period 2005 through the end of the Class Period; or (ii) the CRA Audit for the period October 27, 2009 through the end of the Class Period. Defendants confirm that the above production categories will include communications regarding disclosures pertaining to these topics in the Forms 40-F during the Class Period. Other than the categories of documents identified in response to the foregoing request and in response to Plaintiffs' other document requests, no other categories of documents shall be produced in accordance with Defendants' general and specific objections.

Dated: February 14, 2017                    Respectfully submitted,

                                            **THE ROSEN LAW FIRM, P.A.**

                                            /s/ Laurence M. Rosen
                                            Laurence M. Rosen, Esq. (SBN 219683)
                                            355 S. Grand Avenue, Suite 2450
                                            Los Angeles, CA 90071
                                            Telephone: (213) 785-2610
                                            Facsimile: (213) 226-4684
                                            Email: lrosen@rosenlegal.com

                                            *Attorneys for Lead Plaintiffs*

Dated: February 14, 2017                    **WILSON SONSINI GOODRICH & ROSATI, PC**

                                            /s/ Jerome F. Birn, Jr.

23

Jerome F. Birn, Jr., State Bar No. 128561
Email: jbirn@wsgr.com
Diane M. Walters, State Bar No. 148136
Email:   dwalters@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Fax: (650) 493-6811

Barry M. Kaplan, *admitted pro hac vice*
Email: bkaplan@wsgr.com
Gregory L. Watts, State Bar No. 197126
Email: gwatts@wsgr.com
701 Fifth Avenue, Suite 5100
Seattle, WA 98104
Telephone: (206) 447-0900
Facsimile: (206) 883-2699

*Attorneys for Defendants*

## ATTESTATION OF CONCURRENCE IN FILING

Pursuant to Local Rule 5-4.3.4 of the United States District Court for the Central District of California, I attest that Counsel for Lead Plaintiff Joe Elek and Named Plaintiffs Thomas Bartsch, Larry Brandow, Charles Remmel, Diana Choi, Benjamin Potaracke, and Jedrzej Borowczyk, and Counsel for Defendants Silver Wheaton, Smallwood, Barnes, and Brown   have authorized the filing of this document.

/s/ Laurence M. Rosen
Laurence M. Rosen

JOINT STIPULATION IN CONNECTION WITH PLAINTIFFS' MOTION TO COMPEL – No. 2:15-CV-05146-CAS (JEMx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I, Laurence Rosen, hereby declare under penalty of perjury as follows:

I am attorney with the Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA, 90071. I am over the age of eighteen.

On February 14, 2017, I electronically filed the foregoing **JOINT STIPULATION IN CONNECTION WITH PLAINTIFFS' MOTION TO COMPEL** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to counsel of record.

Executed on February 14, 2017.

/s/ Laurence Rosen
Laurence Rosen

JOINT STIPULATION IN CONNECTION WITH PLAINTIFFS' MOTION TO COMPEL – No. 2:15-CV-05146-CAS (JEMx)