Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Lead Plaintiff and the Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Silver Wheaton Corp. Securities Litigation | Master File No. 2:15-cv-05146-CAS(JEMx) c/w: 2:15-cv-05173-CAS(JEMx) <br><br> CLASS ACTION <br><br> **REPLY IN SUPPORT OF ISSUANCE OF LETTERS ROGATORY** <br><br> JUDGE: Hon. John E. McDermott <br> Hearing Date: March 14, 2017 <br> Time: 10:00 a.m. <br> Complaint Filed: July 8, 2015 <br> Discovery Cut-Off: December 31, 2017 <br> Pretrial Conference Date: None <br> Trial Date: None |

Defendants[1] have objected in part to Plaintiffs' issuance of letters rogatory. Where possible, Plaintiffs propose to accommodate Defendants' requested changes, as shown in Plaintiffs' amendments to their letters rogatory. Reply Declaration of Jonathan Horne ("Horne Reply Dec."), filed herewith, Exs. 8 & 9. But, as set out below, certain of Defendants' proposed changes are counterproductive and unwarranted.

I. The documents in Deloitte's possession created in the course of the 2015 Audit are relevant.

Defendants state, incorrectly, that "nothing created by Deloitte after the class period could show what Defendants knew or believed during the class period." In fact, as further set out in Plaintiffs' reply in support of their motion to compel, many such documents might be probative, from communications documenting previous oral discussions or presentations, to documents showing that certain information had been kept from Deloitte. See Reply In Support of Plaintiffs' Motion to Compel ("MTC Reply"), filed herewith, at 1.

Moreover, the positions Defendants have taken in this case further show the need for post-Class Period documents. In opposing Class Certification after Plaintiffs filed the Application for Letters Rogatory, one of Defendants' central critiques of Plaintiffs' damages methodology is that disclosure of the Reassessment revealed a **100%** risk (that is, a certainty) that Silver Wheaton's tax liability was understated by $207 million. Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Class Certification (the "Class Cert Opp."), dkt. # 122, at 19. But Defendants claim there that the facts they knew of and withheld from investors did not make the risk of eventual liability 100%. *Id.* Thus, Defendants claim that allowing class members to recover for the full stock price drop at the close of the

---

[1] Capitalized terms not defined herein shall take the meaning given to them in Plaintiffs' Notice of Motion and Motion for Issuance of Letters Rogatory; Memorandum of Points and Authorities in Support Thereof (dkt. # 117).

Class Period would improperly overcompensate them for the undisclosed risk they unwittingly and unwillingly bore. Defendants continue that Judge Snyder should not certify a class at all for this reason. For this, Defendants rely on their expert.

Plaintiffs will explain in their Reply in support of Class Certification that Defendants' argument is conceptually confused. But in its SEC filings, Silver Wheaton has not accrued a contingent tax liability. Rather, Silver Wheaton continues to maintain that ultimate liability is not even probable, but is merely possible. Thus, according to Silver Wheaton's *SEC filings*, the Reassessment did not reveal a 100% risk of ultimate liability, but only revealed that ultimate liability was possible. Silver Wheaton's SEC filings thus contradict its own expert's litigation positions.

Defendants and Silver Wheaton cannot both be right. Thus, any evidence supporting the claim that the Reassessment does not spell certain doom for Defendants (i.e., is only possible) is by the same token evidence that Class Members are not overcompensated by receiving the full drop following the corrective disclosure. Silver Wheaton's representations to Deloitte on this issue, as well as Deloitte's views, are thus highly relevant evidence.

II. Defendants have not presented any specific facts showing that production would unduly burden Deloitte.

Defendants only contest the scope of production from Deloitte. Defendants generally claim, citing no specific facts, that production of documents concerning the 2015 audit imposes burdens on Deloitte. Defendants do not, however, claim that production of documents from the 2009-2014 audits would similarly impose a burden on Deloitte.

Plaintiffs have agreed to limit their request for production to Deloitte to audit working papers and permanent files. Deloitte Exh. A, dkt. # 117-2, at 11 [PACER pagination]. Thus, Deloitte's search will be limited to a pre-existing centralized database of documents that has already been organized. Deloitte will not be forced to search through correspondence, individual employee files, or unsorted hard-copy

documents.[2] Defendants say nothing about this significant concession to Deloitte's burden.

In any case, the Canadian court will be much better situated to evaluate the burden on Deloitte. For one thing, it will actually have the benefit of Deloitte's briefing on the matter of its burden, rather than Defendants' speculation.

III. The Canadian Court will determine the scope of Canadian privilege.

Defendants argue that certain of Plaintiffs' request run afoul of the Canadian law of privilege. There is no reason for this Court to make that determination. Pursuant to the British Columbia Evidence Act, this Court does not issue orders directly to Deloitte. Rather, this Court's letters rogatory will be used as part of a petition to the British Columbia Supreme Court[3] (the "Canadian Court") seeking discovery from Deloitte. British Columbia Evidence Act, R.S.B.C. 1996, Chapter 124, §53 (1). The Canadian Court is plainly better positioned to interpret and apply British Columbia law.

Nor is there any need to indicate that discovery is subject to Canadian privilege laws. The very British Columbia statute through which Plaintiffs seek relief already so provides:

> (4) A person examined under the commission, order or other process referred to in subsection (1)
> (a) has the same right to refuse to answer any questions that the witness would be entitled to refuse to answer in a cause pending in the Supreme Court [of British Columbia], and
> (b) is not compelled to produce at the examination any writing or document that the person would not be compellable to produce at the trial of the cause referred to in paragraph (a).

---

[2] This case is nothing like *Triumph Aerostructures, LLC v. Comau, Inc.*, No. 3:14-CV-2329-L, 2015 WL 5502625, at *9 (N.D. Tex. Sept. 18, 2015). There, the plaintiff sought documents showing information (a) of tangential importance, if any (b) that would already be reflected in a party's document production, (c) through overbroad requests for production. Here, none of these three factors is present.

[3] The Supreme Court of British Columbia is a trial court of general and inherent jurisdiction. It is similar to the California Superior Court.

British Columbia Evidence Act, R.S.B.C. 1996, Chapter 124, §53 (4) (cited in Letters Rogatory, at 2).

To be clear, Plaintiffs have no objection to the substance of Defendants' request that the Canadian Court determine whether Canadian privilege applies; it obviously will, whether or not this Court asks it to. However, such a statement is unnecessary, and may be viewed unfavorably by the Canadian Court as suggesting that this Court might in the right case consider issuing letters rogatory that did not comply with Canadian law.

IV. Defendants' claims about the form of the Letters Rogatory

    A. The Letters Rogatory do not imply that the Court has found the facts Defendants object to because they clearly label the facts as plaintiffs' allegations.

Defendants object to a series of statements describing the Complaint's allegations, which they claim are not sufficiently balanced. But every one of the statements is preceded by the words "Plaintiffs allege", which make it clear that the sentences describe Plaintiffs' allegations. Letters rogatory typically contain similar language. Reply Declaration of Jonathan Horne ("Horne Reply Dec."), filed herewith, Exs. 6, at 4; 7, at 6. And Plaintiffs have no objection to Defendants' including their Answer as an Exhibit to the Letters Rogatory.[4]

Moreover, the language Defendants would have stand in for a complete summary of the claims at issue in this case only states the facts misleadingly omitted

---

[4] In contrast, in the only case Defendants cite, the letters rogatory did not make clear that the description was of the non-movant's own allegations. *Globe-X Mgmt., Ltd. v. Cinar Corp.*, No. CIV.A. 03-1831, 2004 WL 2399734, at *1 (E.D. Pa. Oct. 3, 2004) ("Plaintiffs [non-movants] object to the form of the Letters Rogatory [] in that they seek to have the Court ... ***state Defendants' positions or assertions of fact as findings of fact by the Court***") (emphasis added and internal quotations omitted). The non-movant addressed the concerns by identifying a claim as its *contention*. *Id.* Here, the Letters Rogatory plainly identifies all of the contentions to which Defendants object as ***Plaintiffs' allegations***.

4

from Silver Wheaton's financial statements. In fact, in Judge Snyder's opinion, the language Defendants quote follows almost 9 pages of detailed factual description. Without that description, the Canadian Court is no position to understand why Silver Wheaton's balance sheets and financial statements were misleading – i.e., because Silver Wheaton allegedly used Silver Wheaton (Caymans) as a conduit for Silver Wheaton (Canada)'s operations to evade Canadian taxes. Without knowing these facts, the Canadian Court is in no position to evaluate which documents of Deloitte and PwC Plaintiffs must obtain to prove their claims.

### B. "Plaintiffs' claims as they relate to Deloitte/PwC"

Plaintiffs have no objection to changing the language to reflect the fact that the documents may be relevant to both Plaintiffs' claims and Defendants' defenses. But Plaintiffs object to weakening the claim that Deloitte (or PwC) "is undoubtedly" in possession of relevant evidence to instead provide that they "may" have such evidence. The change makes it seem that this Court is lending its authority to a speculative search for relevant facts when, in fact, no one disputes that Deloitte and PwC will certainly have relevant evidence.

### C. Statement of the subject matter

Plaintiffs do not object to Defendants' request that the oral examinations occur by August 31, 2017, provided that the deposition occur not less than 45 days after Deloitte and PwC have produced all documents required. Unless the Letters Rogatory specifically provide these 45 days, there is no assurance that Plaintiffs will have enough time to review the documents produced by Deloitte and PwC. And the depositions obviously should take place at a time mutually agreeable to the parties, Deloitte, and PwC.

### D. The purported mischaracterizations in the motion are actually just arguments Defendants disagree with.

1 Defendants also claim that Plaintiffs' motion mischaracterizes the facts. Defendants' argument is better characterized as a complaint that the motion argues Plaintiffs' case.

For example, Defendants object to Plaintiffs' citation of a report from a former Silver Wheaton employee, apparently claiming that the lapse of time between the CRA's interview shows the news was "not a definitive statement of its position." Plaintiffs do not claim that it was, but rather that it is, at the very least, strong evidence that it is possible that Silver Wheaton's tax position would not be upheld. Judge Snyder certainly thought so.[5]

Defendants claim that they have not "asserted as defense that Deloitte did not question SW's decision not to recognize a $207 million contingent tax liability." Defendants told Judge Snyder exactly that:

> Directly refuting plaintiffs' assertions is the fact that the Company's auditors, Deloitte, issued clean audit opinions throughout the class period. [Citation]. Deloitte was aware of the Company's tax position and the existence of the CRA audit—the footnotes to the financial statements contained specific disclosures about it. [Citation]. Yet, Deloitte did not require the Company to record a tax provision during the class period.

Def.'s MTD, at 11 (dkt. # 61-1). *See also id.* at 3 (Deloitte's audit report is a "compelling fact[] refuting an inference of fraudulent intent"); id. at 23 (similar); Reply MTD (dkt. # 73), at 2, 3, 18-22 (similar).

And while Defendants complain of the shorthand use of "reassessment", nothing rides on the characterization, in the motion, as "reassessment", rather than "reassessment finally upheld on appeal".

E. Plaintiffs have no objection to the majority of Defendants' remaining suggested changes.

---

[5] "Significantly, plaintiffs also allege that, during the course of this audit, the CRA candidly informed FE1: 'We're here because we feel Silver Wheaton ha[s] not been paying its taxes.'" Order, at 20.

1    Plaintiffs have no objection to deletion of references Section 20A of the
2 Exchange Act. Nor do Plaintiffs object to inclusion of the word "putative" before
3 Class. The class definition in Plaintiffs' motion for class certification differs slightly
4 from that in the Amended Complaint; Plaintiffs have no objection to employing the
5 version set out in Plaintiffs' Motion for Class Certification. Plaintiffs likewise have
6 no objection to adding a sentence showing that Defendants have filed an answer, or
7 attaching the Answer.
8    Certain of the Plaintiffs omitted transactions in Silver Wheaton securities from
9 their certifications. Corrected certifications were served on Defendants during the
10 course of discovery, and Defendants had an opportunity to examine each plaintiff
11 based on these corrected certification. Beyond that, transaction confirmations for
12 every plaintiff's transaction in Silver Wheaton securities were produced to
13 Defendants. Defendants do not suggest that the corrected certifications have any
14 impact on the letters rogatory. There is no reason to require that the corrected
15 certifications be served with the letters rogatory.
16    Moreover, Defendants' answer denies that Plaintiffs purchased Silver
17 Wheaton securities, a fact they now know to be true. If the Court orders Plaintiffs to
18 file their corrected certifications, then it should also order Defendants to file a
19 corrected answer, which should be attached as a further exhibit to the Letters
20 Rogatory.

**Conclusion**

For the foregoing reasons, as well as those set out in Plaintiffs' opening brief, the Court should issue letters rogatory. Amended Letters Rogatory are attached as Exhibits 8 and 9 to the Horne Reply Dec.

Dated: February 28, 2017          Respectfully submitted,


<u>/s/ Laurence M. Rosen</u>
Laurence M. Rosen (SBN 219683)
Jonathan Horne (admitted *pro hac vice*)
lrosen@rosenlegal.com
jhorne@rosenlegal.com
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-2684

*Counsel for Plaintiffs and the Class*

# CERTIFICATE OF SERVICE

I, Laurence Rosen, hereby declare under penalty of perjury as follows:

I am attorney with the Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA, 90071. I am over the age of eighteen.

On February 28, 2017, I electronically filed the foregoing **REPLY IN SUPPORT OF ISSUANCE OF LETTERS ROGATORY** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to counsel of record.

Executed on February 28, 2017

                                        /s/ Laurence Rosen
                                        Laurence Rosen