1  Laurence M. Rosen, Esq. (SBN 219683)
   **THE ROSEN LAW FIRM, P.A.**
2  355 South Grand Avenue, Suite 2450
   Los Angeles, CA 90071
3  Telephone: (213) 785-2610
4  Facsimile: (213) 226-4684
   Email: lrosen@rosenlegal.com
5
6  *Counsel for Lead Plaintiff and the Class*
7
                UNITED STATES DISTRICT COURT
8               CENTRAL DISTRICT OF CALIFORNIA
9
   In re Silver Wheaton Corp.            Master File No. 2:15-cv-05146-
10 Securities Litigation                 CAS(JEMx)
                                         c/w: 2:15-cv-05173-CAS(JEMx)
11
12                                       REPLY DECLARATION OF PAUL
                                         MILLER IN FURTHER SUPPORT OF
13                                       PLAINTIFFS' MOTION FOR LEAVE
14                                       TO (A) MODIFY THE SHCEDULING
                                         ORDER AND (B) FOR LEAVE TO
15                                       FILE A SECOND AMENDED
16                                       COMPLAINT
17
                                         CLASS ACTION
18
19                                       Judge: Hon. Christina A. Snyder
                                         Hearing Date: March 26, 2018
20                                       Time: 10 a.m.
                                         Complaint Filed: July 8, 2015
21                                       Discovery Cut-Off:  March 29, 2018
22                                       Pretrial Conference Date:
                                         February 25, 2019
23                                       Trial Date: March 26, 2019
24
25
26
27
28
   REPLY DECLARATION OF PAUL MILLER IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO
   (A) MODIFY THE SHCEDULING ORDER AND (B) FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT –
   2:15-cv-05173-CAS(JEMx)

Paul Miller, pursuant to 28 U.S.C. §1746, declares

1.    I am an attorney at Branch McMaster LLP, Canadian counsel to Plaintiffs/Class Representatives Joe Elek, Thomas Bartsch, Larry Brandow, Diana Choi, Benjamin Potaracke, Jedrzej Borowczyk, and Charles Remmel (together, "Plaintiffs").

2.    I was admitted to the Washington State Bar in 1998, and to the British Columbia Bar in 2007. I have been practicing law in British Columbia since 2007. I am currently a member of both the British Columbia and Washington bars.

3.    I have personal knowledge of the facts set out below.

4.    Branch McMaster was retained by Plaintiffs through The Rosen Law Firm, P.A. ("Rosen") in July 2016. During the period from July 2016 through November 2016, I advised Rosen on the requirements of British Columbia discovery as well as the scope of their requests for production of documents to Deloitte LLP (Canada) ("Deloitte") and PricewaterhouseCoopers LLP (Canada) ("PwC").

5.    I also drafted portions of the Petition (and its supporting materials) to the Court seeking to enforce letters rogatory directed to Deloitte and PwC (the "Canadian Application"), and advised Rosen on drafting the remainder. My firm filed the Canadian Application on April 28, 2017. The Canadian Application requested both production of documents and a pre-trial examination, the British Columbia equivalent of a deposition of a non-party.

6.    At the direction of Rosen, I personally negotiated enforcement of the Canadian Application.

7.    By May 11, 2017 Deloitte and PwC had advised me through their separate counsel that they were aware of the matter. By May 12, 2017, counsel for both Deloitte and PwC had indicated that they might need additional time to respond to the Canadian Application, which I subsequently agreed to provide them.

8.    On May 25, 2017, I held a conference call with counsel for Deloitte, PwC, and Defendants Silver Wheaton Corp., Randy Smallwood, Gary Brown, and

REPLY DECLARATION OF PAUL MILLER IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO (A) MODIFY THE SHCEDULING ORDER AND (B) FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT – 2:15-cv-05173-CAS(JEMx)

Peter Barnes ("Defendants", and with Deloitte and PwC, the "Respondents") to discuss the Canadian Application. On this call, we discussed the possibility of a consent order. The Respondents' counsel said that they each would seek direction from their respective clients. Nevertheless, the Respondents raised a number of preliminary objections to the relief I was seeking in the Canadian Application on behalf of the Plaintiffs.

9.    In British Columbia, a hearing of 2 hours or less can be scheduled on the regular application calendar by a party on any day the court is in session without having to secure a specific date from the court. If the parties anticipate that they will require more than 2 hours, they must request a hearing date from the Court in which the court has availability for the time period required. Based on the anticipated time needed for the Respondents to present oral argument to the court in responding to the Canadian Application, I acceded to the Respondents' position that more than 2 hours was need for the hearing and that I would request a full day hearing from the Court. On June 13, 2017, I was advised that we had obtained a hearing date of August 10, 2017, the first available date in the calendars for the court and each counsel.

10.   From June 5 to 8, 2017, I conferred further with counsel for the Respondents concerning their objections. Counsel for all three Respondents raised objections to the scope of the information sought in the Canadian Application. In addition, Deloitte objected to submitting to an examination, and PwC objected to submitting to more than a one-day examination without further information for the necessity of a second day. Finally, Deloitte and PwC wanted to have all of their reasonably incurred costs of compliance reimbursed, including attorneys' fees, and the witnesses' preparation and examination attendance time, at their regular hourly rates.

11.   I continued to confer with counsel for Respondents throughout June and July 2017 in anticipation of the hearing. As part of my discussions with counsel for PwC and Deloitte, on June 22, 2017 I requested estimates for costs which PwC

REPLY DECLARATION OF PAUL MILLER IN FURTHER
SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO (A)
MODIFY THE SHCEDULING ORDER AND (B) FOR LEAVE TO
FILE A SECOND AMENDED COMPLAINT – 2:15-cv-05173-
CAS(JEMx)

and Deloitte would seek reimbursement at the hearing. I reiterated that request on July 7, 2017. On or about July 27, 2017, PwC's counsel provided an estimate of CDN$50,000 to $60,000 in relation to documents and an examination. On August 3, 2017, Deloitte's counsel provided an estimate of CDN$35,000, plus taxes and disbursements, solely to produce documents. Deloitte's counsel did not provide an estimate of costs for an examination at that time.

12.   By June 22, 2017, I also received confirmation from the Respondents that they would not consent to an order but would only agree to not oppose an order provided it contained language agreeable to them. Deloitte and PwC did not want to be seen consenting to any order that required production of client documents.

13.   No further progress of any significance before the hearing was made with Deloitte regarding the costs to be reimbursed to Deloitte. Deloitte refused to agree to any reimbursement cap.

14.   I was able to reach agreement with PwC counsel prior to the hearing on the issue of costs to be reimbursed to PwC.

15.   I argued the August 10, 2017 hearing before Justice Milman, a judge of the British Columbia Supreme Court, who reserved decision until August 17, 2017.

16.   On August 17, 2017, Justice Milman delivered his oral reasons for judgment which, among other things, imposed a cap of CDN$12,000 on Deloitte's recovery of its costs associated with the production of documents, or about a third of what Deloitte requested. Justice Milman also ordered Deloitte to be made available for examination and imposed a cap of CDN$10,000 for reimbursement of Deloitte's preparation and attendance at the examination. Plaintiffs were entitled to receive Deloitte's documents by October 6, 2017.

17.   A true and correct copy of the entered written order embodying Justice Milman's oral reasons for judgment is attached as Exhibit 1 to this Declaration.

18.   On August 25, 2017, Deloitte's counsel emailed me a list of suggested search terms to use to search for electronic documents ordered to be produced by

REPLY DECLARATION OF PAUL MILLER IN FURTHER
SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO (A)
MODIFY THE SHCEDULING ORDER AND (B) FOR LEAVE TO
FILE A SECOND AMENDED COMPLAINT – 2:15-cv-05173-
CAS(JEMx)

Justice Milman. Deloitte's email requested: "Could you please confirm that these search terms are agreeable and, if not, what further search terms are required." A true and correct copy of Deloitte's counsel's email is attached as Exhibit 2 to this Declaration.

19.   On August 28, 2017, I conferred with Deloitte's counsel concerning Deloitte's request to employ electronic search terms rather than review entire relevant sections of Deloitte's audit working papers. Deloitte's counsel indicated that Deloitte told her it was not possible to pick out relevant sections to review because the audit working papers were not organized in a manner that would assist in such a review.

20.   On August 30, 2017, I responded to Deloitte's counsel's email of August 25, 2017 regarding the search terms. My email attached a list showing revised and additional search terms. I also stated in my email:

> As mentioned below and in our telephone conversation that followed, my clients' review and revision of the search terms was made in an effort to merely assist Deloitte in its production of documents in compliance with the court's order; but my clients in no way agree that the use of the terms in this list (including the use of the exclusionary names of counsel) by Deloitte necessarily satisfies its obligations in complying with the order.  These are Deloitte's documents and it is in the best position to determine which terms will locate all that is required under the order, along with any other further necessary steps that may be required.

21.   A true and correct copy of my August 30, 2017 email and its attachment is attached as Exhibit 3 to this Declaration.

22.   On October 6, 2017, Deloitte delivered its first production of documents under the court's order via an internet link that permitted the documents to be downloaded (the "October Production").

23.   At no time prior to Deloitte's October Production did Deloitte or its counsel inform me that Deloitte was not employing the revised and additional search terms that I sent to Plaintiffs on August 30, 2017.

24.   On October 21, 2017, I sent a letter to Deloitte calling its attention to significant gaps of documents in the October Production. A true and correct copy of my October 21, 2017 letter is attached as Exhibit 4 to this Declaration.

25.   After further communication with Deloitte's counsel regarding the incompleteness of the October Production, I requested a printout of the electronic searches that Deloitte employed to locate the documents required under the court order.

26.   On October 25, 2017, I received an email from Deloitte's counsel listing the search terms that Deloitte had employed to generate its October Production. A true and correct copy of Deloitte's counsel's email is attached as Exhibit 5 to this Declaration. This list does not include the revised and additional search terms that 1 sent to Deloitte's counsel on August 30, 2017. The October 25, 2017 email was the first time Deloitte or its counsel had revealed to me that Deloitte had not employed the search terms that I sent on August 30, 2017.

27.   I had further communications with Deloitte's counsel about Deloitte expanding its review of documents in order to produce additional documents that were required under the scope of the court order.

28.   Being dissatisfied with the delay that was occurring in Deloitte's production of additional documents, I sent a letter to Deloitte's counsel on December 7, 2017, in which I expressed my dissatisfaction and advised that Plaintiffs would return to court if Deloitte did not produce additional documents by December 22, 2017. A true and correct copy of my December 7, 2017 letter is attached as Exhibit 6 to this Declaration.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: March 12, 2018

Paul Miller, Esq.

REPLY DECLARATION OF PAUL MILLER IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO (A) MODIFY THE SHCEDULING ORDER AND (B) FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT – 2:1S-cv-05173-CAS(JEMx)