# Exhibit 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Silver Wheaton Corp. Securities Litigation | Master File No: 2:15-cv-05146-CAS-PJWx c/w: 2:15-cv-05173-CAS(PJWx) |

**DECLARATION OF PAUL MULHOLLAND
CONCERNING: (A) MAILING OF THE POSTCARD NOTICE; (B) PUBLICATION OF
THE SUMMARY NOTICE; AND (C) REPORT ON REQUESTS FOR EXCLUSION
AND OBJECTIONS**

I, Paul Mulholland, declare as follows:

1.      I am the President of Strategic Claims Services ("SCS"), a nationally recognized class action administration firm.  I have over twenty-eight years of experience specializing in the administration of class action cases.  SCS was established in April 1999 and has administered over four hundred twenty-five (425) class action cases since its inception.  I am over 21 years of age and am not a party to this action.  I have personal knowledge of the facts set forth herein.

**MAILING OF POSTCARD NOTICE**

2.      Pursuant to the Court's Order Preliminarily Approving Settlement and Providing for Notice Procedures, dated March 9, 2020 (the "Preliminary Approval Order"), SCS was retained as Claims Administrator in connection with the Settlement[1] in the above-captioned action.

3.      To provide actual notice to all persons and entities who purchased the publicly traded securities of Silver Wheaton Corp., n/k/a Wheaton Precious Metals Corp. ("Silver Wheaton") (i) on a United States exchange or (ii) in a transaction in the United States, during the period from March 30, 2011 to July 6, 2015, inclusive, and did not sell such securities prior to

---

[1] All capitalized terms not otherwise defined herein have the meanings set forth in the Stipulation of Settlement, filed on February 10, 2020 (the "Stipulation").

July 6, 2015 (the "Class Period"), pursuant to the Preliminary Approval Order, SCS printed and mailed the Postcard Notice to potential members of the Settlement Class.  A true and correct copy of the Postcard Notice is attached as **Exhibit A**.

4.     First, SCS mailed, by first class mail, postage prepaid, the Postcard Notice to 755 individuals and organizations identified in the transfer records which were provided to SCS by Plaintiffs' Counsel.  These records reflect individuals and entities that held Silver Wheaton stock for their own account, or for the account(s) of their clients during the Class Period.  The transfer record mailing was completed on March 19, 2020.

5.     As in most class actions of this nature, the large majority of potential Settlement Class Members are expected to be beneficial purchasers whose securities are held in "street name" — *i.e.,* the securities are purchased by brokerage firms, banks, institutions and other third-party nominees in the name of the nominee, on behalf of the beneficial purchasers.  The names and addresses of these beneficial purchasers are known only to the nominees.  SCS maintains a proprietary master list consisting of 714 banks and brokerage companies ("Nominee Account Holders"), as well as 597 mutual funds, insurance companies, pension funds, and money managers ("Institutional Groups").  On March 16, 2020, SCS caused a letter to be mailed or e-mailed to the 1,311 nominees contained in the SCS master mailing list.  The letter notified them of the Settlement and requested that they, within 10 calendar days from the date of the letter, either send a Postcard Notice to their customers who may be beneficial purchasers/owners or provide SCS with a list of the names, mailing addresses, and email addresses of such beneficial owners so that SCS could promptly send the Postcard Notice directly to them.  A copy of the letter sent to these nominees is attached as **Exhibit B.**

6.     Following this mailing, SCS received additional names and addresses of potential Settlement Class Members from individuals or nominees requesting that a Postcard Notice be mailed by SCS, and SCS received requests from nominees for Postcard Notices so that the nominees could forward them to their customers.

7.     To date, SCS has mailed 390,496 Postcard Notices.[2]   Additionally, SCS was notified by one of the nominees that they emailed 92,282 of their customers to notify them of this settlement and provide direct links to the Notice and Claim Form on the settlement website.

8.     SCS also sent the Depository Trust Company ("DTC") a Notice Packet for the DTC to publish on its Legal Notice System ("LENS") on March 16, 2020. LENS provides DTC participants the ability to search and download legal notices as well as receive e-mail alerts based on particular notices or particular CUSIPs once a legal notice is posted.

9.     Out of the 390,496 Postcard Notices mailed, 19,709 were returned as undeliverable.  Of these, the United States Postal Service provided forwarding addresses for 1,143, and SCS immediately mailed another Postcard Notice to the updated addresses.  The remaining 18,566 Postcard Notices returned as undeliverable were "skip-traced" to obtain updated addresses and 9,155 were re-mailed to updated addresses.

**PUBLICATION OF THE SUMMARY NOTICE**

10.     Pursuant to the Court's Preliminary Approval Order, the Summary Notice of Pendency and Proposed Settlement of Class Action ("Summary Notice") was published once in

---

[2] Out of the 390,496 Postcard Notices mailed, we received 1,219 requests from the potential Settlement Class Members to mail them the Internet Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release Form ("Claim Form") (collectively, the "Notice Packet") and we received 148 email addresses for potential Settlement Class Members to email the Postcard Notice.

*Investor's Business Daily* and to be transmitted once over the *PR Newswire* on April 6, 2020, as shown in the confirmations of publication attached hereto as **Exhibit C.**

### TOLL-FREE PHONE LINE

11.     On or about March 19, 2020, a case-specific toll-free number, 866-410-3013, was established with an Interactive Voice Response system and operators during business hours.  The automated attendant answers the calls and presents callers with a series of common questions and answers.  If callers need further assistance, they have the option to be transferred to an operator during business hours.

### WEBSITE

12.     On    or    before    March    13,    2020,    SCS    established    the    website, silverwheatonsettlement.com.  The website includes a home page with a summary of the case; an Important Documents page that the Claim Form, the Notice, and the Stipulation can be downloaded; a File a Claim Online page; a Frequently Asked Questions page; a Nominees page; and a Contact Us page. A copy of the Notice Packet is attached as **Exhibit D**.

### REPORT ON EXCLUSIONS AND OBJECTIONS

13.     The Postcard Notice, Notice, and Summary Notice informed potential Settlement Class Members that written requests for exclusion are to be mailed to SCS such that they are received no later than June 13, 2020.  SCS has been monitoring all mail delivered for this case. As of the date of this Declaration, SCS has received six purported exclusion requests.  Three of the purported opt-outs are not Settlement Class Members because they sold all their shares before July 6, 2015.  The other three opt-outs did not provide information and documentation the court required after SCS notified them of the requirement.  Copies of the requests for exclusion and any correspondence are attached as **Exhibit E**.

14.     According to the Notice, Settlement Class Members seeking to object to the Settlement, any part of the Settlement, the Plan of Allocation, or Plaintiffs' Counsel's motion for attorneys' fees must be submitted to Plaintiffs' Counsel, Silver Wheaton Defendants' Counsel, and Deloitte's Counsel, as well as filed with the Clerk of the Court, no later than July 20, 2020. As of the date of this Declaration, SCS has received one objection and has been notified by Plaintiffs' Counsel that it received a second objection.  Both objections are to the Plan of Allocation only.  **Exhibit F** are copies of the objections.

15.     To date, SCS has received 35,966 claim forms.  The claims filing deadline was for claims to be either filed electronically or postmarked no later than June 13, 2020.  Below is a preliminary estimate of the total recognized claims to date.  Based on my experience, I am estimating approximately 50% or $34,495,984 ($68,991,968 times 50%) of the Deficient Claims will be cured.  The numbers below do not include any adjustments as a result of SCS's quality assurance process, which includes the results of the cure/rejection process:

| Type of Claims | Number of Claims | Dollar Amount of the Recognized Claims |
|---|---|---|
| Valid [3] | 10,385 | $157,930,358 |
| Deficient Claims with limited proof or unable to determine if transactions were made on U.S. or Canadian market | 1,132 | $68,991,968 |
| Rejected due to No Recognized Claims | 24,449 | N/A |
| Total | 35,966 | $226,922,326 |

[3] This represents the maximum value for these 10,385 valid claims.  Most of these claims were filed by third party e-filers. E-filers' claims are presumed to be valid based on the transactional data submitted in their respective claims, but the filers have not yet provided actual documentation for the transactions. As part of its quality assurance, SCS will request that these e-filers provide additional proof to further substantiate their claims. Some of these claims will likely eventually be rejected as the filers do not provide the proof or SCS determines the additional proof they provide is insufficient.

16.     Of the 35,966 claims filed to date, only 2,427 (7%) were filed as paper claims. On average, about 22% of claims are made on paper, which would translate to about 7,913 claims in this case. A paper claim costs about $7.50 more to process than an on-line claim. Thus, I estimate that encouraging claimants to file online reduced total expenses by about $41,000 to date.  The total reduction in the recognized losses for paper claim filers by applying the greater of $5 or 1% reduction is approximately $23,000.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 6th day of July 2020, in Media, Pennsylvania.


Paul Mulholland

EXHIBIT A

Silver Wheaton Corp. Litigation
c/o Strategic Claims Services
600 N. Jackson Street, Suite 205
Media, PA 19063

***Court-Ordered Legal Notice***
***Forwarding Service Requested***

Important Notice about a Securities Class
Action Settlement

You may be entitled to a payment. This
Notice may affect your legal rights. Please
read it carefully.

Case Pending in the United States District
Court for the Central District of California

*Master File No: 2:15-cv-05146-CAS-PJWx*
*c/w: 2:15-cv-05173-CAS (PJWx)*

*THIS CARD PROVIDES ONLY LIMITED INFORMATION ABOUT THE SETTLEMENT.*
*PLEASE VISIT WWW.SILVERWHEATONSETTLEMENT.COM FOR MORE INFORMATION.*

The United States District Court for the Central District of California has preliminarily approved a proposed Settlement of claims against Silver Wheaton Corp. ("Silver Wheaton"), Randy V.J. Smallwood, Peter Barnes, Gary Brown, and Deloitte LLP (Canada) (collectively, the "Defendants"). The Settlement resolves all of the claims in the Class Action against Defendants in which Plaintiffs alleged that Defendants made false and misleading statements to the investing public as set out in the Complaint, including that Silver Wheaton's 2010-2014 financial statements allegedly were misleading for failing to record a tax liability or to disclose a contingent liability for alleged future tax liabilities relating to income earned by the Company's foreign subsidiaries outside of Canada. Defendants expressly deny all allegations of wrongdoing or liability whatsoever and deny that any Settlement Class Members were damaged. You received this Postcard Notice because you or someone in your family may have purchased or otherwise acquired Silver Wheaton securities between March 30, 2011 and July 6, 2015 inclusive.

You received this notice because you may have purchased Silver Wheaton securities on a United States exchange or in a transaction in the United States between March 30, 2011 and July 6, 2015, both dates inclusive, and you may be a Settlement Class Member. The Settlement provides that, in exchange for the dismissal and release of claims against Defendants, a fund consisting of $41,500,000, less attorneys' fees and expenses, will be divided among Settlement Class Members who timely submit a valid Proof of Claim and Release Form ("Proof of Claim" or "Claim Form"). For a full description of the Settlement and your rights and to make a claim, please view the Stipulation of Settlement and obtain a copy of the Internet Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Proof of Claim by visiting the website: www.silverwheatonsettlement.com. You may also request copies of the Notice and Proof of Claim from the Claims Administrator through any of the following ways: (1) mail: Silver Wheaton Corp. Litigation, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson St, Ste. 205, Media, PA 19063; (2) call toll free: (866) 410-3013; (3) fax: (610) 565-7985; or (4) email: info@strategicclaims.net.

**To qualify for payment, you must submit a Proof of Claim.** The Claim Form can be found on the website, www.silverwheatonsettlement.com, or will be mailed to you upon request to the Claims Administrator (866-410-3013). **Claim Forms must be electronically submitted by June 13, 2020. If you choose to mail your claim form, at your own expense, your payout will be reduced to reflect the increased administrative cost of processing mailed claims. Mailed claims must be postmarked by June 13, 2020.** If you do not want to be legally bound by the Settlement, you must exclude yourself by June 13, 2020, or you will not be able to sue the Defendants about the legal claims in this case. If you exclude yourself, you cannot get money from this Settlement. If you stay in the Settlement, you may object to it by July 20, 2020. The detailed Notice explains how to submit a Claim Form, exclude yourself, or object.

The Court will hold a final settlement hearing in this case on August 3, 2020 at 10:00 a.m. at the United States District Court, Central District of California, First Street Courthouse, 350 W. First Street, Courtroom 8D, 8th Floor, Los Angeles, CA 90012, to consider whether to approve the Settlement, the Plan of Allocation, and a request by Plaintiffs' Counsel for up to one third of the Settlement Fund for attorneys' fees, plus actual expenses up to $1,600,000 for expenses, and reimbursement of Plaintiffs' costs and expenses related to their representation of the Class (including lost wages) in an amount not to exceed $87,500. You may attend the hearing and ask to be heard by the Court, but you do not have to. For more information, call toll free (866-410-3013) or visit the website: www.silverwheatonsettlement.com.

## REQUEST FOR NAMES, EMAILS AND ADDRESSES OF CLASS MEMBERS

STRATEGIC CLAIMS SERVICES
600 N. JACKSON STREET, SUITE 205
MEDIA, PA  19063
PHONE: (610) 565-9202        EMAIL: info@strategicclaims.net    FAX: (610) 565-7985

March 16, 2020

This letter is being sent to all entities whose names have been made available to us, or which we believe may know of potential class members.

**We request that you assist us in identifying any individuals who fit the following description:**

ALL PERSONS OR ENTITIES WHO PURCHASED THE PUBLICLY TRADED SECURITIES OF SILVER WHEATON CORP., N/K/A WHEATON PRECIOUS METALS CORP. ("SILVER WHEATON" OR THE COMPANY) ON A UNITED STATES EXCHANGE OR IN A TRANSACTION IN THE UNITED STATES BETWEEN MARCH 30, 2011 AND JULY 6, 2015, INCLUSIVE, AND DID NOT SELL SUCH SECURITIES PRIOR TO JULY 6, 2015.

Excluded from the Class are Defendants, all present and former officers and directors of Silver Wheaton and any subsidiary thereof, Deloitte and all of its present and former partners, members of all such excluded persons' families and their legal representatives, heirs, successors or assigns and any entity which such excluded persons controlled or in which they have or had a controlling interest.

**The information below may assist you in finding the above requested information.**

| | |
|---|---|
| *Silver Wheaton Corp. Securities Litigation*<br>Master File No: 2:15-cv-05146-CAS-PJWx<br>c/w: 2:15-cv-05173-CAS(PJWx)<br>Claim Filing Deadline: June 13, 2020<br>Exclusion Deadline: June 13, 2020<br>Objection Deadline: July 20, 2020<br>Settlement Hearing: August 3, 2020 | Cusip Number: 828336107 |

### PLEASE RESPOND WITHIN 10 CALENDAR DAYS FROM THE DATE OF THIS NOTICE

Please comply in one of the following ways:

1. If you have no beneficial purchasers/owners, please so advise us in writing; or
2. **Supply us with email addresses**, if email addresses are not available, provide us with names and last known addresses of your beneficial purchasers/owners and we will do the mailing of the Postcard Notice. Please provide us this information electronically. If you are not able to do this, labels will be accepted, but it is important that a hardcopy list also be submitted of your clients; or
3. If you notify the beneficial purchasers/owners yourselves, please email us and we will send you the postcard notice to email or if email addresses are not available, please email us how many beneficial purchasers/owners you have, and we will supply you with ample postcards to do the mailing.

You can bill us for any reasonable expenses actually incurred and **not to exceed**;

- **$0.05 per email if you email the notice**; OR
- **$0.05 per name and address** if you are providing us the records; OR
- **$0.05 per name and address, including materials, plus postage at the current postcard rate,** if you are requesting postcards and performing the mailing.

**All invoices must be received within 30 days of this letter.**

You are on record as having been notified of this legal matter. A copy of the Internet Notice of Pendency and Proposed Settlement of Class Action, the Proof of Claim and Release Form, and other important documents are available on our website at www.silverwheatonsettlement.com. You can also request a copy via email at info@strategicclaims.net.

Thank you for your prompt response.
Sincerely,
Claims Administrator
*Silver Wheaton Corp. Litigation*

EXHIBIT C

# INVESTOR'S BUSINESS DAILY®

## Affidavit of Publication

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

| | |
|---|---|
| Name of Publication: | IBD Weekly |
| Address: | 12655 Beatrice Street |
| City, State, Zip: | Los Angeles, CA 90066 |
| Phone #: | 310.448.6700 |
| State of: | California |
| County of: | Los Angeles |

I, __Shaun Shen__ for the publisher of __IBD Weekly__ , published in the city of __Los Angeles__ , state of __California__ , county of __Los Angeles__ hereby certify that the attached notice(s) for __Silver Wheaton Corp.__ was printed in said publication on the following date(s):

**APRIL 6, 2020**

State of California

County of __Los Angeles__

Subscribed and sworn to (or affirmed) before me on this __6th__ day of __April__ , __2020__ , by

_____ , proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____ (Seal)

RICHARD CHARLES BRAND II
Notary Public - California
Los Angeles County
Commission # 2276190
My Comm. Expires Feb 25, 2023

Case 2:15-cv-05146-CAS-PJW   Document 492   Filed 07/06/20   Page 12 of 86   Page ID #:5387

# MUTUAL FUNDS PERFORMANCE

INVESTORS.COM

*[Mutual fund performance tables — multiple columns listing fund names with 36 Mos Performance Rating, YTD % After Tax Rtn, 12 Wk % Chg, 3-Yr Chg, Net Asset Value, and NAV Chg.]*

---

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Richard Di Donato, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

v.

Insys Therapeutics, Inc.; Michael L. Babich; Darryl S. Baker; and John N. Kapoor,

Defendants.

No. 16-cv-00302-NVW

**CLASS ACTION**

**SUMMARY NOTICE OF PENDENCY OF CLASS ACTION AND PENDING CONSENT MOTION TO VOLUNTARILY DISMISS INSYS THERAPEUTICS, INC. WITH PREJUDICE BASED UPON ITS BANKRUPTCY**

**TO:** ALL PERSONS AND ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED INSYS THERAPEUTICS, INC. COMMON STOCK DURING THE PERIOD FROM MARCH 3, 2015, THROUGH JANUARY 25, 2016, AND WERE DAMAGED THEREBY (THE "CLASS")

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the District of Arizona, that the above-captioned action ("Action") against Michael L. Babich, Darryl S. Baker, and John N. Kapoor (collectively, "Defendants"), has been certified as a class action on behalf of the Class, except for certain persons and entities that are excluded from the Class by definition as set forth in the full Notice of Pendency of Class Action and Pending Consent Motion to Voluntarily Dismiss Insys Therapeutics, Inc. from the Action with Prejudice Based Upon its Bankruptcy ("Notice") posted on www.InsysRXSecuritiesLitigation.com. The Class was not certified against Insys Therapeutics, Inc. ("Insys" or the "Company"), as claims against Insys are subject to an automatic and mandatory stay of litigation pursuant to 11 U.S.C. § 362 of the United States Code.

YOU ARE ALSO HEREBY NOTIFIED that the Class Representative has a pending motion for voluntary dismissal with prejudice of the claims in the Action against Insys given the Company's bankruptcy and the Class's inability to pursue claims against Insys in the Action.

IF YOU ARE A MEMBER OF THE CLASS, YOUR RIGHTS WILL BE AFFECTED BY THIS LAWSUIT. This notice provides only a summary of the information contained in the full Notice. You may obtain a copy of the Notice from the website for the Action, www.InsysRXSecuritiesLitigation.com, or by contacting the Administrator:

Insys Therapeutics, Inc. Securities Litigation
c/o A.B. Data, Ltd.
P.O. Box 170999
Milwaukee, WI 53217
(866) 905-8102
info@InsysRXSecuritiesLitigation.com

If you are a Class member, you have the right to decide whether to remain a member of the Class. **If you choose to remain a member of the Class, you do not need to do anything at this time other than retain documentation reflecting your transactions in Insys common stock.** You will automatically be included in the Class, and you will be bound by the proceedings in the Action, including all past, present, and future orders and judgments of the Court, whether favorable or unfavorable. If you are a Class member and **do not** wish to remain a member of the Class, you **must** take steps to exclude yourself from the Class.

If you timely and validly request to be excluded from the Class, you will not be bound by any orders or judgments in the Action, and you will not be eligible to receive a share of any money which might be recovered in the Action in the future for the benefit of the Class. To exclude yourself from the Class, you must submit a written request for exclusion **postmarked no later than April 30, 2020**, in accordance with the instructions set forth in the Postcard Notice or full Notice. Pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure, it is within the Court's discretion as to whether a second opportunity to request exclusion from the Class will be allowed if there is a settlement or judgment in the Action; accordingly, this may be the only opportunity to request exclusion. If you fail to request exclusion from the Class. Moreover, if you are a Class member and you wish to object to Class Representative's pending motion to voluntarily dismiss Insys from the Action with prejudice, you must do so by **no later than April 30, 2020**, in accordance with the instructions set forth in the Postcard Notice or full Notice.

Further information may be obtained by contacting the Administrator as set forth above or by visiting the website www.InsysRXSecuritiesLitigation.com.

**Please Do Not Call or Write the Court with Questions.**

DATED: April 6, 2020                                                          BY ORDER OF THE COURT



# SwingTrader

## Your Next Smart Investing Decision.

We invite you to take a complimentary four week trial.

**1.800.648.7285 | www.investors.com/Swing1**

© 2017 Investor's Business Daily, Inc. Investor's Business Daily, IBD and CAN SLIM and corresponding logos are registered trademarks owned by Investor's Business Daily, Inc.

**SWINGTrader**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

In re  Silver Wheaton Corp. Securities Litigation

Master File No. 2:15-cv-05146-CAS-PJW
c/w: 2:15-cv-05573-CAS(PJWx)

**SUMMARY NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION**

**TO ALL PERSONS WHO PURCHASED SILVER WHEATON CORP. SECURITIES ON A UNITED STATES EXCHANGE OR IN DOMESTIC U.S. TRANSACTIONS BETWEEN MARCH 30, 2011 AND JULY 6, 2015, INCLUSIVE**

YOU ARE HEREBY NOTIFIED that the above-captioned action has been certified as a class action for settlement purposes and that Plaintiffs have reached a proposed settlement with Silver Wheaton Corp., n/k/a Wheaton Precious Metals Corp., and certain of its officers, and Deloitte LLP (Canada) ("Settlement") pursuant to an Order of the United States District Court for the Central District of California, that a hearing will be held on August 3, 2020 at 10:00 a.m. before the Honorable Christina A. Snyder, United States District Judge of the Central District of California, First Street Courthouse, 350 W. First Street, Courtroom 8D, 8th Floor, Los Angeles, CA 90012 (the "Settlement Hearing") for the purpose of determining: (1) whether the proposed Settlement consisting of the sum of $41,500,000 in cash should be approved by the Court as fair, reasonable, and adequate; (2) whether the proposed Plan to distribute the settlement proceeds is fair, reasonable, and adequate; (3) whether the application for an award of attorneys' fees of no more than one-third of the settlement amount or $13,833,333) and reimbursement of expenses should be granted; and (4) whether the Action should be dismissed with prejudice.

If you purchased Silver Wheaton securities on a U.S. exchange or in U.S. transactions between March 30, 2011 and July 6, 2015, inclusive (the "Class Period"), your rights may be affected by the Settlement of this action. If you have not received a detailed Notice of Pendency and Proposed Settlement of Class Action ("Notice") and a copy of the Proof of Claim and Release Form ("Proof of Claim"), you may obtain copies by contacting the Claims Administrator at: (1) Mail: Silver Wheaton Corp. Litigation, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson St., Suite 3, Media, PA 19063; (2) Telephone: (866) 274-4004; (3) Facsimile: (610) 565-7985; or (4) email: info@strategicclaims.net, or by going to the website www.silverwheatonsettlement.com. If you are a member of the Class, in order to share in the distribution of the Net Settlement Fund, you must electronically submit a properly completed Proof of Claim by 11:59 p.m. on June 13, 2020 to the Claims Administrator, establishing that you are entitled to recovery. If you are unable to electronically submit a Proof of Claim, you may print and mail a Proof of Claim at your own expense. If you submit a Proof of Claim by mail, the amount of your payout will be reduced to reflect additional administrative costs. Unless you submit a written exclusion request, you will be bound by any judgment rendered in the Litigation whether or not you make a claim. If you desire to be excluded from the Class, you must submit a request for exclusion received no later than July 13, 2020, in the manner and form explained in the detailed Notice. All members of the Class who do not timely and validly request exclusion from the Class will be bound by any judgment rendered in the Litigation whether or not they make a claim. Any objections to the proposed Settlement of attorneys' fees and reimbursement of expenses must be in the manner and form explained in the detailed Notice and received no later than July 20, 2020, to each of the following:

Clerk of the Court
United States District Court
Central District of California
First Street Courthouse
350 W. 1st Street, Suite 4311
Los Angeles, CA 90012

Plaintiffs' Counsel:
Jonathan Horne
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 40th Floor
New York, NY 10016

Silver Wheaton Defendants' Counsel:
Gregory L. Watts
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104

Deloitte's Counsel:
Lee Brand
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166

If you have any questions about the Settlement, you may call or write to Plaintiffs' Counsel at the address listed above. Please visit www.silverwheatonsettlement.com for more information.

**PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE REGARDING THIS NOTICE.**

DATED: MARCH 9, 2020
BY ORDER OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

**Josephine Bravata**

| | |
|---|---|
| **From:** | phhubs@prnewswire.com |
| **Sent:** | Monday, April 06, 2020 8:00 AM |
| **To:** | jbravata@strategicclaims.net |
| **Subject:** | PR Newswire: Press Release Distribution Confirmation for The Rosen Law Firm, P.A.. ID#2749135-1-1 |

Hello

Your press release was successfully distributed at: 06-Apr-2020 08:00:00 AM ET

Release headline: The Rosen Law Firm, P.A. Announces Proposed Class Action Settlement on Behalf of Purchasers of Silver Wheaton Corp. Securities -- WPM
Word Count: 818
Product Selections:
US1
Visibility Reports Email
Complimentary Press Release Optimization
PR Newswire ID: 2749135-1-1

View your release:* http://www.prnewswire.com/news-releases/the-rosen-law-firm-pa-announces-proposed-class-action-settlement-on-behalf-of-purchasers-of-silver-wheaton-corp-securities---wpm-301031103.html?tc=eml_cleartime

Thank you for choosing PR Newswire!

Regards,

Your 24/7 Content Services Team
888-776-0942
PRNCS@prnewswire.com

Achieve your communications goals every time you distribute content, with these tips for crafting your next perfect press release:
https://www.cision.com/us/resources/tip-sheets/easy-pr-sharing-guide/?sf=false

US Members, find audience, engagement and other key metrics for your release by accessing your complimentary Visibility Reports in the Online Member Center:
https://portal.prnewswire.com/Login.aspx

* If the page link does not load immediately, please refresh and try again after a few minutes.

1

EXHIBIT D

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Silver Wheaton Corp. Securities Litigation | Master File No: 2:15-cv-05146-CAS-PJWx c/w: 2:15-cv-05173-CAS(PJWx) |

### INTERNET NOTICE OF PENDENCY AND
### PROPOSED SETTLEMENT OF CLASS ACTION

If you purchased the publicly traded securities of Silver Wheaton Corp., n/k/a Wheaton Precious Metals Corp. ("Silver Wheaton" or the "Company") on a United States exchange (Cusip # 828336107) or in a transaction in the United States between March 30, 2011 and July 6, 2015, inclusive ("Class Period"), you could get a payment from a class action settlement (the "Settlement").

*A federal court has authorized this notice. This is not a solicitation from a lawyer.*

- If approved by the Court, the Settlement will provide $41,500,000 plus interest (the "Settlement Amount"), to pay claims of investors who purchased publicly traded Silver Wheaton securities on a United States exchange or in a transaction in the United States during the period between March 30, 2011 and July 6, 2015, inclusive, and allegedly were damaged thereby (the "Settlement Class").

- The Settlement represents an average recovery of $0.165 per share of Silver Wheaton stock for the 251 million shares outstanding and traded on the NYSE during the Class Period. A share may have been traded more than once during the Class Period. This estimate solely reflects the average recovery per outstanding share of Silver Wheaton stock traded on the NYSE. The indicated average recovery per share will be the total average recovery for all purchasers of that share. This is not an estimate of the actual recovery per share you should expect. Your actual recovery will depend on the aggregate claimed losses of all Settlement Class Members, the date(s) you purchased and sold Silver Wheaton securities, and the total number and amount of claims filed.

- Attorneys for Plaintiffs ("Plaintiffs' Counsel") intend to ask the Court to award them fees of up to $13,833,333 or one-third (33.3%) of the Settlement Amount, reimbursement of litigation expenses of no more than $1,600,000 and an award to Plaintiffs of $12,500 each for reimbursement of reasonable costs and expenses (including lost wages) directly relating to their representation of the Settlement Class, collectively not to exceed $87,500. If approved by the Court, these amounts will be paid from the Settlement Fund.

- If the above amounts are requested and approved by the Court, the average cost per share of common stock will be approximately $0.061 per share, making the estimated recovery per share after fees and expenses approximately $0.104. This estimate is based on the assumptions set forth in the preceding paragraph. Your actual recovery, if any, will vary depending on your purchase price and sales price, and the number and amount of claims filed.

- The Settlement resolves the lawsuit concerning whether Silver Wheaton, its auditor, Deloitte LLP (Canada) ("Deloitte"), and certain of Silver Wheaton's executive officers made false and misleading statements, in violation of federal securities laws, based upon the allegations set forth in the Second Amended Complaint ("Complaint") including that Silver Wheaton's 2010-2014 financial statements were misleading for failing to record a tax liability or to disclose a contingent liability for alleged future tax liabilities relating to income earned by the Company's foreign subsidiaries outside of Canada.

- Your legal rights will be affected whether you act or do not act.  If you do not act, you may permanently forfeit your right to recover on this claim.  Therefore, you should read this notice carefully.
- A copy of the Stipulation of Settlement, which is incorporated by reference herein, is available at www.silverwheatonsettlement.com.  Capitalized terms in this notice shall have the same meaning as in the Stipulation of Settlement.

**YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT**

| | |
|---|---|
| **SUBMIT A CLAIM FORM NO LATER THAN JUNE 13, 2020** | The only way to get a payment. |
| **EXCLUDE YOURSELF NO LATER THAN JUNE 13, 2020** | Get no payment.  This is the only option that allows you to be part of any other lawsuit against the Defendants about the legal claims in this case. |
| **OBJECT NO LATER THAN JULY 20, 2020** | Write to the Court about why you do not like the Settlement. |
| **GO TO A HEARING ON AUGUST 3, 2020** | You may ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | Get no payment.  Give up rights. |

**INQUIRIES**

**Please do not contact the Court regarding this notice.**  All inquiries concerning this Notice, the Proof of Claim and Release Form, or any other questions by Settlement Class Members should be directed to:

Silver Wheaton Corp. Litigation      **or**      Jonathan Horne, Esq.
c/o Strategic Claims Services                  THE ROSEN LAW FIRM, P.A.
P.O. Box 230                          275 Madison Avenue, 40th Floor
600 N. Jackson St., Ste. 205                 New York, New York 10016
Media, PA 19063                      Tel.:  212-686-1060
Tel.:  866-410-3013                   Fax:  212-202-3827
Fax:  610-565-7985                   info@rosenlegal.com
info@strategicclaims.net

## COMMON QUESTIONS AND ANSWERS CONCERNING THE SETTLEMENT

**1.**     **Why did I get this Notice?**

You or someone in your family may have acquired Silver Wheaton securities during the Class Period.

**2.**     **What is this lawsuit about?**

The case is known as *In re Silver Wheaton Corp. Securities Litigation*, Case No. 15-cv-5146-CAS-PJWx (the "Action"), and the court in charge of the case is the United States District Court for the Central District of California (the "Court").

The Action involves whether Defendants violated the federal securities laws because they allegedly made false and misleading statements to the investing public as set out in the Complaint, including allegations that Silver Wheaton's 2010-2014 financial statements were misleading for failing to record a tax liability or to disclose a contingent liability for alleged future tax liabilities relating to income earned by the Company's foreign subsidiaries outside of Canada. Defendants expressly deny all allegations of wrongdoing or liability whatsoever and deny that any Settlement Class Members were damaged.  The Settlement resolves all of the claims in the Class Action against Defendants.

**3.**     **Why is this a class action?**

In a class action, one or more persons and/or entities, called representative plaintiffs, sue on behalf of all persons and/or entities who have similar claims.  All of these persons and/or entities are referred to collectively as a class, and these individual persons and/or entities are known as class members.  One court resolves all of the issues for all class members, except for those class members who validly exclude themselves from the class.

**4.**     **Why is there a Settlement?**

Plaintiffs and Defendants do not agree regarding the merits of Plaintiffs' allegations with respect to liability or the average amount of damages per share that would be recoverable if Plaintiffs were to prevail at trial on each claim.  The issues on which the Plaintiffs and Defendants disagree include: (1) whether Defendants made materially false and misleading statements; (2) whether Defendants made such statements with the intent to defraud the investing public; (3) whether the statements were the cause of the Settlement Class Members' alleged damages; and (4) the amount of damages, if any, suffered by the Settlement Class Members.

This matter has not gone to trial and the Court has not decided in favor of either Plaintiffs or Defendants.  Instead, Plaintiffs and Defendants have agreed to settle the Action.  The Plaintiffs and Plaintiffs' Counsel believe the Settlement is best for all Settlement Class Members because of the risks associated with continued litigation and the nature of the defenses raised by Defendants.  Even if Plaintiffs were to win at trial, and also withstand Defendants' inevitable challenge on appeal, Plaintiffs might not be able to collect some, or all, of the judgment.

**5.**     **How do I know if I am part of the Class Settlement?**

To be a Settlement Class Member, you must have purchased publicly traded Silver Wheaton securities: (i) on a U.S. exchange, or (ii) in a transaction in the United States, during the period from March 30, 2011 to July 6, 2015, inclusive, and not sold such securities prior to July 6, 2015.

3

**6.**     **Are there exceptions to being included?**
Yes.  Excluded from the Settlement Class are (i) persons who sold their shares prior to July 6, 2015; (ii) persons who validly exclude themselves from the Settlement Class, as described below; (iii) Defendants, all present and former officers and directors of Silver Wheaton and any subsidiary thereof, Deloitte and all of its present and former partners, members of all such excluded persons' families and their legal representatives, heirs, successors or assigns and any entity which such excluded persons controlled or in which they have or had a controlling interest.

**7.**     **What does the Settlement provide?**
**(a)**     **What is the Settlement Fund?**
The proposed Settlement calls for the creation of a Settlement Fund (the "Settlement Fund") in the amount of $41,500,000.  The Settlement is subject to Court approval.  Also, subject to the Court's approval, a portion of the Settlement Fund will be used to pay Plaintiffs' Counsel's attorneys' fees and reasonable litigation expenses and any award to Plaintiffs for reimbursement of reasonable costs and expenses (including lost wages) directly relating to their representation of the Settlement Class.  A portion of the Settlement Fund also will be used to pay taxes due on interest earned by the Settlement Fund, if necessary, and any notice and claims administration expenses permitted by the Court.  After the foregoing deductions from the Settlement Fund have been made, the amount remaining (the "Net Settlement Fund") will be distributed to Settlement Class Members who submit valid claims.

**(b)**     **What can I expect to receive under the proposed Settlement?**
Your share of the Net Settlement Fund will or may depend on:  (i) the number of claims filed; (ii) the dates you purchased and sold Silver Wheaton securities; (iii) the prices of your purchases and sales; (iv) the amount of administrative costs, including the costs of notice; and (v) the amount awarded by the Court to Plaintiffs and their counsel for attorneys' fees, costs, and expenses.

The Net Settlement Fund will be distributed to Settlement Class Members who submit valid, timely claim forms ("Authorized Claimants") under the below Plan of Allocation, which reflects Plaintiffs' contention that because of the alleged misrepresentations and omissions made by Defendants, the price of Silver Wheaton stock was artificially inflated during the Class Period and that disclosure of the "true facts" caused changes in the inflated stock price.

The Recognized Claim of each Authorized Claimant shall be calculated according to the following Plan of Allocation:

**PROPOSED PLAN OF ALLOCATION**

The Plan of Allocation is a matter separate and apart from the proposed Settlement, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement.  The Court may approve the Plan of Allocation with or without modifications agreed to among the Parties, or another plan of allocation, without further notice to Settlement Class Members.  Any orders regarding a modification of the Plan of Allocation will be posted to the website for this Settlement, www.silverwheatonsettlement.com.

The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim.  **Please Note**:  The Recognized Claim formula, set forth below, is not intended to be an estimate of the amount of what a Settlement Class Member might have been able to recover after a trial, nor is it an estimate of the amount that will be paid to Authorized Claimants pursuant to the Settlement.  The Recognized Claim formula is the basis upon which the Net Settlement Fund will be proportionately allocated to the Authorized

Claimants.  To the extent there are sufficient funds in the Net Settlement Fund, each Authorized Claimant will receive an amount equal to the Authorized Claimant's Recognized Claim.  If, however, the amount in the Net Settlement Fund is not sufficient to permit payment of the total Recognized Claim of each Authorized Claimant, then each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's Recognized Claim bears to the total Recognized Claims of all Authorized Claimants (*i.e.*, "*pro rata* share").  Payment in this manner shall be deemed conclusive against all Authorized Claimants.  No distribution will be made on a claim where the potential distribution amount is less than ten dollars ($10.00) in cash.

If any funds remain in the Net Settlement Fund by reason of uncashed checks, or otherwise, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, then any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds shall be used: (i) first, to pay any amounts mistakenly omitted from the initial distribution to Authorized Claimants; (ii) second, to pay any additional Administrative Costs incurred in administering the Settlement; and (iii) finally, to make a second distribution to Authorized Claimants who cashed their checks from the initial distribution and who would receive at least $10.00 from such second distribution, after payment of the estimated costs or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second distribution is economically feasible.  If six (6) months after such second distribution, if undertaken, or if such second distribution is not undertaken, any funds shall remain in the Net Settlement Fund, any funds remaining in the Net Settlement Fund shall be donated to a non-profit charitable organization(s) selected by Plaintiffs' Counsel.

## THE BASIS FOR CALCULATING YOUR RECOGNIZED CLAIM:

Each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his, her or its Recognized Claim as compared to the total Recognized Claims of all Authorized Claimants.

**Calculation of Recognized Claim for Common Stock Purchased During the Class Period:**
For shares of common stock purchased between March 30, 2011 and July 6, 2015, inclusive:

A.   For shares sold prior to the close of trading on July 6, 2015, the Recognized Claim shall be zero.

B.   For shares retained at the close of trading on July 6, 2015, the Recognized Claim shall be $1.45.

For purposes of calculating your Recognized Claim, the date of purchase, acquisition or sale is the "contract" or "trade" date and not the "settlement" or "payment" date.  The receipt or grant by gift, inheritance or operation of law of Silver Wheaton stock shall not be deemed a purchase, acquisition or sale of Silver Wheaton stock for the calculation of an Authorized Claimant's Recognized Claim. Any shares transferred into your account must be listed at $0.00 per share and marked as received shares or "R".  If you choose to provide purchase documentation related to the transfer, please do so.  Any shares transferred out of your account must be listed at the price of $0.00 per share and marked as delivered shares or "D".  If you choose to provide sale documentation related to the transfer, please do so.

For purposes of calculating your Recognized Claim, all purchases, acquisitions and sales shall be matched on a First In First Out ("FIFO") basis in chronological order.  Therefore, on the Proof of Claim and Release Form enclosed with this Notice, you must provide all of your purchases, acquisitions and sales of Silver Wheaton stock during the time period from March 30, 2011 through and including July 6, 2015.

Payment pursuant to the Plan of Allocation approved by the Court shall be conclusive against all Authorized Claimants.  No person shall have any claim against Defendants, Defendants' counsel, Plaintiffs, Plaintiffs' Counsel or the Claims Administrator or other agent designated by Plaintiffs' Counsel based on the distributions made substantially in accordance with the Stipulation of Settlement and the

Settlement contained therein, the Plan of Allocation, or further orders of the Court. Each claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the review and approval of the claimant's Proof of Claim and Release Form. All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted in connection with the Settlement, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund shall be released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, will be barred from making any further claim against the Net Settlement Fund beyond the amount allocated to them as provided in any distribution orders entered by the Court.

**Are there any further limitations on the amount I may receive?**

    (i)    Transactions during the Class Period resulting in a gain shall be netted against the Settlement Class Member's transactions resulting in a loss to arrive at the actual trading loss for the claim. To the extent that any Settlement Class Member's actual trading loss is less than the Recognized Claim calculated for the Settlement Class Member's claim, then the amount of the claim will be limited to the Settlement Class Member's actual trading loss.

    (ii)    Any Settlement Class Member whose collective transactions in Silver Wheaton securities during the Class Period resulted in a net gain shall not be entitled to share in the Net Settlement Fund.

    (iii)    The purchase and sale prices exclude any brokerage commissions, transfer taxes or other fees. The covering purchase of a short sale is not an eligible purchase. Gifts and transfers are not eligible purchases.

    (iv)    Exercise of option contracts into Silver Wheaton common stock will be considered to be purchases or sales of Silver Wheaton common stock on the date of the exercise.

    (v)    When providing share transactions during the Class Period, your claim form must balance. The shares at the beginning of the Class Period, plus purchases during the Class Period, minus sales during the Class Period, must equal the shares balance at the end of the Class Period. If you submit a claim that does not balance, your claim will not be processed and may be ineligible to participate in this settlement.

**8.**    **How can I get a payment?**

To qualify for a payment, you should fill out a form online at www.silverwheatonsettlement.com ("Case Website"). Read the instructions carefully, fill out the form, and sign it in the location indicated. The Case Website also includes instructions on downloading your transaction data directly from your brokerage so that you do not have to manually enter each transaction.

If you are unable to fill out a form online, please print the form entitled "Proof of Claim and Release Form" (also called the "Claim Form") available on the Case Website, fill it out, and mail it to the address below:

Silver Wheaton Corp. Litigation
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson St., Ste. 205
Media, PA 19063
Tel.: 866-410-3013
Fax: 610-565-7985
info@strategicclaims.net

6

Please note that if you choose to print and mail a form, you will need to manually enter each transaction.

Typically, most class members submit electronic claims. Submitting a claim by mail significantly increases the time necessary to process the claim, which both delays payments to all Settlement Class Members and reduces the amount of money that can be distributed to Settlement Class Members. Accordingly, if you choose to submit a claim by mail, your Recognized Claim will be reduced by the greater of $5 or 1%.

The Claims Administrator will process your claim and determine whether you are an "Authorized Claimant."

9. **What am I giving up to get a payment or stay in the Settlement Class?**
Unless you validly exclude yourself, you will remain in the Settlement Class. That means that if the Settlement is approved, you and all Settlement Class Members will release (agreeing never to sue, continue to sue, or be part of any other lawsuit) the Released Claims (as defined below) against the "Released Persons" defined as: Defendants, their present and former parents, subsidiaries, divisions, departments, affiliates, stockholders, partners, officers, directors, employees, agents, insurers, co-insurers, reinsurers, accountants, auditors, financial advisors, investment bankers, underwriters, attorneys (including Defendants' counsel), transfer pricing consultants, assigns, spouses, heirs, or any entity in which any Defendant has a controlling interest, any member of any Individual Defendant's immediate family, or any trust of which any Individual Defendant is the settler or which is for the benefit of any Individual Defendant and/or member(s) of his family (and the predecessors, successors, administrators and assigns of each of the foregoing).

"Released Claims" or "Release of Claims" means any and all Claims (including Unknown Claims), rights, demands, obligations, damages, actions or causes of action, or liabilities whatsoever, of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law or regulation, that have been, could have been, or in the future can or might be asserted by any member of the Settlement Class, or their successors, assigns, executors, administrators, representatives, attorneys, and agents, in their capacities as such, against the Released Persons arising out of, relating to, or in connection with both (a) the purchase, acquisition, holding, sale or other disposition of publicly traded Silver Wheaton securities on a United States exchange or in a U.S. transaction during the Class Period and (b) the acts, facts, events, transactions, occurrences, statements, representations or omissions that were or could have been alleged or asserted by Plaintiffs or any member of the Settlement Class in the Action or in any other action in any court or forum. For avoidance of doubt, the term "Released Claims" does not include any claims arising out of, relating to, or in connection with the purchase, acquisition, holding, sale or other disposition of Silver Wheaton securities on a non-U.S. exchange or in a non-U.S. transaction. To the extent that a person or entity purchased, held, sold, or otherwise disposed of Silver Wheaton securities on both U.S. and non-U.S. exchanges during the Class Period, the term "Released Claims" extends only to those transactions involving publicly traded Silver Wheaton securities purchased, held, sold, or otherwise disposed of on a U.S. exchange or in a U.S. transaction. The term "Released Claims" also does not include any claims to enforce this Settlement.

If you sign the Claim Form, you are agreeing to release your claims against the Released Persons, which will bar you from ever filing a lawsuit that could have been brought under any of the Released Claims. That means you will accept a share in the Net Settlement Fund as sole

compensation for any losses you have suffered in the acquisition and sale of Silver Wheaton securities during the Class Period.

Further information about what you are agreeing to and giving up is detailed in the Stipulation of Settlement, which is available at www.silverwheatonsettlement.com.

**10.     How do I get out of the Settlement?**
If you do not want to receive a payment from this Settlement, and you want to keep any right you may have to sue or continue to sue Defendants on your own based on the legal claims raised in this Class Action, then you must take steps to get out of the Settlement.  This is called excluding yourself from – or "opting out" of – the Settlement.  To validly exclude yourself from the Settlement, you must mail a letter stating that you "request exclusion from the Settlement Class in *In re Silver Wheaton Corp. Sec. Litig.* Case No. 15-CV-5146-CAS-PJWx".  You must include your name, address, telephone number, email contact information (if any) and your signature, along with an accurate list of all of your purchases and sales of Silver Wheaton securities on a U.S. stock exchange or in U.S. transactions during the Class Period, including the date, number of shares and price of the shares purchased or sold and supporting brokerage account documentation.  You must mail your exclusion request, received no later than June 13, 2020, to the address below and to Plaintiffs' Counsel and Defendants' Counsel at the addresses listed in question 14 below:

Silver Wheaton Corp. Litigation
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson St., Ste. 205
Media, PA 19063

You cannot exclude yourself by telephone or by e-mail.  If you ask to be excluded, you will not receive a settlement payment, and you cannot object to the Settlement.  If you ask to be excluded in conformity with this Notice, you will not be legally bound by anything that happens in this Action.

**11.     If I do not exclude myself, can I sue Defendants for the same thing later?**
No.  Unless you exclude yourself, you give up any right to sue Defendants for the claims that this Settlement resolves, or the Released Claims as defined above.  If you have a pending lawsuit, speak to your lawyer in that case immediately, since you may have to exclude yourself from this Settlement Class to continue your own lawsuit.

**12.     Do I have a lawyer in this case?**
The Court has appointed The Rosen Law Firm, P.A. as Plaintiffs' counsel to represent the Settlement Class Members for the purposes of this Settlement ("Plaintiffs' Counsel").  You have the option to retain your own separate counsel at your own cost and expense.  You need not retain your own separate counsel to opt-out, object, submit a Proof of Claim and Release Form, or appear at the Settlement Hearing.

**13.     How will the lawyers be paid?**
Plaintiffs' Counsel have expended considerable time litigating this action on a contingent fee basis and have paid for the expenses of the litigation themselves and have not been paid any attorneys' fees in advance of this Settlement.  Plaintiffs' Counsel have done so with the expectation that if they are successful in recovering money for the Settlement Class, they will receive attorneys' fees and be reimbursed for their litigation expenses from the Settlement Fund, as is customary in this

type of litigation.  Plaintiffs' Counsel will not receive attorneys' fees or be reimbursed for their litigation expenses except from the Settlement Fund.  Therefore, Plaintiffs' Counsel will file a motion asking the Court at the Settlement Hearing to make an award of attorneys' fees in an amount not to exceed one-third of the Settlement Fund and for reimbursement of reasonable litigation expenses not to exceed $1,600,000, and an award to Plaintiffs for reimbursement of reasonable costs and expenses (including lost wages) directly relating to their representation of the Settlement Class, in an amount collectively not to exceed $87,500 or $12,500 each.  The Court may award less than these amounts.  Any amounts awarded by the Court will come out of the Settlement Fund.

**14.    How do I tell the Court that I do not like the Settlement?**

You can tell the Court you do not agree with the Settlement, any part of the Settlement, or Plaintiffs' Counsel's motion for attorneys' fees, and that you think the Court should not approve the Settlement, by mailing a letter stating that you object to the Settlement in the matter of *In re Silver Wheaton Corp. Securities Litigation*, Case No. 15-CV-5146-CAS-PJWx.  For your objection to be valid, you must include: (a) your name, address, and telephone number; (b) your signature; (c) a statement of your objection or objections, and the specific reasons for each objection, including any legal and evidentiary support you wish to bring to the Court's attention; (d) brokerage account documentation listing your purchases and sales of Silver Wheaton securities during the Class Period, including the date, number of shares and price of the shares purchased and sold on a U.S. exchange or in domestic U.S. transactions in order to show your membership in the Settlement Class; (e) the name, address, and telephone number of all counsel who represent you for the objection, including former or current counsel who may be entitled to compensation in connection with the objection; (f) a statement confirming whether you and/or your counsel plan to appear at the Settlement Hearing; and (g) the number of times you have filed an objection to a class action settlement in the previous five years and the nature of each objection.  Be sure to mail the objections and supporting documentation to *each* of the places listed below, such that they are *received* no later than July 20, 2020, so the Court will consider your views:

| Clerk of the Court<br>United States District Court<br>Central District of California<br>First Street U.S. Courthouse<br>350 W 1st Street, Suite 4311<br>Los Angeles, CA 90012 | *Plaintiffs' Counsel:*<br><br>Jonathan Horne<br>THE ROSEN LAW FIRM, P.A.<br>275 Madison Avenue, 40th Floor<br>New York, NY 10016 |
|---|---|
| *Silver Wheaton Defendants' Counsel:*<br><br>Gregory L. Watts<br>WILSON SONSINI GOODRICH & ROSATI, P.C.<br>701 Fifth Avenue, Suite 5100<br>Seattle, WA 98104 | *Deloitte's Counsel:*<br><br>Lee G. Dunst<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, NY 10166 |

Attendance at the Final Settlement Hearing is not necessary but persons wishing to be heard orally regarding the Settlement, the Plan of Allocation, and/or the application for attorneys' fees and expenses or award to Plaintiffs must indicate in their written objection (or in a separate writing that is submitted in accordance with the deadline and after any instruction pertinent to the submission of a written objection) that they intend to appear at the Settlement Hearing and identify any witnesses they may call to testify or exhibits they intend to introduce into evidence at the Final Settlement Hearing.

**15.    What is the difference between objecting and requesting exclusion?**

Objecting is simply telling the Court you do not like something about the Settlement.  You can object only if you stay in the Settlement Class.  Requesting exclusion is telling the Court you do not want to be part of the Settlement Class and Settlement.  If you exclude yourself, you cannot object to the Settlement because it no longer concerns you.  If you stay in the Settlement Class and object, but your objection is overruled, you will not be allowed a second opportunity to exclude yourself and you will be bound by any order issued by the Court.

**16.    When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Settlement Hearing on August 3, 2020 at 10:00 a.m., at the United States District Court, Central District of California, First Street Courthouse, 350 W. First Street, Courtroom 8D, 8th Floor, Los Angeles, CA 90012.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and whether to approve the Settlement.  If there are objections, the Court will consider them, and the Court will listen to people who have asked to speak at the hearing.  The Court may also decide how much to award Plaintiffs' Counsel for attorneys' fees and expenses or Plaintiffs for their reasonable costs and expenses (including lost wages) directly relating to their representation of the Settlement Class.

**17.    Do I have to come to the hearing?**

No.  Plaintiffs' Counsel will answer any questions the Court may have.  However, you are welcome to attend at your own expense.  If you send an objection, you do not have to come to Court to talk about it.  As long as you mail your written objection on time along with the required information, the Court will consider it.

**18.    What happens if I do nothing at all?**

If you do nothing, you will not receive a payment from the Settlement.  However, unless you validly exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants about the claims made in this case ever again.

DATED: MARCH 9, 2020

BY ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE CENTRAL
DISTRICT OF CALIFORNIA

10

# PROOF OF CLAIM AND RELEASE FORM

**Deadline for Submission:  June 13, 2020**

If you purchased the securities of Silver Wheaton Corp. ("Silver Wheaton") during the period from March 30, 2011 through July 6, 2015, inclusive (the "Class Period"), you are a "Settlement Class Member" and you may be entitled to share in the settlement proceeds.  (Excluded from the Settlement Class are Defendants, all present and former officers and directors of Silver Wheaton and any subsidiary thereof, Deloitte and all of its present and former partners, members of all such excluded persons' families and their legal representatives, heirs, successors or assigns and any entity which such excluded persons controlled or in which they have or had a controlling interest.)

If you are a Settlement Class Member, you must complete and submit this form in order to be eligible for any settlement benefits.

Most claimants submit their Proof of Claim and Release Form electronically.  To file your claim electronically, you must complete and submit the form online at www.silverwheatonsettlement.com no later than June 13, 2020. However, you may also sign this Proof of Claim and Release Form and mail it by first class mail, postmarked no later than June 13, 2020, to Strategic Claims Services, the Claims Administrator, at the following address:

Silver Wheaton Corp. Litigation
c/o Strategic Claims Services
600 N. Jackson St., Ste. 205
P.O. Box 230
Media, PA 19063
Tel.:  866-410-3013
Fax:  610-565-7985
info@strategicclaims.net

IF YOU SUBMIT YOUR PROOF OF CLAIM AND RELEASE FORM BY MAIL, YOUR RECOGNIZED CLAIM WILL BE REDUCED BY $5 OR 1%, WHICHEVER IS GREATER, TO ACCOUNT FOR INCREASED ADMINISTRATION COSTS OF PROCESSING PAPER CLAIMS.

Your failure to submit your claim by June 13, 2020 will subject your claim to rejection and preclude you from receiving any money in connection with the settlement of this action.  Do not mail or deliver your claim to the Court or to any of the parties or their counsel, as any such claim will be deemed not to have been submitted.  Submit your claim only to the Claims Administrator.  If you are a Settlement Class Member and do not submit a proper Proof of Claim and Release Form, you will not share in the Settlement, but you nevertheless will be bound by the Order and Final Judgment of the Court unless you exclude yourself.

Submission of a Proof of Claim and Release Form does not assure that you will share in the proceeds of the Settlement.

## CLAIMANT'S STATEMENT

1. I (we) purchased the securities of Silver Wheaton Corp. ("Silver Wheaton") during the Class Period.  (Do not submit this Proof of Claim and Release Form if you did not purchase Silver Wheaton securities during the Class Period.)

2. By submitting this Proof of Claim and Release Form, I (we) state that I (we) believe in good faith that I am (we are) a Settlement Class Member(s) as defined above and in the Internet Notice of Pendency and Proposed Settlement of Class Action (the "Notice"), or am (are) acting for such person(s); that I am (we are) not a Defendant in the Action or anyone excluded from the Settlement Class; that I (we) have read and understand the Notice; that I (we) believe that I am (we are) entitled to receive a share of the Net Settlement Fund, as defined in the Notice; that I (we) elect to participate in the proposed Settlement described in the Notice; and that I (we) have not filed a request for exclusion.  (If you are acting in a representative capacity on behalf of a Settlement Class Member [e.g., as an executor, administrator, trustee, or other representative], you must submit evidence of your current authority to act on behalf of that Settlement Class Member. Such evidence would include, for example, letters testamentary, letters of administration, or a copy of the trust documents.)

1

3.  I (we) consent to the jurisdiction of the Court with respect to all questions concerning the validity of this Proof of Claim and Release Form. I (we) understand and agree that my (our) claim may be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to my (our) status as a Settlement Class Member(s) and the validity and amount of my (our) claim. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of the Proof of Claim and Release Form.

4.  I (we) have set forth where requested below all relevant information with respect to each purchase or acquisition of Silver Wheaton securities during the period from March 30, 2011 through and including July 6, 2015, and each sale, if any, of such securities.  I (we) agree to furnish additional information to the Claims Administrator to support this claim if requested to do so.

5.  I (we) have enclosed photocopies of the stockbroker's confirmation slips, stockbroker's statements, or other documents evidencing each purchase, acquisition, and sale of Silver Wheaton securities listed below in support of my (our) claim. (IF ANY SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN A COPY OR EQUIVALENT DOCUMENTS FROM YOUR BROKER OR TAX ADVISOR BECAUSE THESE DOCUMENTS ARE NECESSARY TO PROVE AND PROCESS YOUR CLAIM.)

6.  I (we) understand that the information contained in this Proof of Claim and Release Form is subject to such verification as the Claims Administrator may request or as the Court may direct, and I (we) agree to cooperate in any such verification. (The information requested herein is designed to provide the minimum amount of information necessary to process most simple claims.  The Claims Administrator may request additional information as required to efficiently and reliably calculate your recognized claim.  In some cases, the Claims Administrator may condition acceptance of the claim based upon the production of additional information, including, where applicable, information concerning transactions in any derivatives securities such as options.)

7.  Upon the occurrence of the Court's approval of the Settlement, as detailed in the Notice, I (we) agree and acknowledge that my (our) signature(s) hereto shall effect and constitute a full and complete release, remise and discharge by me (us) and my (our) respective parent entities, associates, affiliates, subsidiaries, predecessors, successors, assigns, attorneys, heirs, representatives, joint tenants, tenants in common, beneficiaries, executors, administrators, insurers, legatees, and estates (or, if I am (we are) submitting this Proof of Claim and Release Form on behalf of a corporation, a partnership, estate or one or more other persons, by it, him, her or them, and by its, his, her or their respective parent entities, associates, affiliates, subsidiaries, predecessors, successors, assigns, attorneys, heirs, representatives, joint tenants, tenants in common, beneficiaries, executors, administrators, insurers, legatees, and estates) of each of the "Released Persons" of all "Released Claims."

8.  Upon the occurrence of the Court's approval of the Settlement, as detailed in the Notice, I (we) agree and acknowledge that my (our) signature(s) hereto shall effect and constitute a covenant by me (us) and my (our) heirs, joint tenants, tenants in common, beneficiaries, executors, administrators, predecessors, successors, attorneys, insurers and assigns (or, if I am (we are) submitting this Proof of Claim and Release Form on behalf of a corporation, a partnership, estate or one or more other persons, by it, him, her or them, and by its, his, her or their heirs, executors, administrators, predecessors, successors, and assigns) to permanently refrain from prosecuting or attempting to prosecute any Released Claims against any of the Released Parties.

9.  "Claims" means any and all manner of claims, demands, rights, actions, potential actions, causes of action, liabilities, duties, damages, losses, diminutions in value, obligations, agreements, suits, fees, attorneys' fees, expert or consulting fees, debts, expenses, costs, sanctions, judgments, decrees, matters, issues and/or controversies of any kind or nature whatsoever, whether known or unknown, contingent or absolute, liquidated or not liquidated, accrued or unaccrued, suspected or unsuspected, disclosed or undisclosed, apparent or not apparent, foreseen or unforeseen, matured or not matured, which now exist, or heretofore or previously existed, or may hereafter exist, including, but not limited to, any claims arising under federal, state, common law, statute, rule, or regulation, whether individual, class, direct, derivative, representative, on behalf of others, legal, equitable, or of any other type or in any other capacity.

10.  "Released Persons" means the Defendants, their present and former parents, subsidiaries, divisions, departments, affiliates, stockholders, partners, officers, directors, employees, agents, insurers, co-insurers, reinsurers, accountants, auditors, financial advisors, investment bankers, underwriters, attorneys (including Defendants' Counsel), transfer pricing consultants, assigns, spouses, heirs, or any entity in which any Defendant has a controlling interest, any member of any Individual Defendant's immediate family, or any trust of which any Individual Defendant is the settler or which is for the benefit of any individual defendant and/or member(s) of his family (and the predecessors, successors, administrators and assigns of each of the foregoing).

11.  "Released Claims" means any and all Claims (including Unknown Claims), rights, demands, obligations, damages, actions or causes of action, or liabilities whatsoever, of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law or regulation, that have been, could have been, or in the future can or might

be asserted by any member of the Settlement Class, or their successors, assigns, executors, administrators, representatives, attorneys, and agents, in their capacities as such, against the Released Persons arising out of, relating to, or in connection with both (a) the purchase, acquisition, holding, sale or other disposition of publicly traded Silver Wheaton securities on a United States exchange or in a U.S. transaction during the Class Period and (b) the acts, facts, events, transactions, occurrences, statements, representations or omissions that were or could have been alleged or asserted by Plaintiffs or any member of the Settlement Class in the Action or in any other action in any court or forum. For avoidance of doubt, the term "Released Claims" does not include any claims arising out of, relating to, or in connection with the purchase, acquisition, holding, sale or other disposition of Silver Wheaton securities on a non-U.S. exchange or in a non-U.S. transaction. To the extent that a person or entity purchased, held, sold, or otherwise disposed of Silver Wheaton securities on both U.S. and non-U.S. exchanges during the Class Period, the term "Released Claims" extends only to those transactions involving publicly traded Silver Wheaton securities purchased, held, sold, or otherwise disposed of on a U.S. exchange or in a U.S. transaction. The term "Released Claims" also does not include any claims to enforce this Settlement.

12. "Unknown Claims" shall mean any and all claims, demands, rights, liabilities, and causes of action of every nature and description which any Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision not to opt-out or object to this Settlement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Plaintiffs shall expressly waive, and each of the Settlement Class Members shall be deemed to have waived, and by operation of the Final Judgment shall have waived, the provisions, rights and benefits of California Civil Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Plaintiffs shall expressly waive and each of the Settlement Class Members shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived any and all provisions, rights and benefits conferred by any law of any state, territory, foreign country or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542. Plaintiffs and/or one or more Settlement Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but the Plaintiffs shall expressly fully, finally and forever settle and release, and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally and forever settled and released, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of fiduciary duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Plaintiffs acknowledge, and the Settlement Class Members shall be deemed by operation of the Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

13. I (we) acknowledge that I (we) may hereafter discover facts in addition to or different from those which I (we) now know or believe to be true with respect to the subject matter of the Released Claims, but expressly fully, finally and forever settle and release, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of fiduciary duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

14. I (We) acknowledge that the inclusion of "Unknown Claims" in the definition of claims released pursuant to the Stipulation of Settlement ("Stipulation") was separately bargained for and is a material element of the Settlement of which this release is a part.

15. NOTICE REGARDING ELECTRONIC FILES: Certain claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files. To obtain the mandatory electronic filing requirements and file layout, you may email the Claims Administrator's electronic filing department at efile@strategicclaims.net. Any file not submitted in accordance with the required electronic filing format will be subject to rejection. No electronic files will be considered to have been properly submitted unless the Claims Administrator issues an email after processing your file with your claim number(s) and respective account information. Do not assume that your file has been received or processed until you receive this email. If you do not receive such an email within 10 days of your submission, you should contact the electronic filing department at efile@strategicclaims.net to inquire about your file and confirm it was received and acceptable.

SILVER WHEATON

## I. CLAIMANT INFORMATION

| Beneficial Owner: |
|---|
| |
| Address: |
| |

| City: | State: | ZIP: |
|---|---|---|

| Foreign Province: | Foreign Country: |
|---|---|

| Day Phone: | Evening Phone: |
|---|---|

| Email: |
|---|

| Social Security Number (for individuals): | OR | Taxpayer Identification Number (for estates, trusts, corporations, etc.): |
|---|---|---|

## II. SCHEDULE OF TRANSACTIONS IN SILVER WHEATON SECURITIES

**Beginning Holdings:**

A.  State the total number of shares of Silver Wheaton common stock held at the close of trading on March 29, 2011 (*must be documented*).  If none, write "zero" or "0."

**Purchases/Acquisitions:**

B.  Separately list each and every purchase of Silver Wheaton common stock between March 30, 2011 and July 6, 2015, both dates inclusive, and provide the following information (*must be documented*):

| Trade Date (List Chronologically) (Month/Day/Year) | Number of Shares Purchased/Acquired | Price per Share | Total Cost (Excluding Commissions, Taxes, and Fees) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

4

SILVER WHEATON

**Sales:**

C.  Separately list each and every sale of Silver Wheaton common stock between March 30, 2011 and July 6, 2015, both dates inclusive, and provide the following information (*must be documented*):

| Trade Date (List Chronologically) (Month/Day/Year) | Number of Shares Sold | Price per Share | Amount Received (Excluding Commissions, Taxes, and Fees) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**Ending Holdings:**

D.  State the total number of shares of Silver Wheaton common stock held at the close of trading on July 6, 2015 (*must be documented*).

**If additional space is needed, attach separate, numbered sheets, giving all required information, substantially in the same format, and print your name and Social Security or Taxpayer Identification number at the top of each sheet.**

**III. SUBSTITUTE FORM W-9**

Request for Taxpayer Identification Number:

Enter taxpayer identification number below for the Beneficial Owner(s).  For most individuals, this is your Social Security Number.  The Internal Revenue Service ("I.R.S.") requires such taxpayer identification number.  If you fail to provide this information, your claim may be rejected.

| Social Security Number (for individuals) | or | Taxpayer Identification Number (for estates, trusts, corporations, etc.) |
|---|---|---|
| _____ |  | _____ |

**IV. CERTIFICATION**

I (We) submit this Proof of Claim and Release Form under the terms of the Stipulation described in the Notice.  I (We) also submit to the jurisdiction of the United States District Court for the Central District of California, with respect to my (our) claim as a Settlement Class Member and for purposes of enforcing the release and covenant not to sue set forth herein.  I (We) further acknowledge that I am (we are) bound by and subject to the terms of any judgment that may be entered in this Action.  I (We) have not submitted any other claim covering the same purchases or sales of Silver Wheaton securities during the Class Period and know of no other Person having done so on my (our) behalf.

SILVER WHEATON

I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(c) of the Internal Revenue Code because: (a) I am (We are) exempt from backup withholding; or (b) I (We) have not been notified by the I.R.S. that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends; or (c) the I.R.S. has notified me (us) that I am (we are) no longer subject to backup withholding.

NOTE: If you have been notified by the I.R.S. that you are subject to backup withholding, please strike out the language that you are not subject to backup withholding in the certification above.

UNDER THE PENALTIES OF PERJURY UNDER THE LAWS OF THE UNITED STATES, I (WE) CERTIFY THAT ALL OF THE INFORMATION I (WE) PROVIDED ON THIS PROOF OF CLAIM AND RELEASE FORM IS TRUE, CORRECT AND COMPLETE.

Signature of Claimant (If this claim is being made on behalf of Joint Claimants, then each must sign):

_____
(Signature)

_____
(Signature)

_____
(Capacity of person(s) signing, e.g. beneficial purchaser(s), executor, administrator, trustee, etc.)
☐ Check here if proof of authority to file is enclosed. (See Item 2 under Claimant's Statement)

Date: _____

**To file your Proof of Claim and Release Form electronically, please visit the Silver Wheaton case website, www.silverwheatonsettlement.com.  The case website has a page called "File a Claim Online" that will direct you to the electronic filing system.  Once you click the File a Claim Online page, you will be given detailed instructions for filling out and submitting your Proof of Claim and Release Form online.  Please read the instructions carefully and make sure that you have the information and documents necessary to complete your online claim.  You will need to provide the contact information and list of transactions stated in the instructions, as well as attach the documentation listed in paragraph 5 on page 2 of this Proof of Claim and Release Form, in order to submit your claim electronically.  If you do not provide all of the information and documents required, you will not be able to proceed with your submission through the electronic filing system.**

**If you experience any issues while filling out your Proof of Claim and Release Form electronically, or if you have any questions about filing, you may contact the Claims Administrator via email at info@strategicclaims.net or by toll-free phone at (866) 410-3013.**

SILVER WHEATON

**IF YOU CHOOSE TO FILE YOUR CLAIM BY MAIL, THIS PROOF OF CLAIM AND RELEASE FORM MUST BE POSTMARKED NO LATER THAN JUNE 13, 2020 AND MUST BE MAILED TO:**

Silver Wheaton Corp. Litigation
c/o Strategic Claims Services
600 N. Jackson St., Ste. 205
P.O. Box 230
Media, PA 19063
Tel.:  866-410-3013
Fax:  610-565-7985
info@strategicclaims.net

**IF YOU SUBMIT YOUR PROOF OF CLAIM AND RELEASE FORM BY MAIL, YOUR RECOGNIZED CLAIM WILL BE REDUCED BY $5 OR 1%, WHICHEVER IS GREATER, TO ACCOUNT FOR INCREASED ADMINISTRATION COSTS INCURRED IN PROCESSING HARD-COPY CLAIMS.**

A Proof of Claim and Release Form received by the Claims Administrator shall be deemed to have been submitted when posted, if mailed by June 13, 2020 and if a postmark is indicated on the envelope and it is mailed first class and addressed in accordance with the above instructions.  In all other cases, a Proof of Claim and Release Form shall be deemed to have been submitted when actually received by the Claims Administrator.

You should be aware that it will take a significant amount of time to process fully all of the Proof of Claim and Release Forms and to administer the Settlement.  This work will be completed as promptly as time permits, given the need to investigate and tabulate each Proof of Claim and Release Form.  Please notify the Claims Administrator of any change of address.

### REMINDER CHECKLIST
- o  Please be sure to sign this Proof of Claim and Release Form on page 7.  If this Proof of Claim and Release Form is submitted on behalf of joint claimants, then both claimants must sign.
- o  Please remember to attach supporting documents.  Do NOT send any stock certificates.  Keep copies of everything you submit.
- o  Do NOT use highlighter on the Proof of Claim and Release Form or any supporting documents.
- o  If you move or change your address, telephone number or email address, please submit the new information to the Claims Administrator, as well as any other information that will assist us in contacting you.  NOTE: Failure to submit updated information to the Claims Administrator may result in the Claims Administrator's inability to contact you regarding issues with your claim or delivery of payment to you.

Silver Wheaton Corp.Litigation
c/o Strategic Claims Services
600 N. Jackson Street, Suite 205
Media, PA 19063

**IMPORTANT LEGAL NOTICE – PLEASE FORWARD**

EXHIBIT E

May 1, 2020

Silver Wheaton Corp. Litigation
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson St., Ste. 205
Media, PA  19063

RE:  In re Silver Wheaton Corp. Sec. Litig. Case No. 15-CV-5146-CAS-PJWx
Master File No. 2:15-cv-05146-CAS-PJWx  c/w: 2:15-cv-05173-CAS (PJWx)

Dear Sir or Madam:

I am requesting exclusion from the Settlement Class in In re Silver Wheaton Corp. Sec. Litig.
Case No. 15-CV-5146-CAS-PJWx.

A notice was sent to me old address at ██████████████████████

My Current Address and Information is as follows:

Timothy D Osterhouse



Purchase date 4/4/2011 100 shares @ $44.1645 per share for a total of $4,416.45
Sold date 4/29/2011 100 shares @ $39.0047 per share for a total of $3,900.47

Enclosed please find supporting brokerage account documentation.

Thank you for your help in this matter.

Sincerely,

Timothy D. Osterhouse



110429 270 002011614   C  2
HARBINGER FINANCIAL GROUP, INC
SECURITIES OFFERED THROUGH
TRIAD ADVISORS, INC.

FBO TIMOTHY D OSTERHOUSE

**Account Number:**



**FOR QUESTIONS OR UP-TO-DATE ACCOUNT INFORMATION:**

Local

Portfolio Value
(in hundres of dollars)

2,100

1,400

700

☐ September 2010   ▨ December 2010
■ March 2011   ■ This Period

A portfolio value less than $100.00 may not be displayed.

**Statement Date: 04/01/11 to 04/30/11**

# SNAPSHOT

**TOTAL PORTFOLIO**
**$165,956.14**

| PORTFOLIO VALUE | This Period | Prior Period |
|---|---|---|
| Cash and Cash Equivalents | $19,574.03 | $13,441.68 |
| Securities | $130,050.80 | $134,927.26 |
| Other Securities | $16,331.31 | $16,374.96 |
| **TOTAL PORTFOLIO VALUE** | **$165,956.14** | **$164,743.90** |

| ACCOUNT ACTIVITY | This Period | YEAR-TO-DATE |
|---|---|---|
| Net Trading | $6,428.00 | ($24,271.50) |
| Net Core Fund Activity | ($6,132.35) | $24,502.64 |
| Net Additions and Withdrawals | $0.00 | $5,632.83 |
| Net Income and Expenses | ($295.65) | ($231.14) |
| Net Miscellaneous Activity | $0.00 | $0.00 |

*Account carried with National Financial Services LLC, Member NYSE, SIPC*

Brokerage Services provided by Triad Advisors, Inc. Harbinger Financial Group, Inc.,
and Triad Advisors, Inc. are affiliated in that Harbinger Financial Group, Inc. is a
branch office of Triad Advisors, Inc. If you have any questions please contact
Triad Advisors at 888 713 5445.

**LEGEND**
0 Numbers in parenthesis
are debits or subtractions
NFS = National Financial
Services LLC

Page 1 of 12
110429 270 002011614



## Harbinger
FINANCIAL GROUP INC.

**Account Number:**
**Account Name:** OSTERHOUSE

**Statement Date:** 04/01/2011 to 04/30/2011

**ALERT:**
All income is tax deferred until it is distributed from the account.

# SUMMARY

| PORTFOLIO VALUE | This Period | Prior Period |
|---|---|---|
| **Cash and Cash Equivalents** | | |
| Money Markets | $19,574.03 | $13,441.68 |
| **Securities** | | |
| Equities | | |
| Equity | $67,645.53 | $57,426.54 |
| **Mutual Funds** | | |
| Equity | $62,405.27 | $77,500.72 |
| Total Securities | **$130,050.80** | **$134,927.26** |
| Other Securities | $16,331.31 | $16,374.96 |
| **TOTAL PORTFOLIO VALUE** | **$165,956.14** | **$164,743.90** |

| ACCOUNT ACTIVITY | This Period | YEAR-TO-DATE |
|---|---|---|
| **BEGINNING BALANCE** | **$0.00** | |
| **Trading** | | |
| Securities Purchased | ($14,128.40) | ($73,981.43) |
| Securities Sold | $20,556.40 | $49,709.93 |
| **NET TRADING** | **$6,428.00** | **($24,271.50)** |
| **Core Fund Activity** | | |
| Core Funds Purchased | ($20,556.51) | ($31,787.34) |
| Core Funds Sold | $14,424.16 | $56,289.98 |
| **NET CORE FUND ACTIVITY** | **($6,132.35)** | **$24,502.64** |
| **Additions and Withdrawals** | | |
| Rollovers | $0.00 | $5,632.83 |
| **NET ADDITIONS AND WITHDRAWALS** | **$0.00** | **$5,632.83** |
| **Income and Expenses** | | |
| Taxable Income | | |
| Tax Deferred Dividends | $0.11 | $344.57 |
| **NET TAXABLE INCOME** | **$0.11** | **$344.57** |
| TOTAL INCOME | $0.11 | $344.57 |
| Account Fees | ($295.76) | ($575.71) |
| **TOTAL EXPENSES** | **($295.76)** | **($575.71)** |

## PORTFOLIO ALLOCATION

| | | |
|---|---|---|
| ▨ Money Markets | | 11.79 % |
| ▩ Equity | | 78.37 % |
| ▦ Other Securities | | 9.84 % |

Allocations for equities, fixed income, and other categories may include mutual funds and may be net of short positions. NFS has made assumptions concerning how certain mutual funds are allocated. Closed-end mutual funds listed on an exchange may be included in the equity allocation. The chart may not reflect your actual portfolio allocation. Consult your broker/dealer prior to making investment decisions.

*Account carried with National Financial Services, LLC, Member NYSE, SIPC*



**Harbinger**
FINANCIAL GROUP INC.

**Account Number:**
**Account Name:** OSTERHOUSE

**Statement Date:** 04/01/2011 to 04/30/2011

| NET INCOME AND EXPENSES | ($295.65) | ($231.14) |
|---|---|---|
| NET MISCELLANEOUS ACTIVITY | $0.00 | $0.00 |
| ENDING BALANCE | $0.00 | |

| CLOSED LOT GAIN (LOSS) SUMMARY | This Period | Year-to-Date |
|---|---|---|
| Net Gain (Loss) from Trading | ($213.19) | ($1,604.91) |

The above section is a summary of gain (loss) for transactions in your account. These figures exclude transactions where cost information is incomplete.

Retirement account cost and associated gain (loss) information is provided for informational purposes only and should not be used for tax-reporting purposes. Such information is provided to help you estimate and track the change in market value of each position relative to your investment into this security (not including reinvestments). NFS makes no warranties with respect to, and specifically disclaims any liability arising out of your use of, or any position taken in reliance upon, NFS-provided cost and net change information.

Unless otherwise specified, NFS determines gain (loss) using the first-in, first-out (FIFO) method on all transactions in a retirement account. Cost information for debt securities has not been adjusted for amortization or accretion.

# DETAIL

## PORTFOLIO VALUE

Retirement account cost and net change information is provided for informational purposes only and should not be used for tax-reporting purposes. Such information is provided to help you estimate and track the change in market value of each position relative to your investment into this security (not including reinvestments). NFS makes no warranties with respect to, and specifically disclaims any liability arising out of your use of, or any position taken in reliance upon, NFS-provided cost and net change information.

**LIMITATION ON COST INFORMATION:** NFS's cost information system has a cumulative lifetime limit on how much activity it can track for each individual security position in an account. For this purpose, each buy, sell, dividend, stock split, stock merger, etc., is an event. For some customers, this limit can be reached with approximately 1500 events. Upon reaching the limit, the system no longer displays or tracks cost information for the affected position, and such information will usually show as not available or unknown. Once the limit is reached, all cost information for the affected position will need to be tracked and updated by you, the investor.

Triad Advisors, Inc. routes orders through NFS and other broker/dealers. Triad Advisors, Inc. receives payment for order flow from other broker/dealers.

| CASH AND CASH EQUIVALENTS | 11.79% | | | | | | |
|---|---|---|---|---|---|---|---|
| Description | Symbol/Cusip<br>Account Type | Quantity | Price on<br>04/30/11 | Current<br>Market Value | Prior<br>Market Value | Estimated<br>Annual Income | |

**Money Markets**

*Account carried with National Financial Services LLC, Member NYSE, SIPC*

**Account Number:** OSTERHOUSE
**Account Name:** OSTERHOUSE

**Statement Date:** 04/01/2011 to 04/30/2011



**Harbinger** FINANCIAL GROUP INC.

## CASH AND CASH EQUIVALENTS   11.79%

| Description | Symbol/Cusip Account Type | Quantity | Price on 04/30/11 | Current Market Value | Prior Market Value | Estimated Annual Income | Net Change |
|---|---|---|---|---|---|---|---|
| **FIDELITY CASH RESERVES** 7 DAY AVG NET YIELD .01% Dividend Option Reinvest Capital Gain Option Reinvest | FDRXX CASH | 19,574.03 | $1.00 | $19,574.03 | $13,441.68 | | ($105.44) |

**Total Cash and Cash Equivalents**   **$19,574.03**

## EQUITIES   40.77%

| Description | Symbol/Cusip Account Type | Quantity | Price on 04/30/11 | Current Market Value | Prior Market Value | Estimated Annual Income | Cost | Net Change |
|---|---|---|---|---|---|---|---|---|
| **Equity** | | | | | | | | |
| **ANADARKO PETE CORP** Estimated Yield  0.45% Dividend Option Reinvest Capital Gain Option Reinvest | APC CASH | 150.175 | $78.94 | $11,854.81 | $12,302.34 | $54.06 | $11,960.25 | ($105.44) |
| **ISHARES TR FTSE NAREIT MTG PLUS** CAPPED INDEX FD Estimated Yield  9.52% Dividend Option Reinvest Capital Gain Option Reinvest | REM CASH | 511.393 | $15.41 | $7,880.57 | $7,762.95 | $750.68 | $7,841.75 | $32.82 |
| **JUNIPER NETWORKS INC** Dividend Option Reinvest Capital Gain Option Reinvest | JNPR CASH | 250 | $38.33 | $9,582.50 | unavailable | | $9,711.95 | ($129.45) |
| **PARKER HANNIFIN CORP** Estimated Yield  1.56% Dividend Option Reinvest Capital Gain Option Reinvest | PH CASH | 63.229 | $94.32 | $5,963.76 | $5,986.52 | $93.58 | $5,632.83   B | $330.93 |
| **PEABODY ENERGY CORP** Estimated Yield  0.50% Dividend Option Reinvest Capital Gain Option Reinvest | BTU CASH | 201.233 | $66.82 | $13,446.39 | $14,480.73 | $68.42 | $9,239.55 | $4,206.84 |

*Account carried with National Financial Services LLC, Member NYSE, SIPC*

**Account Number** [REDACTED]
**Account Name:** OSTERHOUSE

**Statement Date:** 04/01/2011 to 04/30/2011



Harbinger
FINANCIAL GROUP INC.

## EQUITIES   40.77%

| Description | Symbol/Cusip Account Type | Quantity | Price on 04/30/11 | Current Market Value | Prior Market Value | Estimated Annual Income | Cost | Net Change |
|---|---|---|---|---|---|---|---|---|
| RARE ELEMENT RESOURCES LTD COM NPV ISIN #CA7538IM1023 SEDOL #2503273 Dividend Option Reinvest Capital Gain Option Reinvest | REE CASH | 800 | $14.45 | $11,560.00 | $10,536.00 | | $11,090.03 | $469.97 |
| WYNN RESORTS LTD Estimated Yield 1.35% Dividend Option Reinvest Capital Gain Option Reinvest Next Dividend Payable: 05/17/11 | WYNN CASH | 50 | $147.15 | $7,357.50 | $6,358.00 | $100.00 | $5,991.45 | $1,366.05 |
| **Total Equity** | | | | **$67,645.53** | | **$1,066.74** | **$61,473.81** | **$6,171.72** |
| **Total Equities** | | | | **$67,645.53** | | **$1,066.74** | **$61,473.81** | **$6,171.72** |

## MUTUAL FUNDS   37.60%

| Description | Symbol/Cusip Account Type | Quantity | Price on 04/30/11 | Current Market Value | Prior Market Value | Estimated Annual Income | Cost | Net Change |
|---|---|---|---|---|---|---|---|---|
| **Equity** | | | | | | | | |
| ALTEGRIS MANAGED FUTURES STRATEGY A Estimated Yield 0.33% Dividend Option Reinvest Capital Gain Option Reinvest | MFTAX CASH | 952.381 | $10.35 | $9,857.14 | $9,676.19 | $33.05 | $10,000.00 | ($142.86) |
| BERWYN INCOME FUND Estimated Yield 3.39% Dividend Option Reinvest Capital Gain Option Reinvest | BERIX CASH | 1,195.326 | $13.62 | $16,280.34 | $16,017.37 | $552.24 | $15,000.00 | $1,280.34 |
| MATTHEWS ASIAN GROWTH & INCOME FUND Estimated Yield 2.52% Dividend Option Reinvest Capital Gain Option Reinvest | MACSX CASH | 837.054 | $18.67 | $15,627.80 | $15,117.20 | $395.22 | $15,000.00 | $627.80 |

*Account carried with National Financial Services LLC, Member NYSE, SIPC*

Account Number:
Account Name: **OSTERHOUSE**

Statement Date: **04/01/2011 to 04/30/2011**



**Harbinger**
FINANCIAL GROUP INC.

## MUTUAL FUNDS   37.60%

| Description | Symbol/Cusip Account Type | Quantity | Price on 04/30/11 | Current Market Value | Prior Market Value | Estimated Annual Income | Cost | Net Change |
|---|---|---|---|---|---|---|---|---|
| **PERMANENT PORTFOLIO** Estimated Yield 0.58% Dividend Option Reinvest Capital Gain Option Reinvest | PRPFX CASH | 415.041 | $49.73 | $20,639.99 | $19,735.20 | $120.36 | $15,029.50 | $5,610.49 |
| **Total Equity** | | | | **$62,405.27** | | **$1,100.87** | **$55,029.50** | **$7,375.77** |
| **Total Mutual Funds** | | | | **$62,405.27** | | **$1,100.87** | **$55,029.50** | **$7,375.77** |
| **Total Securities** | | | | **$130,050.80** | | **$2,167.61** | **$116,503.31** | **$13,547.49** |

## OTHER SECURITIES   9.84%

| Description | Symbol/Cusip Account Type | Quantity | Price on 04/30/11 | Current Market Value | Prior Market Value | Estimated Annual Income | Cost | Net Change |
|---|---|---|---|---|---|---|---|---|
| **SUPERFUND GREEN L P UNIT LTD** PARTNERSHIP INT SER A BASED ON MGMTS EST OF NET ASSETS CONFIRMED BY THIRD PARTY | 886806H107 CASH | 10.626 | $1,536.92  AI | $16,331.31 | $16,374.96 | | | |
| **Total Other Securities** | | | | **$16,331.31** | | | | |
| **TOTAL PORTFOLIO VALUE** | | | | **$165,956.14** | | **$2,167.61** | **$116,503.31** | **$13,547.49** |

*Account carried with National Financial Services LLC, Member NYSE, SIPC*

**Account Number:** OSTERHOUSE
**Account Name:** OSTERHOUSE

**Statement Date:** 04/01/2011 to 04/30/2011

Harbinger
FINANCIAL GROUP INC.

## ACCOUNT ACTIVITY

Retirement account cost and associated gain (loss) information is provided for informational purposes only and should not be used for tax-reporting purposes. Such information is provided to help you estimate and track the change in market value of each position relative to your investments into this security (not including reinvestments). NFS makes no warranties with respect to, and specifically disclaims any liability arising out of your use of, or any position taken in reliance upon, NFS-provided cost and net change information. NFS determines gain (loss) using the first-in, first-out (FIFO) method on all transactions in a retirement account. Cost information for debt securities has not been adjusted for amortization or accretion.

**LIMITATION ON COST INFORMATION:** NFS's cost information system has a cumulative lifetime limit on how much activity it can track for each individual security position in an account. For this purpose, each buy, sell, dividend, stock split, stock merger, etc., is an event. For some customers, this limit can be reached with approximately 1500 events. Upon reaching the limit, the system no longer displays or tracks cost information for the affected position, and such information will usually show as not available or unknown. Once the limit is reached, all cost information for the affected position will need to be tracked and updated by you, the investor.

## TRADING

### Securities Purchased

| Settlement Date | Account Type | Transaction | Description | Quantity | Amount | Cost | Transaction Gain (Loss) |
|---|---|---|---|---|---|---|---|
| 04/04/11 | CASH | YOU BOUGHT | SILVER WHEATON CORPORATION COM NPV ISIN #CA8283610176 SEDOL #B05BZK6 SOLICITED ORDER @ 43.955 | 100 | ($4,416.45) | $4,416.45 | |
| 04/26/11 | CASH | YOU BOUGHT | JUNIPER NETWORKS INC SOLICITED ORDER @ 38.7580 | 250 | ($9,711.95) | $9,711.95 | |
| **Net Securities Purchased** | | | | | **($14,128.40)** | | |

### Securities Sold

| Settlement Date | Account Type | Transaction | Description | Quantity | Amount | Cost | Transaction Gain (Loss) |
|---|---|---|---|---|---|---|---|
| 04/21/11 | CASH | YOU SOLD | BERWYN FD INC SOLICITED ORDER @ 31.77 | (524.266) | $16,655.93 | | $60.78 |
| 04/29/11 | CASH | YOU SOLD | SILVER WHEATON CORPORATION COM NPV ISIN #CA8283610176 SEDOL #B05BZK6 SOLICITED ORDER @ 39.215 | (100) | $3,900.47 | $4,416.45 | ($515.98) |
| **Net Securities Sold** | | | | | **$20,556.40** | | |

### NET TRADING

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | **$6,428.00** | | |

*Account carried with National Financial Services LLC, Member NYSE, SIPC*

**Account Number:**
**Account Name:** OSTERHOUSE

**Statement Date:** 04/01/2011 to 04/30/2011



Harbinger
FINANCIAL GROUP, INC.

## CORE FUND ACTIVITY

### Core Funds Purchased

| Settlement Date | Account Type | Transaction | Description | Quantity | Amount |
|---|---|---|---|---|---|
| 04/21/11 | CASH | YOU BOUGHT | FIDELITY CASH RESERVES @ 1 | 16,655.93 | ($16,655.93) |
| 04/29/11 | CASH | YOU BOUGHT | FIDELITY CASH RESERVES @ 1 | 3,900.47 | ($3,900.47) |
| 04/29/11 | CASH | REINVESTMENT | FIDELITY CASH RESERVES REINVESTED @ $1.00 | 0.11 | ($0.11) |

**Net Core Funds Purchased**     ($20,556.51)

### Core Funds Sold

| Settlement Date | Account Type | Transaction | Description | Quantity | Amount |
|---|---|---|---|---|---|
| 04/04/11 | CASH | YOU SOLD | FIDELITY CASH RESERVES @ 1 | (4,416.45) | $4,416.45 |
| 04/21/11 | CASH | YOU SOLD | FIDELITY CASH RESERVES @ 1 AS OF 04-21-11 | (295.76) | $295.76 |
| 04/26/11 | CASH | YOU SOLD | FIDELITY CASH RESERVES @ 1 | (9,711.95) | $9,711.95 |

**Net Core Funds Sold**     $14,424.16

## NET CORE FUND ACTIVITY     ($6,132.35)

## INCOME AND EXPENSES
### Taxable Income

| Date | Account Type | Transaction | Description | Quantity | Amount |
|---|---|---|---|---|---|
| **Tax Deferred Dividends** | | | | | |
| 04/29/11 | CASH | DIVIDEND RECEIVED | FIDELITY CASH RESERVES DIVIDEND RECEIVED | | $0.11 |

**Net Taxable Income**     $0.11

**Total Income**     $0.11

*Account carried with National Financial Services LLC, Member NYSE, SIPC*

**Account Number:** OSTERHOUSE
**Account Name:** OSTERHOUSE

**Statement Date: 04/01/2011 to 04/30/2011**



## Account Fees

| Date | Account Type | Transaction | Description | Quantity | Amount |
|---|---|---|---|---|---|
| 04/27/11 | CASH | PORTFOLIO SRVCS. FEE | PORTFOLIO SRVCS. FEE | | ($295.76) |

**Net Account Fees** ($295.76)

**Total Expenses** ($295.76)

## NET INCOME AND EXPENSES ($295.65)

## MISCELLANEOUS ACCOUNT ACTIVITY

| Date | Account Type | Transaction | Description | Quantity | Amount | Cost | Transaction Gain (Loss) |
|---|---|---|---|---|---|---|---|
| 04/15/11 | CASH | ADJUSTMENT | SUPERFUND GREEN L P UNIT LTD PARTNERSHIP INT SER A BASED ON MGMTS EST OF NET ASSETS CONFIRMED BY THIRD PARTY QUANTITY ADJUSTMENT | (0.001) | $0.00 | | |
| 04/19/11 | CASH | ADJUSTMENT | SUPERFUND GREEN L P UNIT LTD PARTNERSHIP INT SER A BASED ON MGMTS EST OF NET ASSETS CONFIRMED BY THIRD PARTY REBATE | 0.036 | $0.00 | | |

## NET MISCELLANEOUS ACCOUNT ACTIVITY $0.00

## TRADES PENDING SETTLEMENT

These trades settle after the closing date of this statement and will be reflected on your next statement.

| Trade Date | Settlement Date | Transaction | Description | Quantity | Amount | Cost | Transaction Gain (Loss) |
|---|---|---|---|---|---|---|---|
| 04/27/11 | 05/02/11 | SOLD | PARKER HANNIFIN CORP SOLICITED ORDER | (63) | $5,874.84 | $5,632.83 | $242.01 |

**Net Trades Pending Settlement** $5,874.84

*Account carried with National Financial Services LLC, Member NYSE, SIPC*

**Account Number:** OSTERHOUSE
**Account Name:** OSTERHOUSE

**Statement Date:** 04/01/2011 to 04/30/2011



## MESSAGES

Please be advised that Alternative Investment position descriptions include the valuation source.

Please note the following brokerage account fees: $40 ACAT Delivery for non-retirement and $75 for prototype retirement, $35 per cusip, maximum of three, Annual Custody and Valuation for Alternative Investments, $35 Annual IRA Maintenance for prototype retirement, $30 Annual Custody for non-prototype retirement, non-managed, $5 per certificate Monthly Safekeeping for unregistered restricted securities, $5 per cusip Monthly Safekeeping for registered non-restricted securities, $60 Legal Return, $90 Legal Transfer, $25 Stop Payment, $15 Tfr and Ship/DRS, $220 Tfr and Ship/Non-DRS, $25 Returned Check, $12 Trade Extensions, $50 Debit card for Brokerage Access Checking and $125-$150 for Brokerage Portfolio Checking.

If you maintain a fee-based advisory account, you may request a copy of Form ADV Part II from your financial advisor. You should have received a copy of Triads Privacy Policy at account opening and annually thereafter. If at any time you would like a copy of our Privacy Policy, please contact your financial advisor or go to www.triad-advisors.com. In order to help us provide the best service possible, please contact your financial advisor if you have any changes whatsoever to your account, including address, financial position and investment objectives.

## FOOTNOTES AND COST INFORMATION

Retirement account cost and net change information is provided for informational purposes only and should not be used for tax-reporting purposes. Such information is provided to help you estimate and track the change in market value of each position relative to your investments into the security (not including reinvestments). NFS makes no warranties with respect to, and specifically disclaims any liability arising out of your use of, or any position taken in reliance upon, NFS-provided cost and net change information.

**B** - Fair market value at the time of transfer is used for the cost of securities transferred into this account.

## MISCELLANEOUS FOOTNOTES

Callable Securities Lottery - When street name or bearer securities held for you are subject to a partial call or partial redemption by the issuer, NFS may or may not receive an allocation of called/redeemed securities by the issuer, transfer agent and/or depository. If NFS is allocated a portion of the called/redeemed securities, NFS utilizes an impartial lottery allocation system, in accordance with applicable rules, that randomly selects the securities within customer accounts that will be called/redeemed. NFS' allocations are not made on a pro rata basis and it is possible for you to receive a full or partial allocation, or no allocation. You have the right to withdraw uncalled fully paid securities at any time prior to the cutoff date and time established by the issuer, transfer agent and/or depository with respect to the partial call, and also to withdraw excess margin securities provided your account is not subject to restriction under Regulation T or such withdrawal will not cause an undermargined condition.

Pricing Information - Prices displayed are obtained from sources that may include pricing vendors, broker/dealers who clear through NFS and/or other sources. Prices may not reflect current fair market value and/or may not be readily marketable or redeemable at the prices shown.

**AI** - Investments such as direct participation program securities (e.g., partnerships, limited liability companies, and real estate trusts which are not listed on any exchange), commodity pools, private equity, private debt and hedge funds are generally illiquid investments and their current values will be different from their purchase price. Unless otherwise indicated, the values shown on this statement for such investments have been provided by the management, administrator or sponsor of each program, or a third-party vendor without independent verification by NFS or your broker/dealer and represent their estimate of the value of the investor's participation in the program, as of a date no greater than 18 months from the date of this statement. Therefore the estimated values shown herein may not necessarily reflect actual market values or be realized upon liquidation. If an estimated value is not provided, accurate valuation information is not available.

**GLOSSARY  Short Account Balances** -If you have sold securities under the short sale rule, we have, in accordance with regulations, segregated the proceeds from such transactions in your Short Account. Any market increases or decreases from the original sale price will be marked to the market and will be transferred to your Margin Account as either a profit or loss. "N/A" Total Market Value-Total Market Value for 8 decimal places, however, the individual unit price is displayed in 5 decimal places. The Total Market Value represents prices obtained from various sources, may be impacted by the frequency in which Market Value is reported and such prices are not guaranteed. Prices received from pricing vendors are generally based on current market quotes, but when such quotes are not available the pricing vendors use a variety of techniques to estimate value. These estimates, particularly for fixed income securities, may be based on certain minimum principal amounts (e.g. $1 million) and may not reflect all of the factors that affect the value of the security, including liquidity risk. The prices provided are not firm bids or offers. Certain securities may reflect "N/A" or "unavailable" where the price for such security is generally not available from a pricing source. The Market Value of a security, including those priced at par value, may differ from its purchase price and may not

**CUSTOMER SERVICE:**  Please review your statement and report any discrepancies immediately. Inquiries or concerns regarding your brokerage account or the activity therein should be directed to your broker/dealer at the telephone number and address reflected on the front of this statement and National Financial Services LLC ("NFS") who carries your brokerage account and acts as your custodian for funds and securities deposited with NFS directly by you, through your broker/dealer, or as a result of transactions NFS processes for your account. NFS may be contacted by calling **(800) 801-9942.** Any oral communications regarding inaccuracies or discrepancies should be reconfirmed in writing to protect your rights, including those under the Securities Investor Protection Act ("SIPA"). When contacting either NFS or your broker/dealer, remember to: re-include your entire brokerage account number to ensure a prompt reply. Please notify the service center or your broker/dealer promptly in writing of any change of address.

**ADDITIONAL INFORMATION Customer free credit balances** are not segregated and may be used in NFS business, subject to the limitations of 17CFR Section 240.15c3-2 under the Securities and Exchange Act of 1934. You have the right to receive from NFS in the course of normal business operations, subject to own commitments in any of your brokerage accounts, any free credit balances to which you are entitled or any fully paid securities to which you are entitled and any securities purchased on margin upon full payment of any indebtedness owed, or any securities not in a margin account that are held in safekeeping. Free credit balances may vary with current short-term money market rates and/or your brokerage account balances, set at the discretion of your broker/dealer and/or NFS.

**Credit Adjustment Program.** Accountholders receiving payments in lieu of qualified dividends may not be eligible to receive credit adjustments intended to help cover additional associated federal tax burdens. NFS reserves the right to deny the adjustment to any accountholder and to amend or terminate the credit adjustment program.

**Option Customers.** Each transaction confirmation previously delivered to you contains full information about your broker/dealer. If you require further information, please contact your broker/dealer. Assignments of American and European-style options are allocated among customer short positions pursuant to a random allocation procedure, a description of which is available upon request.  Short positions in American-style options are liable for assignment at any time. The writer of a European-style option is subject to exercise assignment only during the exercise period. You should advise your broker/dealer promptly of any material change in your investment objectives or financial situation.**Splits, Dividends, and Interest.** Expected stock split, next dividend payable, and next interest payable information has been provided by certain third parties and is believed to be reliable, but its accuracy cannot be guaranteed and may be changed from third parties in time for printing. NFS is not responsible for inaccurate, incomplete, or missing information. Please consult your broker/dealer for more information about expected stock split, next dividend payable, and next interest payable for certain securities.

**Equity Dividend Reinvestment Customers.** Shares credited to your brokerage account resulted from transactions effected as agent by either: 1) Your broker/dealer for your investment account, or 2) through the Depository Trust Company (DTC) dividend reinvestment program. For broker/dealer effected transactions, the time of the transactions, the exchange upon which the transactions occurred and the name of the person from whom the security was purchased will be furnished upon written request. NFS may have acted as market maker in effecting trades in over-the-counter "securities.

**Retirement Contributions/Distributions.** A summary of retirement contributions/distributions is displayed for investments in Traditional IRAs, Rollover IRAs, SEP-IRAs and, Keoghs as tax-deferred income. Earnings from Roth IRAs are reported as tax-free income, since distributions may be tax-free after meeting the 5 year aging requirement and certain other conditions.A financial statement of NFS is available for your personal inspection at its office or a copy of it will be mailed to you upon your written request.

**Sales and Loads.** If you have any questions regarding a sales load, a 12b-1 fee, or an e-mail of your statement's availability. If you had transactions that affected your cash balances or security positions held in your account(s) during the last monthly reporting period. As a minimum, all brokerage customers will receive quarterly statements (at least four times per calendar year) as long as their accounts contain a cash or securities balance.

**Loads and Fees.** In addition to sales loads and 12b-1 fees described in the prospectus, NFS or your broker/dealer receives other compensation in connection with the purchase and/or the on-going maintenance

closely reflect the value at which the security may be sold or purchased based on various market factors. Investment decisions should be made only after consulting your broker/dealer. **Estimated Yield ("EY")and Estimated Annual Income ("EAI")** When available, the coupon rate of some fixed income securities is divided by the current market price and/or the most recently declared dividends for certain securities are annualized to create the EAI figure. EAI and EY are estimates, and the income and yield might by lower or higher. Additionally, estimates may include the return of principal or capital gains which would render them overstated. EY reflects only the income generated by an investment: not changes in prices which fluctuate. These figures are based on mathematical calculations of available data, and have been obtained from information providers believed to be reliable, but no assurance can be made as to accuracy. Since interest and dividend rates are subject to change at any time, and may be affected by current and future economic, political and business conditions, they should not be relied on for making investment, trading decisions, or tax decisions.

of positions in certain mutual fund shares and other investment products in your brokerage account. This additional compensation may be paid by the mutual fund or other investment product, its investment advisor or one of its affiliates. Additional information about the source(s) and amount(s) of compensation as well as other remuneration received by NFS or your broker/dealer will be furnished to you upon written request. At time of purchase, fund shares may be assigned a transaction fee or no transaction fee status. At time of sale, applicable fees will be based on that status.

**Margin.** If you have applied for margin privileges and been approved, you may borrow money from NFS in order to buy securities or to borrow against securities in your margin account. The amount you may borrow is based on the value of securities in your margin account, which is identified on your statement. If you have a margin account, this is a combined statement of your margin account and special memorandum account other than your non-purpose margin accounts maintained for you under Section 220.5 of Regulation T issued by the Board of Governors of the Federal Reserve Board. The permanent record of the separate account, as required by Regulation T, is available for your inspection upon request.

**NYSE and FINRA.** All transactions are subject to the constitution, rules, regulations, customs, usages, rulings and interpretations of the exchange where placed or made, to any, may have the transactions arranged and of its affiliates; and to the provisions of the Securities Exchange Act of 1934. The Financial Industry Regulatory Authority ("FINRA"). The FINRA requires that we notify you in writing of the availability of an investor brochure that includes information describing FINRA Regulation's BrokerCheck Program ("Program"). To obtain a brochure or more information about the Program of FINRA Regulation, contact the FINRA Regulation BrokerCheck Program Hotline at (800) 289-9999 or access the FINRA's web site at www.finra.org.

**New York Stock Exchange Rule 382** requires that your broker/dealer and NFS allocate between them certain functions regarding the administration of your brokerage account. The following is a summary of the allocation of services performed by your broker/dealer and NFS. A more complete description is available upon request.

**Your broker/dealer is responsible for:** (1) obtaining and verifying brokerage account information and documentation, (2) opening, approving, and monitoring your brokerage account, (3) transmitting timely and accurate instructions to NFS with respect to your brokerage account, (4) determining the suitability of investment recommendations and advice, (5) operating, and supervising your brokerage account and its own activities in compliance with applicable laws and regulations including compliance with margin rules pertaining to your margin account, if applicable, and (6) maintaining required books and records for the services that it performs.

**NFS is responsible, at the direction of your broker/dealer:** (1) execute, clear and settle transactions processed through NFS by your broker/dealer, (2) prepare and send transaction confirmations and periodic statements of your brokerage account (unless your broker/dealer has undertaken to do so), (3) act as custodian for funds and securities received by NFS on your behalf, (4) follow the instructions of your broker/dealer with respect to transactions and the receipt and delivery of funds and securities for your brokerage account, and (5) extend margin credit for purchasing or carrying securities on margin. Your broker/dealer is responsible for ensuring that your brokerage account is in compliance with federal, industry and NFS margin rules, and for advising you of margin requirements. NFS shall maintain the required books and records for the services it performs.

**Securities in accounts carried by NFS are protected** in accordance with the Securities Investor Protection Corporation ("SIPC") up to $500,000. For claims filed on or after July 22, 2010, the $500,000 total amount of SIPC protection is inclusive of up to $250,000 protection for claims for cash, subject to periodic adjustments for inflation in accordance with terms of the SIPC statute and approval by SIPC's Board of Directors. NFS also has arranged for coverage above those limits. Neither coverage protects against a decline in the market value of securities, nor does either coverage extend to certain securities that are considered ineligible for coverage. For more details on SIPC, or to request an SIPC brochure, visit www.sipc.org or call at (202) 371-8300. NFS also used to purchase or sweep to a bank deposit are SIPC protected until deposited to a Program Bank at which time funds may be eligible for FDIC insurance. Assets held Away, commodities, unregistered investment contracts, futures accounts, loaned securities and other investments may not be covered. Mutual funds and/or other securities are not backed or guaranteed by any bank, nor are they insured by the FDIC and involve investment risk including possible loss of principal.

**End of Statement**

100924

110429 270 002011614

This page is left intentionally blank

MAY 0 4 2020

01 MAY 2020 PM 1 L

FOREVER / USA   FOREVER

Silver Wheaton Corp. Litigation
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson St., Ste. 205
Media, PA 19063

19063-255455

T. Osterhouse

**Josephine Bravata**

| | |
|---|---|
| **From:** | Claims Analyst <info@strategicclaims.net> |
| **Sent:** | Thursday, May 07, 2020 10:40 AM |
| **To:** | Josephine Bravata |
| **Subject:** | Fwd: Silver Wheaton Lawsuit: request to be excluded |

See below, Silver Wheaton exclusion email --

---------- Forwarded message ----------
From: **Yahoo** ███████████
Date: Wed, May 6, 2020 at 12:21 PM
Subject: Silver Wheaton Lawsuit: request to be excluded
To: info@strategicclaims.net <info@strategicclaims.net>

Name: Michael A. Rossi, ████████████

Request to be excluded from the class action lawsuit.

--
Claims Administrator
Strategic Claims Services
600 N. Jackson St., Suite 205
Media PA 19063
Phone: 610-565-9202
Fax: 610-565-7985
Toll Free: 1-866-274-4004

IMPORTANT: The information contained in this message is confidential and is intended only for the named addressee(s). If the reader of this message is not an intended recipient (or the individual responsible for the delivery of this message to an intended recipient), please be advised that any re-use, dissemination, distribution or copying of this message is prohibited. If you have received this message in error, please reply to the sender that you have received the message in error and then delete it.  Thank you.

1

**Josephine Bravata**

| | |
|---|---|
| **From:** | Claims Analyst <info@strategicclaims.net> |
| **Sent:** | Thursday, May 07, 2020 4:20 PM |
| **To:** | Josephine Bravata |
| **Subject:** | Fwd: Silver Wheaton Lawsuit: request to be excluded [#445272] |

See below, Rossi Silver Wheaton exclusion response --

---------- Forwarded message ----------
From: **'Yahoo' via Reply** <reply@strategicclaims.net>
Date: Thu, May 7, 2020 at 12:53 PM
Subject: Re: Silver Wheaton Lawsuit: request to be excluded [#445272]
To: Claims Administrator <reply@strategicclaims.net>

Name: Michael A. Rossi

Address: ███████

Mailing Address: ███████

Documentation: All documentation from 2010 to 2016 was destroyed in a fire, including federal tax returns which had this information.

Respectfully,

Michael A. Rossi

On Thursday, May 7, 2020, 9:05:27 AM PDT, Claims Administrator <reply@strategicclaims.net> wrote:

*Recipients* ███████

1

Good afternoon,

We received your request for exclusion from the *Silver Wheaton Corp. Securities Litigation*, Case No. 15-CV-5146-CAS-PJWx. At this time, we are missing the following information, which is needed in order for your request to be valid:

- Your address and telephone number;
- An accurate list of all your purchases and sales of Silver Wheaton securities on a U.S. stock exchange or in a U.S. transaction between March 30, 2011 and July 6, 2015, inclusive, including the date, number of shares and price of shares purchased or sold;
- Supporting documentation for the transactions such as broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional and holding information found in a broker confirmation slip or account statement.

For your request to be honored, we must receive the information above no later than **June 13, 2020.** If you have any questions, please contact us at your earliest convenience.

Thank you.

--
Claims Administrator
Strategic Claims Services
600 N. Jackson St. - Suite 205
Media PA 19063
Phone: 610-565-9202
Fax: 610-565-7985
Toll Free: 1-866-274-4004

*IMPORTANT: The information contained in this message is confidential and is intended only for the named addressee(s). If the reader of this message is not an intended recipient (or the individual responsible for the delivery of this message to an intended recipient), please be advised that any re-use, dissemination, distribution or copying of this message is prohibited. If you have received this message in error, please reply to the sender that you have received the message in error and then delete it. Thank you.*

--
Claims Administrator
Strategic Claims Services
600 N. Jackson St. - Suite 205
Media PA 19063
Phone: 610-565-9202

2

Fax: 610-565-7985
Toll Free: 1-866-274-4004

*IMPORTANT: The information contained in this message is confidential and is intended only for the named addressee(s). If the reader of this message is not an intended recipient (or the individual responsible for the delivery of this message to an intended recipient), please be advised that any re-use, dissemination, distribution or copying of this message is prohibited. If you have received this message in error, please reply to the sender that you have received the message in error and then delete it. Thank you.*

--
Claims Administrator
Strategic Claims Services
600 N. Jackson St., Suite 205
Media PA 19063
Phone: 610-565-9202
Fax: 610-565-7985
Toll Free: 1-866-274-4004

*IMPORTANT: The information contained in this message is confidential and is intended only for the named addressee(s). If the reader of this message is not an intended recipient (or the individual responsible for the delivery of this message to an intended recipient), please be advised that any re-use, dissemination, distribution or copying of this message is prohibited. If you have received this message in error, please reply to the sender that you have received the message in error and then delete it.  Thank you.*

3

May 12, 2020

Silver Wheaton Corp. Litigation
c/o Strategic Claims Services
600 N. Jackson St. Ste 205
Media, PA 19063

To Whom It May Concern:

I am excluding myself from ~~Party~~
involvement in this case (see enclosed)
Master File No: 2:15-CV-05146-CAS-PJWx
c/w: 2:15-CV-05171-CAS (PJWx)


Sincerely,

Joyce Hazard



## Court-Ordered Legal Notice

**Forwarding Service Requested**

Important Notice about a Securities Class Action Settlement.

You may be entitled to a payment. This Notice may affect your legal rights. Please read it carefully.

Case Pending in the United States District Court for the Central District of California

*Master File No: 2:15-cv-05146-CAS-PJWx*
*c/w: 2:15-cv-05173-CAS (PJWx)*

DQF-IPi

SILVER WHEATON CORP. LITIGATION
C/O STRATEGIC CLAIMS SERVICES
600 N. JACKSON STREET, SUITE 205
MEDIA, PA 19063

00084423

PRESORTED FIRST CLASS
U.S. POSTAGE PAID
FARMINGDALE, NY
PERMIT NO. 225

18#

*********L FOR AADC 890
JOYCE HAZARD

03

FOREVER USA

12 MAY 2020 PM 5 L

Silver Wheaton Corp. Litigation
c/o Strategic Claims Services
600 N. Jackson St. Ste. 205
Media, PA 19063

MAY 15 2020

19063-256455

Silver Wheaton Corp. Litigation
c/o Strategic Claims Services
600 N. Jackson Street – Suite 205
Media, PA 19063

Phone: (866) 410-3013
Fax: (610) 565-7985
Email: info@strategicclaims.net

May 18, 2020

Joyce Hazard

███████████████
█████████████

Re:  Silver Wheaton Corp. Securities Litigation – Master File No: 2:15-cv-05146-CAS-PJWx c/w: 2:15-cv-05173-CAS (PJWx)

Joyce Hazard,

On May 15, 2020, we received your request for exclusion from the *Silver Wheaton Corp. Securities Litigation* - Master File No: 2:15-cv-05146-CAS-PJWx c/w: 2:15-cv-05173-CAS (PJWx).  At this time, we are missing the following information, which is needed in order for your request to be valid:

- Your phone number;
- An accurate list of all your purchases and sales of Silver Wheaton securities on a U.S. stock exchange or in a U.S. transaction between March 30, 2011 and July 6, 2015, inclusive, including the date, number of shares and price of shares purchased or sold; and
- Supporting documentation for the transactions such as broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional and holding information found in a broker confirmation slip or account statement.

For your request to be honored, we must receive the information above no later than **June 13, 2020.**   If you have any questions, please contact us at your earliest convenience.

Regards,

Josephine Bravata
Quality Assurance Manager
Strategic Claims Services

May 14, 2020


Silver Wheaton Corp Litigation
c/o Strategic Claims Services
P.O. Box 230
600 N Jackson St., Ste 205
Media, PA  19063


Dear Sir or Madam:

The information you requested for Exclusion from the Class Action is as follows:

- Richard A. and Gloria T. Hampton



- Richard A. Hampton "request exclusion from the Settlement Class in In re Silver Wheaton Corp. Sec Litig. Case No. 15-CV-5146-CAS-PJWx".

- Gloria T. Hampton requests "request exclusion from the Settlement Class in *In re Silver Wheaton Corp. Sec Litig. Case No. 15-CV-5146-CAS-PJWx"*.

- The following is the number of shares of Silver Wheaton common stock that we purchased and sold during the Settlement Class Period :  (between March 30, 2011 and July 6, 2015)

    - July 7, 2014 – Purchased 1,000 shares of Silver Wheaton Corp at $26.4797

    - March 30, 2015 – Sold 1,000 shares of Silver Wheaton Corp at $19.3301


As requested, I have attached statements for your review.  Thank you for your attention to this matter.

Sincerely,

Richard A Hampton                                           Gloria T. Hampton

# MONTHLY STATEMENT

Reporting Period: **July 1 - 31, 2014**

Account

RICHARD HAMPTON & GLORIA HAMPTON TRS
TRUST

## TRANSACTIONS DETAIL

| Transaction Date | Settlement Date | Activity Type | Description | Symbol/ CUSIP | Quantity | Price | Transaction Amount |
|---|---|---|---|---|---|---|---|
| 07/01 | 07/01 | Dividends and Interest | HARTFORD FINANCIAL SERVICES COM PAYABLE: 07/01/2014 QUALIFIED DIVIDENDS 30.00 | HIG | - | $ - | $30.00 |
| 07/01 | 07/01 | Dividends and Interest | MCKESSON CORP COM PAYABLE: 07/01/2014 QUALIFIED DIVIDENDS 12.00 | MCK | - | - | 12.00 |
| 07/02 | 07/02 | Dividends and Interest | LORD ABBETT BOND DEBENTURE A PAYABLE: 06/30/2014 ORDINARY DIVIDENDS 249.64 | LBNDX | - | - | 249.64 |
| 07/02 | 07/02 | Receive | VERITIV CORP COM ON 175 SHARES SPINOFF FROM INTERNATIONAL PAPER CO COM CUSIP 46014G103 PAYABLE: 07/02/2014 | VRTV | 3 | - | - |
| 07/01 | 07/07 | Buy | CANADIAN NATL. RAILWAY COMPANY COM | CNI | 25 | 65.3599 | (1,642.95) |
| 07/01 | 07/07 | Buy | EATON CORP PLC ORD | ETN | 75 | 77.7999 | (5,843.94) |
| 07/01 | 07/07 | Buy | INTERNATIONAL PAPER CO COM | IP | 50 | 50.7699 | (2,547.45) |
| 07/01 | 07/07 | Sell | DU PONT E I DE NEMOURS & CO COM | DD | (125) | 65.168 | 8,124.57 |
| 07/07 | 07/07 | Other Income or Expense | QUARTERLY MGMT FEE WESPAC ADVISORS SOCAL LLC 9290620741 | - | - | - | (2,146.51) |
| 07/07 | 07/10 | Buy | SILVER WHEATON CORP COM | SLW | 1,000 | 26.4797 | (26,488.65) |

**Questions? Consult your Independent Advisor:**

**Ameritrade** Institutional

# MONTHLY STATEMENT

Reporting Period: **March 1 - 31, 2015**

Account

RICHARD HAMPTON & GLORIA HAMPTON TRS
TRUST

## TRADES PENDING SETTLEMENT

| Transaction Date | Settlement Date | Activity Type | Description | Symbol/CUSIP | Quantity | Price | Transaction Amount |
|---|---|---|---|---|---|---|---|
| 03/30 | 04/02 | Sell | SILVER WHEATON CORP COM | SLW | (1,000) | $19.3301 | $19,320.79 |

## TD AMERITRADE CASH INTEREST CREDIT/EXPENSE

| Begin Date | Margin Balance | Credit Balance | Number of Days | Interest Rate | Interest Accrued | Interest Debited | Interest Credited |
|---|---|---|---|---|---|---|---|
| 03/03 | $- | $167.16 | 1 | 0.0100 | $- | - | $- |
| 03/27 | - | 28.05 | 3 | 0.0100 | - | - | - |
| 03/31 | - | 281.96 | 1 | 0.0100 | - | - | - |
| **TOTAL INTEREST INCOME/(EXPENSE)** | | | | | | | - |

## INSURED DEPOSIT ACCOUNT TD AMERITRADE INTEREST CREDIT/EXPENSE

| Begin Date | Balance | Number of Days | Interest Rate | Interest Accrued | MTD Accrued | MTD Paid |
|---|---|---|---|---|---|---|
| 03/01 | $14,874.97 | 1 | 0.0100 | $- | $- | $- |
| 03/02 | 15,572.13 | 2 | 0.0100 | 0.01 | 0.01 | - |
| 03/04 | 15,739.29 | 2 | 0.0100 | 0.01 | 0.02 | - |
| 03/06 | 15,798.54 | 4 | 0.0100 | 0.02 | 0.04 | - |
| 03/10 | 15,949.60 | 2 | 0.0100 | 0.01 | 0.05 | - |

**Questions? Consult your Independent Advisor:**



**Ameritrade**
Institutional

Page 11 of 15



*Cut on dotted line.*

## Instructions

1. Each Click-N-Ship® label is unique. Labels are to be used as printed and used only once. DO NOT PHOTO COPY OR ALTER LABEL.

2. Place your label so it does not wrap around the edge of the package.

3. Adhere your label to the package. A self-adhesive label is recommended. If tape or glue is used, DO NOT TAPE OVER BARCODE. Be sure all edges are secure.

4. To mail your package with PC Postage®, you may schedule a Package Pickup online, hand to your letter carrier, take to a Post Office™, or drop in a USPS collection box.

5. Mail your package on the "Ship Date" you selected when creating this label.

## Click-N-Ship® Label Record



USPS TRACKING # :

| | | |
|---|---|---|
| Trans. #: | | Priority Mail® Postage: $7.75 |
| Print Date: | 05/22/2020 | Total: $7.75 |
| Ship Date: | 05/22/2020 | |
| Expected Delivery Date: | 05/27/2020 | |

From:   GLORIA & RICHARD HAMPTON   Ref#: Hampton

To:   SILVER WHEATON CORP LITIGATION
C/O STRATEGIC CLAIMS SERVICES
PO BOX 230
600 JACKSON ST , STE 205
MEDIA PA 19063-0230

\* Retail Pricing Priority Mail rates apply. There is no fee for USPS Tracking® service on Priority Mail service with use of this electronic rate shipping label. Refunds for unused postage paid labels can be requested online 30 days from the print date.

*Thank you for shipping with the United States Postal Service!*
**Check the status of your shipment on the USPS Tracking® page at usps.com**

Jon Neill



5/21/2020

Silver Wheaton Corp. Litigation
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson St., Ste. 205
Media, PA 19063

cc: Silver Wheaton, et al

To claims services,

I request exclusion from the Settlement Class in *"In re Silver Wheaton Corp. Sec. Litig. Case No.
15-CV-5146-CAS-PJWx"*. Exclude me from this ridiculous settlement sham at once.

The type of litigation which you are pursuing is highly detrimental to our society.

The "false and misleading statements" you claim in the lawsuit are of a nature that point less to
an error on Silver Wheaton's part and more to an investor's need to simply become educated on
instruments purchased in his or her geographic and tax context. It is exceedingly difficult for any
company to proactively cover all scenarios and the particulars surrounding tax liabilities,
especially amidst shifting tax requirements. It is unfair that companies that act in good faith must
watch out for "gotcha" lawsuits from firms like yours.

Further, it is clear that you are not primarily interested in helping the class you represent. While
you plan to retain millions of settlement dollars for your firm, the amounts expected for
distribution to shareholders is a quite minute pittance in comparison.

I am not providing you with any information regarding my previous or current Silver Wheaton
holdings, nor my phone number or email, because I do not want to share info with you. Yours is
the sort of company I seek to avoid. Regardless, you must exclude me from the settlement per
this opt-out request.

Sincerely

Jon Neill

## Court-Ordered Legal Notice

Important Notice about a Securities Class Action Settlement.

You may be entitled to a payment. This Notice may affect your legal rights. Please read it carefully.

Case Pending in the United States District Court for the Central District of California

*Master File No: 2:15-cv-05146-CAS-PJWx c/w: 2:15-cv-05173-CAS (PJWx)*

Silver Wheaton Corp. Litigation
c/o Strategic Claims Services
600 N. Jackson Street, Suite 205
Media, PA 19063

*Forwarding Service Requested*

Presorted
First Class
US Postage PD
Lansdale, PA
Permit 491

029069

T244  P1 *****************AUTO**5-DIGIT

JON NEILL



USA FOREVER

MAY 2 9 2020

25 MAY 2020 PM 5 L

Silver Wheaton Corp. Litigation
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson St., Ste. 205
Media, PA 19063

1905-3-255455



Jon Neill

Silver Wheaton Corp. Litigation
c/o Strategic Claims Services
600 N. Jackson Street – Suite 205
Media, PA 19063

Phone: (866) 410-3013
Fax: (610) 565-7985
Email: info@strategicclaims.net

June 2, 2020

Jon Neill

██████████████████

███████████████

Re:  Silver Wheaton Corp. Securities Litigation – Master File No: 2:15-cv-05146-CAS-PJWx c/w: 2:15-cv-05173-CAS (PJWx)

Dear Mr. Neill,

We received your request for exclusion from the *Silver Wheaton Corp. Securities Litigation - Master File No: 2:15-cv-05146-CAS-PJWx c/w: 2:15-cv-05173-CAS (PJWx)*.  We understand you wish to be excluded from the Settlement Class. Currently, you are not excluded from the Settlement Class. That is because the court order preliminarily approving the Settlement, available at https://silverwheatonsettlement.com/, provides that in order to be excluded from the Class, you **must** provide the following information:

- Your phone number and email address;
- An accurate list of all your purchases and sales of Silver Wheaton securities on a U.S. stock exchange or in a U.S. transaction between March 30, 2011 and July 6, 2015, inclusive, including the date, number of shares and price of shares purchased or sold; and
- Supporting documentation for the transactions such as broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional and holding information found in a broker confirmation slip or account statement.

To validly exclude yourself from the Settlement Class, we must receive the information above no later than **June 13, 2020.**

Regards,

Josephine Bravata
Quality Assurance Manager
Strategic Claims Services

Carolyn Causer



May 23, 2020

In re: Silver Wheaton Corp. Sec. Litig.
        Case No. 15-CV-5146-CAS-PJWx

Silver Wheaton Corp.
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson St., Ste. 205
Media, PA 19063

Dear Sir/Madam:

I, Carolyn Causer, am requesting exclusion from the Settlement Class in the case of Silver Wheaton Corp. Sec. Litig. Case No. 15-CV-5146-CAS-PJWx

My contact information is below:

Carolyn Causer



Purchased:
04/18/2011 – 100 shares of SLW at $40.9098

Sold:
05/04/2011 – 100 shares of SLW at $36.53

Regards,

Carolyn Causer

Enclosure (1): April 2011 TD Ameritrade Statement
Enclosure (2): May 2011 TD Ameritrade Statement

# TD Ameritrade

800-669-3900
TD AMERITRADE
DIVISION OF TD AMERITRADE INC
PO BOX 2209
OMAHA, NE 68103-2209

**Statement Reporting Period:**
04/01/11 - 04/30/11

**Statement for Account #**
CAROLYN CAUSER

**Announcements:**
GET THE RESEARCH YOU NEED TO MAKE CONFIDENT DECISIONS. ACCESS INDUSTRY-LEADING, THIRD-PARTY RESEARCH ON STOCKS, MUTUAL FUNDS, ETFS AND MORE. GET STARTED AT TDAMERITRADE.COM/RESEARCH.

## Portfolio Summary

| Investment | Current Value | Prior Value | Period Change | % Change | Estimated Income | Estimated Yield |
|---|---|---|---|---|---|---|
| Cash | $ - | $0.03 | ($0.03) | | $ - | |
| Insrd Dep Acct | 119,906.91 | 135,137.35 | (15,230.44) | (11.3)% | - | 0.05% |
| Money Market | - | - | - | | - | - |
| Short Balance | - | - | - | | - | - |
| Stocks | 77,939.11 | 58,995.55 | 18,943.56 | 32.1% | 1,888.76 | 2.4% |
| Short Stocks | - | - | - | | - | - |
| Fixed Income | - | - | - | | - | - |
| Options | - | - | - | | - | - |
| Short Options | - | - | - | | - | - |
| Mutual Funds | - | - | - | | - | - |
| Other | - | - | - | | - | - |
| Total | $197,846.02 | $194,132.93 | $3,713.09 | 1.9% | $1,888.76 | 1.0% |

## Portfolio Allocation

Insrd Dep Acct 60.6%
Stocks 39.4%

## Cash Activity Summary

| | Current | YTD |
|---|---|---|
| Opening Balance | $0.03 | $ - |
| Securities Purchased | (15,423.88) | (22,789.63) |
| Securities Sold | - | 47,129.87 |
| Contributions | - | - |
| Distributions | - | - |
| Income | 105.65 | 977.49 |
| Expense | - | - |
| Other | 15,318.20 | (25,317.73) |
| Closing Balance | $ 0.00 | $0.00 |

## Retirement Account Summary

| | YTD | 2011 PTD | 2011 YTD | 2010 YTD |
|---|---|---|---|---|
| Contributions | $ - | $ - | $ - | $ - |
| Distributions | (22,789.63) | - | - | - |
| Plan Contribution | 47,129.87 | - | - | - |
| Rollover | - | - | - | - |
| Direct Transfer | - | - | - | - |
| Tax Withheld | 977.49 | - | - | - |
| Recharact | - | - | - | - |
| Roth Conv. | (25,317.73) | - | - | - |

## Performance Summary

| Cost Basis As Of - 04/30/11 | $57,236.48 |
|---|---|
| Unrealized Gains | 1,530.01 |
| Unrealized Losses | (19,477.99) |
| Funds | - |
| Deposited/(Disbursed) YTD | - |
| Income/(Expense) YTD | - |
| Securities | 977.49 |
| Received/(Delivered) YTD | 0.00 |

## Statement for Account #
04/01/11 - 04/30/11

### Income Summary Detail*

| Description | Current | Year to Date |
|---|---|---|
| Interest Income - Securities | $ 0.00 | $ 476.05 |
| Interest Income Credit Balance | 0.00 | 0.03 |
| Qualified Dividends | 105.65 | 501.41 |
| IDA Interest | 5.34 | 17.94 |

*This section displays current and year to date taxation values for this account. The current totals may not equate to the total payments listed on this statement as corrections to tax reporting may also be included. These corrections can include changes made to previous payments and removal of payments reportable in a previous tax year (spillover dividends). The year to date totals will accurately reflect your cumulative amount for the year.

### Account Positions

| Investment Description | Symbol/ CUSIP | Quantity | Current Price | Market Value | Purchase Date | Cost Basis | Average Cost | Unrealized Gain(Loss) | Estimated Income | Yield |
|---|---|---|---|---|---|---|---|---|---|---|
| **Stocks - Cash** | | | | | | | | | | |
| BANK OF AMERICA CORP COM | BAC | 610.157 | $ 12.28 | $7,492.73 | 07/13/05 | $ 26,931.75 | $ 44.14 | $ (19,439.02) | $ 24.41 | 0.3% |
| CATERPILLAR INC COM | CAT | 100 | 115.41 | 11,541.00 | 04/18/11 | 10,313.63 | 103.14 | 1,227.37 | 176.00 | 1.5% |
| CITIGROUP INC COM | C | 200 | 4.59 | 918.00 | 04/18/11 | 903.63 | 4.52 | 14.37 | - | - |
| PEPSICO INC COM | PEP | 221.727 | 68.89 | 15,274.77 | 08/10/07 | 14,986.50 | 67.59 | 288.27 | 425.72 | 2.8% |
| PROCTER GAMBLE CO COM | PG | 595.541 | 64.90 | 38,650.61 | | - | - | - | 1,250.64 | 3.2% |
| SILVER WHEATON CORP COM | SLW | 100 | 40.62 | 4,062.00 | 04/18/11 | 4,100.97 | 41.01 | (38.97) | 12.00 | 0.3% |
| **Total Stocks** | | | | **$77,939.11** | | **$57,236.48** | | **$(17,947.98)** | **$1,888.77** | **2.4%** |
| **Total Cash Account** | | | | **$77,939.11** | | **$57,236.48** | | **$(17,947.98)** | **$1,888.77** | **2.4%** |

page 2 of 5

**Statement for Account #**
04/01/11 - 04/30/11

## Account Activity

| Trade Date | Settle Date | Acct Type | Transaction/ Cash Activity* | Description | Symbol/ CUSIP | Quantity | Price | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| **Opening Balance** | | | | | | | | | $0.03 |
| 04/01/11 | 04/01/11 | Cash | Journal - Other | PURCHASE FDIC INSURED DEPOSIT ACCOUNT | - | - | $ 0.00 | $ (0.03) | 0.00 |
| 04/01/11 | 04/01/11 | Cash | Div/Int - Income | PEPSICO INC COM Payable: 03/31/2011 QUALIFIED DIVIDENDS 105.65 | PEP | - | 0.00 | 105.65 | 105.65 |
| 04/01/11 | 04/01/11 | Cash | Buy - Securities Purchased | PEPSICO INC COM | PEP | 1.624 | 65.0754 | (105.65) | 0.00 |
| 04/18/11 | 04/21/11 | Cash | Buy - Securities Purchased | SILVER WHEATON CORP COM | SLW | 100 | 40.9098 | (4,100.97) | (4,100.97) |
| 04/18/11 | 04/21/11 | Cash | Buy - Securities Purchased | CATERPILLAR INC COM | CAT | 100 | 103.0364 | (10,313.63) | (14,414.60) |
| 04/18/11 | 04/21/11 | Cash | Buy - Securities Purchased | CITIGROUP INC COM | C | 200 | 4.4682 | (903.63) | (15,318.23) |
| 04/21/11 | 04/21/11 | Cash | Journal - Other | REDEMPTION FDIC INSURED DEPOSIT ACCOUNT | - | - | 0.00 | 15,318.23 | 0.00 |
| 04/26/11 | 04/26/11 | Cash | Cash Rec'd - Other | CASH RECEIPT RDC 4563 BIOVAIL CORPORATION SECURITIES | - | - | 0.00 | 82.42 | 82.42 |
| 04/27/11 | 04/27/11 | Cash | Journal - Other | PURCHASE FDIC INSURED DEPOSIT ACCOUNT | - | - | 0.00 | (82.42) | 0.00 |
| **Closing Balance** | | | | | | | | | $ 0.00 |

*For Cash Activity totals, refer to the Cash Activity Summary on page one of your statement.

## Insured Deposit Account Interest Credited

| Begin Date | Balance | Number of Days | Interest Rate | Interest Accrued | MTD Accrued | MTD PAID |
|---|---|---|---|---|---|---|
| 04/01/11 | $ 135,137.38 | 20 | 0.0500 | $ 3.70 | $ 3.70 | $ - |
| 04/21/11 | 119,819.15 | 6 | 0.0500 | 0.99 | 4.69 | - |
| 04/27/11 | 119,901.57 | 4 | 0.0500 | 0.65 | 5.34 | 5.34 |
| **Total Interest Income** | | | | | | $5.34 |

page 3 of 5

**Statement for Account #** ▌

04/01/11 - 04/30/11

## Insured Deposit Account Activity

| Date Cleared | Check Number | Date Written | Transaction | Description | Tracking Code | Expense Code | Amount | Balance |
|---|---|---|---|---|---|---|---|---|
| **Opening Balance** | | | | | | | | **$135,137.35** |
| 04/01/11 | | | Received | FDIC INSURED DEPOSIT ACCOUNT IDA10 NOT COVERED BY SIPC PURCHASE FDIC INSURED DEPOSIT ACCOUNT | | | $ 0.03 | 135,137.38 |
| 04/21/11 | | | Delivered | FDIC INSURED DEPOSIT ACCOUNT IDA10 NOT COVERED BY SIPC REDEMPTION FDIC INSURED DEPOSIT ACCOUNT | | | (15,318.23) | 119,819.15 |
| 04/27/11 | | | Received | FDIC INSURED DEPOSIT ACCOUNT IDA10 NOT COVERED BY SIPC PURCHASE FDIC INSURED DEPOSIT ACCOUNT | | | 82.42 | 119,901.57 |
| 04/29/11 | | | Received | Interest: Insured Deposit Account | | | 5.34 | 119,906.91 |
| **Closing Balance** | | | | | | | | **$119,906.91** |

**TD Bank NA**

FDIC Insured Deposit Account (IDA) balances reflected in your brokerage account are FDIC-insured up to applicable limits and held by TD Bank, N.A., or TD Bank USA, N.A., or both.  The IDA balances are not covered by the Securities Investor Protection Corporation (SIPC) protection applicable to your brokerage account.

# Terms and Conditions

## STATEMENT GUIDE

TD Ameritrade provides monthly Portfolio Reports for accounts with activity and current account, but provides quarterly statements for accounts with assets.

**Portfolio Summary:** Tracks the current value of your portfolio as of the report date and compares it to the prior month. The asset allocation indicates your portfolio diversification by investment type.

Multiple allocations under 5% will be grouped into the category of "Other" in the pie chart. Margin Equity = Total Account Equity/(Total Long Marginable Value + Total Short Value)

**Activity Summary:** The opening and closing cash balances are reconciled here for your quick reference. All account activity is summarized for the current period and year-to-date.

**Income & Expense Summary (non-IRAs only):** This section details the income and expense totals from the Activity Summary and classifies the tax treatment.

**Retirement Account Summary (IRAs only):** Review the IRS regulated transactions for the current and prior years. IRS Form 5498 fair market value is based on the current value as of December 31 of the previous year and will be furnished to the Internal Revenue Service.

**Performance Summary:** Monitor your annual portfolio performance and the unrealized gains and losses for your future investment strategy.

**Account Positions:** View your investments at the current market value and compare to the prior value. Items have a unique Cusip and symbol. Original cost is assigned using the fresh, first-out (FIFO) method, which assumes the first shares you sell are those you purchased first. The estimated investment income* and average cost per share are displayed for your reference (the oldest purchase date is shown for an indication of your holding period).

**Account Activity:** All account activity is clearly defined, listed in date order, and reflected in the closing cash balance.

**Trades Pending Settlement:** Confirm your executed trades with a settlement date after month end. These transactions will be reflected in the Account Activity section next month.

**Cash Management Activity:** Cash management transactions (including check, debit card and ATM activity) that cleared during this month are listed in date order.

*Due to rounding adjustments, the statement details may not equal the statement totals. *Estimated Annual Income and Estimated Annual Yield values are based upon the number of shares owned or current value balance as of the statement date and the most recent dividend rate or cash yield provided.

## GENERAL INFORMATION

TD Ameritrade does not provide legal or tax advice. Please consult your legal advisor or tax advisor when necessary. As a standard industry practice, phone conversations may be recorded for quality control and transaction verification purposes.

For TD Ameritrade Institutional clients, your advisor firm is separate from and not affiliated with TD Ameritrade, Inc. or TD Ameritrade Clearing, Inc., and each firm is not responsible for the products and services of the other.

**Accuracy of Reports:** If you find any errors or omissions in your account statement you should immediately call us at the number listed on page one of your statement. You should also contact our Clearing firm, TD Ameritrade Clearing, Inc. at 402-970-7724.

Please review this statement carefully. If you disagree with any transaction or if there are any errors or omissions, please notify a Client Services representative or your local branch office, as well as TD Ameritrade Clearing, Inc. in writing within ten (10) days of your receipt of this statement. Any oral statements that you have made to us should be confirmed in writing. The statement will otherwise be considered conclusive.

Please notify us promptly of any changes in your account number. Transactions reflected on your report will be conclusively deemed accurate unless you notify TD Ameritrade immediately.

**Account Protection:** Deposits held by TD Bank, N.A. and TD Bank USA, N.A., are insured by the FDIC (not covered by SIPC) up to $250,000. Limits are per account

ownership per institution. To learn more about FDIC coverage go to www.fdic.gov. Securities, including mutual funds, held in your Brokerage Account are not deposits or obligations of, and are not guaranteed by, TD Bank, and are subject to various investment risks, including possible loss of principal. TD Ameritrade, Inc. is member of the Securities Investor Protection Corporation (SIPC), which protects securities customers of its members up to $500,000 (including $250,000 for claims for cash). Explanatory brochure is available upon request at www.sipc.org. TD Ameritrade also provides $149.5 million worth of protection for each client through supplemental coverage provided by London insurers. The $149.5 million of coverage includes an additional $900,000 limit on cash in the account. Each client is limited to a combined return of $151.5 million from a trustee, SIPC and TD Ameritrade insurance policy. This policy does have an aggregate total coverage of $250 million over all customers. This policy provides you coverage against theft following brokerage insolvency and does not protect against loss in market value of the securities.

An investment in a money market fund is not insured or guaranteed by the Federal Deposit Insurance Corporation (FDIC) or any other government agency. Although the fund seeks to preserve the value of your investment at $1.00 per share, it is possible to lose money by investing in a money market fund. Dividends are declared daily and paid/reinvested monthly. The prospectus contains this and other important information. Read the prospectus carefully before investing. Non-deposit investments held by your broker-dealer are NOT FDIC INSURED / NOT BANK GUARANTEED / MAY LOSE VALUE.

**Tax Reporting:** The provided report is not a tax document. You will receive Form 1099 for annual tax reporting in compliance with IRS requirements (includes taxable interest, dividends, capital gains, taxes withheld, and sales proceeds). Some payments are not eligible to be reclassified which will be reflected on subsequent tax reports.

**Cost Basis:** Cost-Basis, tax lot and performance reporting and Gainskeeper are offered and conducted by CCH INCORPORATED. TD Ameritrade is not responsible for the reliability or suitability of the information. TD Ameritrade and its information providers ("Providers") do not guarantee the accuracy of the information and data provided. CCH INCORPORATED is a separate company and is not affiliated with TD Ameritrade.

**Margin and Options Account Agreements:** Promptly advise TD Ameritrade in writing of any change in your investment objectives or financial situation as they pertain to your margin or options account agreements. A summary of commissions and charges incurred with the execution of options transactions is available.

**Current Market Prices:** The market values of securities have been obtained, if available, from quotation services and other independent sources. Values are based on the closing price, the mean between the bid and asking prices, or other methods. Non-traded securities are indicated by "N/A" and items marked "N/A" indicate that no market price is available. We have made every attempt to provide accurate information and we do not guarantee the accuracy of any securities prices. Limited Partnerships and non-traded Real Estate Investment Trusts are generally illiquid and have no public markets; annual valuations are obtained from a third-party or the general partner. Non-traded Certificates of Deposits (CDs) is generally illiquid and the actual value may be different from the purchase price. A significant loss of principal may result from the sale of a CD prior to maturity. Some secondary market trades potentially may occur below (over the counter) market and sufficient liquidity may not exist for you to sell your position prior to maturity. The sale of bonds prior to maturity may result in a loss of principal.

**Non-Standard Assets** (NSA) are typically investments in direct participation program securities (partnerships, limited liability companies, or real estate investment trusts), commodity pools, private equity, private debt or hedge funds. NSAs are typically illiquid investments and do not trade on a national securities exchange such as the Nasdaq Stock Market. The values shown for these investments are estimated values derived from various methods, including, but not limited to, independent appraisals, the program's net assets, and/or most recent party tender offers that have been provided by the management, sponsor, and/or sponsor of each program, or by a third-party vendor without independent verification by TD Ameritrade. The values may represent an estimated value of the investor's participation in the program, as of a date no greater than 18 months prior to the date of this statement and they may not reflect the original purchase price, actual market value, or present value of your investment. For information about a particular Non-Standard Asset, including the net asset value or the method of determining value, you should contact the issuer directly. Additionally, valuation information may not be available at the time of the issuance of this

statement. For additional detail regarding valuation for Non-Standard Assets, please contact Client Services. These investments are not covered under the SIPC.

## REGULATORY DISCLOSURES

All transactions are subject to (i) the constitution, rules, regulations, customs and usages of the exchange or market, and its clearinghouse, if any, on which such transactions are executed; (ii) federal laws, including the Securities Act of 1933 and the Securities Exchange Act of 1934, each as amended to date and in the future, and the rules and regulations promulgated thereunder; and (iii) the rules and regulations of FINRA and the Federal Reserve System.

For an investor brochure that includes information describing FINRA's Public Disclosure Program, please contact FINRA at 800-289-9999 or www.finra.org.

**Auction Rate Securities ("ARS") Pricing:** The market values for ARS securities have been obtained, if available, from quotation services or other independent sources. The accuracy of the pricing is not guaranteed. If a market value is not available, TD Ameritrade will price the ARS position, taking into consideration both the liquidity and underlying credit quality. The ARS market is currently experiencing a lack of liquidity and, as a result, there can be no assurance that such securities can be sold under current market conditions.

The interest rate shown for TD Ameritrade Cash is taken from the applicable interest rate tier for the Market Value balance in the TD Ameritrade Cash, as of the statement closing date. Similarly, interest is accrued daily based on the interest rate tier applicable to each day's balance.

**Financial Statement Notification:** The statement of financial condition for TD Ameritrade is available (twice a year) and may be obtained at no cost, via the internet at http://www.tdameritrade.com/financialstatement.html.

**Allocation Method:** In the event any of your securities are called or assigned, the securities will be selected on an impartial, random basis.

**Free Credit Balances (Rule 15c3-2 & 3):** Under the client protection rules we may use free credit balances in your account in the ordinary course of our business which are payable to you on demand.

**Payment for Order Flow (SEC Rules 606 and 607):** In some circumstances, TD Ameritrade receives compensation for directing certain over-the-counter and listed makers based on the ability to provide best execution and the market maker's method of order routing execution at www.tdameritrade.com. A written copy is available upon request.

It is our policy, absent client orders to the contrary, to select brokers, dealers, and market makers based on the ability to provide best execution and the price to yield improvement on market orders. Price improvement is available under certain market conditions, and we regularly monitor executions to test for such improvement if available.

**Trade Confirmations (Rule 10b-10):** All confirmations are transmitted on the transaction date.

**Privacy Policy Notification:** A copy of the TD Ameritrade privacy policy is available at www.tdameritrade.com.

In case of Errors or Questions About Your Electronic Transfers Telephone us at 1-800-669-3900 or Write us at: P.O. Box 2209, Omaha, NE 68103, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

(1)  Tell us your name and account number.
(2)  Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
(3)  Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

# TD Ameritrade

800-669-3900
TD AMERITRADE
DIVISION OF TD AMERITRADE INC
PO BOX 2209
OMAHA, NE 68103-2209

**Statement Reporting Period:**
05/01/11 - 05/31/11

**Statement for Account #**

CAROLYN CAUSER

**Announcements:**
SMARTMONEY GAVE TD AMERITRADE ITS HIGHEST RATING FOR MUTUAL FUNDS AND INVESTMENT PRODUCTS, TRADING TOOLS, AND CUSTOMER SERVICE IN ITS ANNUAL SURVEY OF ONLINE BROKERS. GO TO TDAMERITRADE.COM TO LEARN MORE.

## Portfolio Summary

| Investment | Current Value | Prior Value | Period Change | % Change | Estimated Income | Estimated Yield |
|---|---|---|---|---|---|---|
| Cash | $ - | $ - | $ - | - | $ - | - |
| Insrd Dep Acct | 134,897.36 | 119,906.91 | 14,990.45 | 12.5% | - | 0.05% |
| Money Market | - | - | - | - | - | - |
| Short Balance | - | - | - | - | - | - |
| Stocks | 63,972.68 | 77,939.11 | (13,966.43) | (17.9)% | 1,742.31 | 2.7% |
| Short Stocks | - | - | - | - | - | - |
| Fixed Income | - | - | - | - | - | - |
| Options | - | - | - | - | - | - |
| Short Options | - | - | - | - | - | - |
| Mutual Funds | - | - | - | - | - | - |
| Other | - | - | - | - | - | - |
| **Total** | **$198,870.04** | **$197,846.02** | **$1,024.02** | **0.5%** | **$1,742.31** | **0.9%** |

### Portfolio Allocation

Insrd Dep Acct 67.8%

Stocks 32.2%

## Cash Activity Summary

| | Current | YTD |
|---|---|---|
| **Opening Balance** | $ 0.00 | $ - |
| Securities Purchased | (356.66) | (23,146.29) |
| Securities Sold | 14,984.89 | 62,114.76 |
| Contributions | - | - |
| Distributions | - | - |
| Income | 356.66 | 1,334.15 |
| Expense | - | - |
| Other | (14,984.89) | (40,302.62) |
| **Closing Balance** | **$ 0.00** | **$0.00** |

## Retirement Account Summary

| | 2011 PTD | 2011 YTD | 2010 YTD |
|---|---|---|---|
| Contributions | $ - | $ - | $ - |
| Distributions | - | - | - |
| Plan Contribution | - | - | - |
| Rollover | - | - | - |
| Direct Transfer | - | - | - |
| Tax Withheld | - | - | - |
| Recharact | - | - | - |
| Roth Conv. | - | - | - |

## Performance Summary

| Cost Basis As Of - 05/31/11 | $42,821.88 |
|---|---|
| Unrealized Gains | 782.72 |
| Unrealized Losses | (19,843.04) |
| Funds Deposited/(Disbursed) YTD | - |
| Income/(Expense) YTD | 1,334.15 |
| Securities Received/(Delivered) YTD | 0.00 |

## Statement for Account #
### 05/01/11 - 05/31/11

### Income Summary Detail*

| Description | Current | Year to Date |
|---|---|---|
| Interest Income - Securities | $ 0.00 | $ 476.05 |
| Interest Income Credit Balance | 0.00 | 0.03 |
| Qualified Dividends | 356.66 | 858.07 |
| IDA Interest | 5.56 | 23.50 |

*This section displays current and year to date taxation values for this account. The current totals may not equate to the total payments listed on this statement as corrections to tax reporting may also be included. These corrections can include changes made to previous payments and removal of payments reportable in a previous tax year (spillover dividends). The year to date totals will accurately reflect your cumulative amount for the year.

### Account Positions

| Investment Description | Symbol/CUSIP | Quantity | Current Price | Market Value | Purchase Date | Cost Basis | Average Cost | Unrealized Gain/(Loss) | Estimated Income | Yield |
|---|---|---|---|---|---|---|---|---|---|---|
| **Stocks - Cash** | | | | | | | | | | |
| BANK OF AMERICA CORP COM | BAC | 610.157 | $ 11.75 | $7,169.34 | 07/13/05 | $ 26,931.75 | $ 44.14 | $ (19,762.41) | $ 24.41 | 0.3% |
| CITIGROUP INC COM | C | 20 | 41.15 | 823.00 | 04/18/11 | 903.63 | 45.18 | (80.63) | 0.80 | 0.1% |
| PEPSICO INC COM | PEP | 221.727 | 71.12 | 15,769.22 | 08/10/07 | 14,986.50 | 67.59 | 782.72 | 456.76 | 2.9% |
| PROCTER GAMBLE CO COM | PG | 600.166 | 67.00 | 40,211.12 | | - | - | - | 1,260.35 | 3.1% |
| **Total Stocks** | | | | $63,972.68 | | $42,821.88 | | $(19,060.32) | $1,742.32 | 2.7% |
| **Total Cash Account** | | | | $63,972.68 | | $42,821.88 | | $(19,060.32) | $1,742.32 | 2.7% |

### Account Activity

| Trade Date | Settle Date | Acct Type | Transaction/Cash Activity* | Description | Symbol/CUSIP | Quantity | Price | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| **Opening Balance** | | | | | | | | | $ 0.00 |
| 05/04/11 | 05/09/11 | Cash | Sell - Securities Sold | CATERPILLAR INC COM | CAT | 100- | $ 113.07 | $ 11,296.79 | 11,296.79 |
| 05/04/11 | 05/09/11 | Cash | Sell - Securities Sold | SILVER WHEATON CORP COM | SLW | 100- | 36.53 | 3,642.93 | 14,939.72 |

**Statement for Account #**
05/01/11 - 05/31/11

## Account Activity

| Trade Date | Settle Date | Acct Type | Transaction/ Cash Activity* | Description | Symbol/ CUSIP | Quantity | Price | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 05/09/11 | 05/09/11 | Cash | Journal - Other | PURCHASE FDIC INSURED DEPOSIT ACCOUNT | - | - | 0.00 | (14,939.72) | 0.00 |
| 05/09/11 | 05/09/11 | Cash | Delivered - Other | CITIGROUP INC 1:10 R/S 5/9/11 TO 172967424 REORG - 1:10 REVERSE SPLIT 5/9/11 TO CITIGROUP INC Auto Reorg#120485|REVERSE SPLIT | 172967101 | 200- | 0.00 | - | 0.00 |
| 05/09/11 | 05/09/11 | Cash | Received - Other | CITIGROUP INC COM REORG - 1:10 REVERSE SPLIT 5/9/11 TO CITIGROUP INC Auto Reorg#120485|REVERSE SPLIT | C | 20 | 0.00 | - | 0.00 |
| 05/17/11 | 05/17/11 | Cash | Div/Int - Income | PROCTER GAMBLE CO COM Payable: 05/16/2011 QUALIFIED DIVIDENDS 312.66 | PG | - | 0.00 | 312.66 | 312.66 |
| 05/17/11 | 05/17/11 | Cash | Buy - Securities Purchased | PROCTER GAMBLE CO COM | PG | 4.625 | 67.595 | (312.66) | 0.00 |
| 05/23/11 | 05/23/11 | Cash | Div/Int - Income | CATERPILLAR INC COM Payable: 05/20/2011 QUALIFIED DIVIDENDS 44.00 | CAT | - | 0.00 | 44.00 | 44.00 |
| 05/23/11 | 05/23/11 | Cash | Buy - Securities Purchased | CATERPILLAR INC COM | CAT | 0.433 | 101.5184 | (44.00) | 0.00 |
| 05/23/11 | 05/24/11 | Cash | Sell - Securities Sold | CATERPILLAR INC COM | CAT | 0.433 | 104.33 | 45.17 | 45.17 |
| 05/24/11 | 05/24/11 | Cash | Journal - Other | PURCHASE FDIC INSURED DEPOSIT ACCOUNT | - | 0.433- | 0.00 | (45.17) | 0.00 |

**Closing Balance** $ 0.00

*For Cash Activity totals, refer to the Cash Activity Summary on page one of your statement.

## Statement for Account #

05/01/11 - 05/31/11

### Insured Deposit Account Interest Credited

| Begin Date | Balance | Number of Days | Interest Rate | Interest Accrued | MTD Accrued | MTD PAID |
|---|---|---|---|---|---|---|
| 05/01/11 | $ 119,906.91 | 8 | 0.0500 | $ 1.31 | $ 1.31 | $ - |
| 05/09/11 | 134,846.63 | 15 | 0.0500 | 2.78 | 4.09 | - |
| 05/24/11 | 134,891.80 | 8 | 0.0500 | 1.47 | 5.56 | 5.56 |

**Total Interest Income**     **$5.56**

### Insured Deposit Account Activity

| Date Cleared | Check Number | Date Written | Transaction | Description | Tracking Code | Expense Code | Amount | Balance |
|---|---|---|---|---|---|---|---|---|
| Opening Balance | | | | | | | | $119,906.91 |
| 05/09/11 | | | Received | FDIC INSURED DEPOSIT ACCOUNT IDA10 NOT COVERED BY SIPC PURCHASE FDIC INSURED DEPOSIT ACCOUNT | | | $ 14,939.72 | 134,846.63 |
| 05/24/11 | | | Received | FDIC INSURED DEPOSIT ACCOUNT IDA10 NOT COVERED BY SIPC PURCHASE FDIC INSURED DEPOSIT ACCOUNT | | | 45.17 | 134,891.80 |
| 05/31/11 | | | Received | Interest: Insured Deposit Account | | | 5.56 | 134,897.36 |

**Closing Balance**     **$134,897.36**

**TD Bank NA**

FDIC Insured Deposit Account (IDA) balances reflected in your brokerage account are FDIC-insured up to applicable limits and held by TD Bank, N.A., or TD Bank USA, N.A., or both. The IDA balances are not covered by the Securities Investor Protection Corporation (SIPC) protection applicable to your brokerage account.

### Important Information

The most recent statement of financial condition for TD Ameritrade Clearing, Inc. may be obtained at no cost, via the Internet at http://www.tdameritrade.com/financialstatement.html on or before June 14, 2011, or by contacting TD Ameritrade Clearing, Inc. at 1-800-237-8692. As of March 31, 2011 TD Ameritrade Clearing, Inc. had net capital and a net capital requirement of $1.2 billion and $211 million, respectively. A copy of the report and comments is currently available for customers' inspection at the principal office of the commission in Washington DC and the Denver, CO office of the Commission.

# Terms and Conditions

## STATEMENT GUIDE

TD Ameritrade provides monthly Portfolio Reports for accounts with activity and quarterly reports for inactive accounts with assets.

**Portfolio Summary:** Tracks the current value of your portfolio as of the report date and compares it to the prior month.* The asset allocation indicates your portfolio diversification by investment type.

Multiple allocations under 5% will be grouped into the category of "Other" in the pie chart. Margin Equity = Total Long Marginable Value + Total Short Value.

**Activity Summary:** The opening and closing cash balances are reconciled here for your quick reference. All account activity is summarized for the current period and year-to-date.

**Income & Expense Summary (non-IRAs only):** This section details the income and expense totals from the Activity Summary and classifies the tax treatment.

**Retirement Account Summary (IRAs only):** Review the IRS regulated transactions for the current and prior years. IRS Form 5498 fair market value is based on the current value as of December 31 of the previous year and will be furnished to the Internal Revenue Service.

**Performance Summary:** Monitor your annual portfolio performance and the unrealized gains and losses for your Value investment strategy.

**Account Positions:** View your investments at the current market value and compare the original cost to see unrealized gains and losses in your portfolio. Original cost is assigned using the first-in, first-out (FIFO) method, which assumes the first shares you sell are those you purchased first. The estimated investment income* and average cost per share are provided for your reference (the oldest purchase data is shown for an indication of your holding period).

**Account Activity:** All account activity is clearly defined, listed in date order, and reflected in the closing cash balance.

**Trades Pending Settlement:** Confirm your executed trades with a settlement date after month end. These transactions will be cleared during this month-end settlement month.

**Cash Management Activity:** Cash management transactions (including check, debit card and ATM activity) that cleared during this month will be listed in date order.

*Due to rounding adjustments, the statement details may not equal the statement totals. *Estimated Annual Income and Estimated Annual Yield values are based upon the number of shares owned or current value balance and the statement date and the most recent dividend rate or cash yield provided.

## GENERAL INFORMATION

TD Ameritrade does not provide legal or tax advice. Please consult your legal advisor or tax accountant when necessary. As a standard industry practice, phone conversations may be recorded for quality control and transaction verification purposes.

For TD Ameritrade Institutional clients, your advisor firm is separate from and not affiliated with TD Ameritrade, Inc. or TD Ameritrade Clearing, Inc., and each firm is not responsible for the products and services of the other.

**Accuracy of Reports:** If you find any errors or omissions in your account statement you should immediately call us at the number listed on page one of your statement. You should also contact our Clearing firm, TD Ameritrade Clearing, Inc. at 402-970-7724.

Please review your statement carefully. If you disagree with any transaction, or if there are any errors or omissions, please notify a Client Services representative or your local branch office, as well as TD Ameritrade Clearing, Inc. in writing within ten (10) days of confirmation. Any oral statements that you have made to us should be confirmed in writing. This statement will otherwise be considered conclusive.

Please notify us promptly of any changes in your account information. Transactions reflected on your account will be conclusively deemed accurate unless you notify TD Ameritrade immediately.

**Account Protection:** Deposits held by TD Bank, N.A. and TD Bank USA, N.A. are insured by the FDIC (not covered by SIPC) up to $250,000. Limits are per account,

ownership per institution. To learn more about FDIC coverage go to www.fdic.gov.

Securities, including money market fund shares, in your Brokerage Account and deposits or obligations of, or guaranteed by, any bank are not FDIC-insured, and involve investment risks, including possible loss of principal. TD Ameritrade, Inc. is a member of the Securities Investor Protection Corporation (SIPC), which protects securities customers of its members up to $500,000 (including $250,000 for claims for cash). Explanatory brochure available on request at www.sipc.org. TD Ameritrade also provides $149.5 million worth of protection for each client through supplemental coverage provided by London insurers. The $149.5 million of coverage includes an additional $500,000 limit on cash in the account. Each client is limited to a combined return of $152 million from a trustee, SIPC and TD Ameritrade insurance. This policy does have an aggregate total coverage of $250 million over all customers. This policy provides you coverage against theft following brokerage insolvency and does not protect against loss in market value of the securities.

An investment in a money market fund is not insured or guaranteed by the Federal Deposit Insurance Corporation (FDIC) or any other government agency. Although the fund seeks to preserve the value of your investment at $1.00 per share, it is possible to lose money by investing in a money market fund. Dividends are declared daily and paid/reinvested monthly. The prospectus contains this and other important information. Read the prospectus carefully before investing. Non-deposit investments held by your brokerage account are NOT FDIC INSURED / NOT BANK GUARANTEED / MAY LOSE VALUE.

**Tax Reporting:** The principal report is a tax document. You will receive Form 1099 for annual tax reporting in compliance with IRS requirements (includes taxable interest, dividends, capital gains, taxes withheld, and sales proceeds). Some payments are subject to reclassification which will be reflected on subsequent tax reports.

**Cost Basis:** Cost-Basis, tax lot and performance reporting and Gainkeeper are offered and conducted by GCH INCORPORATED. TD Ameritrade is not responsible for the reliability or suitability of the information. TD Ameritrade and its Information providers ("Providers") do not guarantee the accuracy of the information and data provided. GCH INCORPORATED is a separate company and is not affiliated with TD Ameritrade.

**Margin and Options Account Agreement:** Promptly advise TD Ameritrade in writing of any change in your investment objectives or financial situation as they pertain to your margin or options account agreements. A summary of commissions and charges incurred with the execution of options transactions is available.

**Current Market Prices:** The market values of securities have been obtained, if available, from quotation services and other independent sources. Values are based on the closing price. We have been between the bid and asking prices, or other methods. Non-Priced securities are issued at the end of the month as the bid and asking prices are based on the values in your portfolio report are provided as general information and we do not guarantee the accuracy of any securities prices. Limited Partnerships and non-traded Real Estate Investment Trusts are generally illiquid and have no public markets; annual valuations for a direct investment is issued under the Expand program and backed positions are valued using the remaining balance and the current market price. Portfolio report valuations may not represent sales proceeds. The secondary market for Certificates of Deposits (CDs) is generally illiquid and the actual value may be different from the purchase price estimated on the portfolio report. Some securities may decline prior to maturity. Bonds and/or Fixed Income Securities trade differently than equity securities and do not trade on a liquid exchange. Rather, they trade in the OTC (over the counter) market and sufficient liquidity may not exist for you to sell your position prior to maturity. The sale of bonds prior to maturity may result in a loss of principal.

**Non Standard Assets** (NSA) are typically investments in direct participation program securities (partnerships, limited liability companies, or real estate investment program (investments such as private stock, private debt, or hedge funds. NSAs are typically illiquid investments and do not trade on a national securities exchange or the Nasdaq Stock Market. The values shown for these investments are estimated values derived from various methods, including, but not limited to, independent appraisals, the program's net assets, and/or other third party lender offers that have been provided by the management, administrator, and/or sponsor of each program, or by a third-party vendor without independent verification by TD Ameritrade. The values may represent an estimated value of the investor's participation in the program, as of a date no greater than 18 months prior to the date of this statement and they may not reflect the original purchase price paid. TD Ameritrade cannot ensure such values are accurate. If an estimated value is not provided, valuation information was not available at the time of the issuance of the

statement. For additional detail regarding valuation for Non-Standard Assets, please contact Client Services. These investments are not covered under the SIPC.

## REGULATORY DISCLOSURES

All transactions are subject to (i) the constitution, rules, regulations, customs and usages of the exchange or market, and its clearinghouse, if any, on which such transactions are executed; (ii) federal laws, and the rules and regulations of the Securities Exchange Act of 1934, each as amended to date and in the future, and the rules and regulations promulgated thereunder; and (iii) the rules and regulations of FINRA and the Federal Reserve System.

For an investor brochure that includes information describing FINRA's Public Disclosure Program, please contact FINRA at 800-289-9999 or www.finra.org.

**Auction Rate Securities ("ARS") Pricing:** The market values for ARS securities have been obtained, if available, from quotation services and other independent sources. The accuracy of the pricing is not guaranteed. If a market value is not available, TD Ameritrade will price the ARS position, taking into consideration both the liquidity and underlying credit quality. The ARS market is currently experiencing a lack of liquidity and as such, there can be no assurance that securities can be sold under current market conditions.

The interest rate shown for TD Ameritrade Cash is taken from the applicable interest rate for the Market Value balance in the TD Ameritrade Cash, as of the statement closing date. Simple interest is accrued daily based on the interest rate applicable to each day's balance.

**Financial Statement Notification:** The statement of financial condition for TD Ameritrade is available twice a year and may be obtained at no cost, via the Internet at http://www.tdameritrade.com/financialstatement.html.

**Allocation Method:** In the event any of your securities are called or assigned, the securities will be selected on an impartial, random basis.

**Free Credit Balances (Rule 15c3-2 & 3):** Under the client protection rules we may use the free credit balance in your account in the ordinary course of our business which you may see payable on demand.

**Margin Accounts (Regulation T):** If you have a margin account, this report is a combination of your margin account and a special memorandum account. Trading on margin poses additional risks and is not suitable for all investors. A complete list of the risks associated with margin trading is available in the margin risk disclosure document. You may obtain a copy of this document by contacting us at the number listed on page one of your statement.

**Payment for Order Flow (SEC Rules 605 and 607):** In some circumstances, TD Ameritrade receives compensation for directing certain over-the-counter and listed equity order flow to selected market makers, brokers or dealers. Compensation is in the form of a per share cash payment. We post quarterly reports disclosing the venues for order routing execution and our www.tdameritrade.com. A written copy is available upon request.

It is our policy, absent client orders to the contrary, to select brokers, dealers, and market makers based on the ability to provide the best execution for the order based on overall price improvement, market orders. Price improvement is available under certain market conditions, and we regularly monitor executions to test for such improvement if available.

**Trade Confirmations (Rule 10b-10):** All confirmations are transmitted on the transaction date.

**Privacy Policy Notification:** A copy of the TD Ameritrade privacy policy is available at www.tdameritrade.com.

In case of Errors or Questions About Your Electronic Transfers Telephone us at 1-800-669-3900 or Write us at P.O. Box 2209, Omaha, NE 68103, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.
(1)  Tell us your name and account number.
(2)  Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
(3)  Tell us the dollar amount of the suspected error.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.



U.S. POSTAGE PAID

MAY 28, 20
AMOUNT
$7.80
R2304E105276-20

1000

Silver Wheaton Corp.
c/o Strategic Claims Services
P. O. Box 230
600 N. Jackson St., Ste 205
Media, PA 19063

JUN 08 2020

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL

EXHIBIT F



**04/30/20**

**Silver Wheaton Corp. Litigation**

**c/o Strategic Claims Services**

**600 N. Jackson St., Ste. 205**

**P. O. Box 230**

**Media, PA 19063**

**Dear Sirs:**

      **Enclosed is a proof of claim and release form for David D. & Sheela B. Plater, together with supporting documents.**

      **We do not possess the means of applying electronically and object to any reduction in a recognized claim for our inability to use that means.**

**Sincerely,**



**David D. Plater**

**Sheela B. Plater**

**IF YOU CHOOSE TO FILE YOUR CLAIM BY MAIL, THIS PROOF OF CLAIM AND RELEASE FORM MUST BE POSTMARKED NO LATER THAN JUNE 13, 2020 AND MUST BE MAILED TO:**

Silver Wheaton Corp. Litigation
c/o Strategic Claims Services
600 N. Jackson St., Ste. 205
P.O. Box 230
Media, PA 19063
Tel.: 866-410-3013
Fax: 610-565-7985
info@strategicclaims.net

**IF YOU SUBMIT YOUR PROOF OF CLAIM AND RELEASE FORM BY MAIL, YOUR RECOGNIZED CLAIM WILL BE REDUCED BY $5 OR 1%, WHICHEVER IS GREATER, TO ACCOUNT FOR INCREASED ADMINISTRATION COSTS INCURRED IN PROCESSING HARD-COPY CLAIMS.**

A Proof of Claim and Release Form received by the Claims Administrator shall be deemed to have been submitted when posted, if mailed by June 13, 2020 and if a postmark is indicated on the envelope and it is mailed first class and addressed in accordance with the above instructions. In all other cases, a Proof of Claim and Release Form shall be deemed to have been submitted when actually received by the Claims Administrator.

You should be aware that it will take a significant amount of time to process fully all of the Proof of Claim and Release Forms and to administer the Settlement. This work will be completed as promptly as time permits, given the need to investigate and tabulate each Proof of Claim and Release Form. Please notify the Claims Administrator of any change of address.

### REMINDER CHECKLIST

o   Please be sure to sign this Proof of Claim and Release Form on page 7. If this Proof of Claim and Release Form is submitted on behalf of joint claimants, then both claimants must sign.
o   Please remember to attach supporting documents. Do NOT send any stock certificates. Keep copies of everything you submit.
o   Do NOT use highlighter on the Proof of Claim and Release Form or any supporting documents.
o   If you move or change your address, telephone number or email address, please submit the new information to the Claims Administrator, as well as any other information that will assist us in contacting you. NOTE: Failure to submit updated information to the Claims Administrator may result in the Claims Administrator's inability to contact you regarding issues with your claim or delivery of payment to you.

SILVER WHEATON

## I. CLAIMANT INFORMATION

Beneficial Owner: David D. Plater + Sheela Burke Plater

| Address: | | |
|---|---|---|
| City: | State: | ZIP: |
| Foreign Province: | Foreign Country: | |
| Day Phone: | enin | |
| Email: | | |

| Social Security Number (for individuals): | OR | Taxpayer Identification Number (for estates, trusts, corporations, etc.): |
|---|---|---|
| | | |

## II. SCHEDULE OF TRANSACTIONS IN SILVER WHEATON SECURITIES

**Beginning Holdings:**

A.  State the total number of shares of Silver Wheaton common stock held at the close of trading on March 29, 2011 (*must be documented*).  If none, write "zero" or "0."        —0—

**Purchases/Acquisitions:**

B.  Separately list each and every purchase of Silver Wheaton common stock between March 30, 2011 and July 6, 2015, both dates inclusive, and provide the following information (*must be documented*):

| Trade Date (List Chronologically) (Month/Day/Year) | Number of Shares Purchased/Acquired | Price per Share | Total Cost (Excluding Commissions, Taxes, and Fees) |
|---|---|---|---|
| 05/02/2012 | 200 | 30.079 | 6,005.80 |
| 05/02/2012 | 300 | 30.028 | 9,008.40 |
| 05/04/2012 | 200 | 28.498 | 5,699.60 |
| 05/11/2012 | 200 | 26.418 | 5,283.60 |
| 08/28/2013 | 300 | 26.427 | 7,928.10 |

4

**Sales:**

C.  Separately list each and every sale of Silver Wheaton common stock between March 30, 2011 and July 6, 2015, both dates inclusive, and provide the following information (*must be documented*):

| Trade Date (List Chronologically) (Month/Day/Year) | Number of Shares Sold | Price per Share | Amount Received (Excluding Commissions, Taxes, and Fees) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

**Ending Holdings:**

D.  State the total number of shares of Silver Wheaton common stock held at the close of trading on July 6, 2015 (*must be documented*).        1,200

**If additional space is needed, attach separate, numbered sheets, giving all required information, substantially in the same format, and print your name and Social Security or Taxpayer Identification number at the top of each sheet.**

## III. SUBSTITUTE FORM W-9

Request for Taxpayer Identification Number:

Enter taxpayer identification number below for the Beneficial Owner(s).  For most individuals, this is your Social Security Number.  The Internal Revenue Service ("I.R.S.") requires such taxpayer identification number.  If you fail to provide this information, your claim may be rejected.

| Social Security Number (for individuals) | or | Taxpayer Identification Number (for estates, trusts, corporations, etc.) |
|---|---|---|
| █████████████████ | | _____ |

## IV. CERTIFICATION

I (We) submit this Proof of Claim and Release Form under the terms of the Stipulation described in the Notice.  I (We) also submit to the jurisdiction of the United States District Court for the Central District of California, with respect to my (our) claim as a Settlement Class Member and for purposes of enforcing the release and covenant not to sue set forth herein.  I (We) further acknowledge that I am (we are) bound by and subject to the terms of any judgment that may be entered in this Action.  I (We) have not submitted any other claim covering the same purchases or sales of Silver Wheaton securities during the Class Period and know of no other Person having done so on my (our) behalf.

I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(c) of the Internal Revenue Code because: (a) I am (We are) exempt from backup withholding; or (b) I (We) have not been notified by the I.R.S. that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends; or (c) the I.R.S. has notified me (us) that I am (we are) no longer subject to backup withholding.

NOTE: If you have been notified by the I.R.S. that you are subject to backup withholding, please strike out the language that you are not subject to backup withholding in the certification above.

UNDER THE PENALTIES OF PERJURY UNDER THE LAWS OF THE UNITED STATES, I (WE) CERTIFY THAT ALL OF THE INFORMATION I (WE) PROVIDED ON THIS PROOF OF CLAIM AND RELEASE FORM IS TRUE, CORRECT AND COMPLETE.

Signature of Claimant (If this claim is being made

(Signature)

*beneficial Purchasers*

(Capacity of person(s) signing, e.g. beneficial purchaser(s), executor, administrator, trustee, etc.)
☐ Check here if proof of authority to file is enclosed.
(See Item 2 under Claimant's Statement)

Date: *04/30/20*

**To file your Proof of Claim and Release Form electronically, please visit the Silver Wheaton case website, www.silverwheatonsettlement.com. The case website has a page called "File a Claim Online" that will direct you to the electronic filing system. Once you click the File a Claim Online page, you will be given detailed instructions for filling out and submitting your Proof of Claim and Release Form online. Please read the instructions carefully and make sure that you have the information and documents necessary to complete your online claim. You will need to provide the contact information and list of transactions stated in the instructions, as well as attach the documentation listed in paragraph 5 on page 2 of this Proof of Claim and Release Form, in order to submit your claim electronically. If you do not provide all of the information and documents required, you will not be able to proceed with your submission through the electronic filing system.**

**If you experience any issues while filling out your Proof of Claim and Release Form electronically, or if you have any questions about filing, you may contact the Claims Administrator via email at info@strategicclaims.net or by toll-free phone at (866) 410-3013.**

**Main Identity**

| | |
|---|---|
| **From:** | "Schwab Alerts" <SchwabAlerts.AccountActivity@schwab.com> |
| **To:** | ██████████████ |
| **Sent:** | Thursday, May 03, 2012 1:46 AM |
| **Subject:** | Schwab eConfirms account ending ██████ |

 **SCHWAB**

Schwab eConfirms™

This email contains your trade confirmations for 5/02/2012.

Account endin ██████████

**Security Description:** GOLDCORP INC NEW F
**Action:** BOUGHT

**Security No./CUSIP:** 380956-40-9      **Type:** Cash                    **Trade Date:** 05/02/12   Settle

**Symbol:** GG

| Quantity | Price | Principal | Charges and/or Interest |
|---|---|---|---|
| 200 | $38.068 | $7,613.60 | Commission:    $8.95 |

Additional information for this security.
- Unless you have already instructed us differently, we will: hold this security in your account.
- Executed Over The Counter
- Unsolicited trade
- Schwab acted as your agent.

Account ending ██████

**Security Description:** SILVER WHEATON CORP F
**Action:** BOUGHT

**Security No./CUSIP:** 828336-10-7      **Type:** Cash                    **Trade Date:** 05/02/12   Settle

**Symbol:** SLW

| Quantity | Price | Principal | Charges and/or Interest |
|---|---|---|---|
| 200 | $30.029 | $6,005.80 | Commission:    $3.58 |
| 300 | $30.028 | $9,008.40 | Commission:    $5.37 |

| Totals | | | |
|---|---|---|---|
| **500** | | **$15,014.20** | **$8.95** |

Additional information for this security.
- Unless you have already instructed us differently, we will: hold this security in your account.
- Executed Over The Counter
- Unsolicited trade
- Schwab acted as your agent.

What's happening in the markets? Sign up today for free email alerts at www.schwab.com/alerts.

If you no longer wish to receive eConfirms, you can unsubscribe by logging in to www.schwab.com th
select Account Settings, then click on Alert Preferences and follow the instructions under Paperless S

If you have questions about this report, please contact Schwab at 800-435-4000.

5/3/2012

## Main Identity

| | |
|---|---|
| **From:** | "Schwab Alerts" <SchwabAlerts.AccountActivity@schwab.com> |
| **To:** | ███████████████████ |
| **Sent:** | Saturday, May 05, 2012 1:47 AM |
| **Subject:** | Schwab eConfirms account ending ████ |

### ▒▒▒▒ SCHWAB

Schwab eConfirms™

This email contains your trade confirmations for 5/04/2012.
Account ending ████

**Security Description:** SILVER WHEATON CORP F
**Action:** BOUGHT

**Security No./CUSIP:** 828336-10-7     **Type:** Cash     **Trade Date:** 05/04/12   Settle

**Symbol:** SLW

| Quantity | Price | Principal | Charges and/or Interest |
|---|---|---|---|
| 200 | $28.498 | $5,699.60 | Commission:     $8.95 |

*5,708.55*
*28,5427 5/d.*

Additional information for this security.
- Unless you have already instructed us differently, we will: hold this security in your account.
- Executed Over The Counter
- Unsolicited trade
- Schwab acted as your agent.

What's happening in the markets? Sign up today for free email alerts at www.schwab.com/alerts.

If you no longer wish to receive eConfirms, you can unsubscribe by logging in to www.schwab.com the
select Account Settings, then click on Alert Preferences and follow the instructions under Paperless Se

If you have questions about this report, please contact Schwab at 800-435-4000.

Charles Schwab & Co., Inc.
Headquarters: The Schwab Building,
211 Main Street, San Francisco, CA 94105

View, print, or download terms and conditions of your transaction.

To read about Schwab's privacy policy, go to www.schwab.com/privacy.

To review SchwabSafe® and The Schwab Security Guarantee, use the following links:
www.schwab.com/schwabsafe
www.schwab.com/guarantee

NOTICE: All email sent to or from the Charles Schwab corporate email system is subject to archival, monitoring and/or review by Schwa
4572)

©2012 Charles Schwab & Co., Inc. All rights reserved. Member SIPC.
CSA 05418 EML43677Q (07/08)

5/5/2012

## Main Identity

| | |
|---|---|
| **From:** | "Schwab Alerts" <SchwabAlerts.AccountActivity@schwab.com> |
| **To:** | |
| **Sent:** | Saturday, May 12, 2012 1:48 AM |
| **Subject:** | Schwab eConfirms account ending in |

## SCHWAB

Schwab eConfirms™

This email contains your trade confirmations for 5/11/2012.

Account ending in

**Security Description:** GOLDCORP INC NEW F
**Action:** BOUGHT
**Security No./CUSIP:** 380956-40-9      **Type:** Cash                    **Trade Date:** 05/11/12   Settle
**Symbol:** GG

| Quantity | Price | Principal | Charges and/or Interest |
|---|---|---|---|
| 100 | $35.108 | $3,510.80 | Commission:      $8.95 |

*3,519.75 =*
*35,1975/sh.*

Additional information for this security.
- Unless you have already instructed us differently, we will: hold this security in your account.
- Executed Over The Counter
- Unsolicited trade
- Schwab acted as your agent.

Account ending

**Security Description:** SILVER WHEATON CORP F
**Action:** BOUGHT
**Security No./CUSIP:** 828336-10-7      **Type:** Cash                    **Trade Date:** 05/11/12   Settle
**Symbol:** SLW

| Quantity | Price | Principal | Charges and/or Interest |
|---|---|---|---|
| 200 | $26.418 | $5,283.60 | Commission:      $8.95 |

*5,292.55*
*25,1479*
*26.4627/sh.*

Additional information for this security.
- Unless you have already instructed us differently, we will: hold this security in your account.
- Executed Over The Counter
- Unsolicited trade
- Schwab acted as your agent.

What's happening in the markets? Sign up today for free email alerts at www.schwab.com/alerts.

If you no longer wish to receive eConfirms, you can unsubscribe by logging in to www.schwab.com the
select Account Settings, then click on Alert Preferences and follow the instructions under Paperless S

If you have questions about this report, please contact Schwab at 800-435-4000.

Charles Schwab & Co., Inc.
Headquarters: The Schwab Building,
211 Main Street, San Francisco, CA 94105

View, print, or download terms and conditions of your transaction.

To read about Schwab's privacy policy, go to www.schwab.com/privacy.

5/12/2012

**Schwab One® Account of**
**DAVID D PLATER &**
**SHEELA BURKE PLATER**

**Statement Period**
**July 1-31, 2015**

**Account Number** ▮▮▮▮▮

## Investment Detail - Equities (continued)

### Equities (continued)

| | Quantity Units Purchased | Market Price Cost Per Share | Market Value Cost Basis | % of Account Assets Acquired | Unrealized Gain or (Loss) | Estimated Yield Holding Days | Estimated Annual Income Holding Period |
|---|---|---|---|---|---|---|---|
| **SILVER WHEATON CORP** F | | | | | | | |
| SYMBOL: SLW | 1,200.0000 | 13.0800 | 15,696.00 | <1% | (18,265.30) | 1.52% | 240.00 |
| | 200.0000 | 30.0469 | 6,009.38 | 05/02/12 | (3,393.38) | 1185 | Long-Term |
| | 300.0000 | 30.0459 | 9,013.77 | 05/02/12 | (5,089.77) | 1185 | Long-Term |
| | 200.0000 | 28.5427 | 5,708.55 | 05/04/12 | (3,092.55) | 1183 | Long-Term |
| | 200.0000 | 26.4627 | 5,292.55 | 05/11/12 | (2,676.55) | 1176 | Long-Term |
| | 300.0000 | 28.4568 | 7,937.05 | 08/28/13 | (4,013.05) | 702 | Long-Term |
| Cost Basis | | | 33,961.30 | | | | |

U.S. POSTAGE PAID
FCM LETTER
MAY 01 '20
AMOUNT
$0.70
R2304Y122713-24

UNITED STATES POSTAL SERVICE
1000

MAY 08 2020

Sloan Wheaton Corp. Jt Trustee
c/o Stratton Claim Services
600 N. Dearborn St. Ste 205
P.O. Box 230
Media,

John W. Downey

In re Silver Wheaton Corp.
Securities Litigation Case
No. 15-CV-5146-CAS-PJWx

MAY 29, 2020

Clerk of the Court
United States District Court
Central District of California
First Street U.S. Courthouse
350 W. 1st Street, Suite 4311
Los Angeles, CA 90012

Dear Clerk of the Court:

I am an 84-year old person who is being
discriminated against, because my age group
usually lacks confidence in Computer filings.
Attached is Page 7 indicating that I am being
penalized because of my age:

IF YOU SUBMIT YOUR PROOF OF CLAIM
AND RELEASE FORM BY MAIL, YOUR
RECOGNIZED CLAIM WILL BE REDUCED
BY $5 OR 1%, WHICHEVER IS GREATER.

Would you please order the Claims Administrator
to discontinue this illegal action, and pay
my claim in the same manner as
the younger Computer-Savvy will be paid.

Thank you for your courtesy and consideration with my request.

Sincerely,

JOHN W. DOWNEY

CC: ① Silver Wheaton Defendants Counsel
Gregory L. Watts
Wilson Sonsini Goodrich & Rosati, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104

② Plaintiff's Counsel
Jonathan Horne
The Rosen Law Firm, P.A.
275 Madison Avenue, 40th Floor
New York, NY 10016

③ Deloitte's Counsel
Lee G. Dunst
Gibson, Dunn & Crutcher, LLP
200 Park Avenue
New York, NY 10166

SILVER WHEATON

**IF YOU CHOOSE TO FILE YOUR CLAIM BY MAIL, THIS PROOF OF CLAIM AND RELEASE FORM MUST BE POSTMARKED NO LATER THAN JUNE 13, 2020 AND MUST BE MAILED TO:**

Silver Wheaton Corp. Litigation
c/o Strategic Claims Services
600 N. Jackson St., Ste. 205
P.O. Box 230
Media, PA 19063
Tel.: 866-410-3013
Fax: 610-565-7985
info@strategicclaims.net

**IF YOU SUBMIT YOUR PROOF OF CLAIM AND RELEASE FORM BY MAIL, YOUR RECOGNIZED CLAIM WILL BE REDUCED BY $5 OR 1%, WHICHEVER IS GREATER, TO ACCOUNT FOR INCREASED ADMINISTRATION COSTS INCURRED IN PROCESSING HARD-COPY CLAIMS.**

A Proof of Claim and Release Form received by the Claims Administrator shall be deemed to have been submitted when posted, if mailed by June 13, 2020 and if a postmark is indicated on the envelope and it is mailed first class and addressed in accordance with the above instructions. In all other cases, a Proof of Claim and Release Form shall be deemed to have been submitted when actually received by the Claims Administrator.

You should be aware that it will take a significant amount of time to process fully all of the Proof of Claim and Release Forms and to administer the Settlement. This work will be completed as promptly as time permits, given the need to investigate and tabulate each Proof of Claim and Release Form. Please notify the Claims Administrator of any change of address.

## REMINDER CHECKLIST

o   Please be sure to sign this Proof of Claim and Release Form on page 7. If this Proof of Claim and Release Form is submitted on behalf of joint claimants, both claimants must sign.
o   Please remember to attach supporting documents. Do NOT send any stock certificates. Keep copies of everything you submit.
o   Do NOT use highlighter on the Proof of Claim and Release Form or any supporting documents.
o   If you move or change your address, telephone number or email address, please submit the new information to the Claims Administrator, as well as any other information that will assist us in contacting you. NOTE: Failure to submit updated information to the Claims Administrator may result in the Claims Administrator's inability to contact you regarding issues with your claim or delivery of payment to you.

7



Lee G. Dunst
Deloitte's Counsel
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, NY 10166

RECEIVED

JUN 0 9 REC'D

BY:

John W. Downey

D