# Exhibit 3

OSLER

# Obtaining Evidence in Canada For Use in U.S. Litigation

Osler, Hoskin & Harcourt LLP



# Obtaining Evidence in Canada For Use in U.S. Litigation

By:

Christopher Naudie
Éric Préfontaine
Kevin O'Brien
Carly Fidler[1]

---

[1] The authors are lawyers in Osler, Hoskin & Harcourt LLP's litigation department with extensive experience in cross-border actions.

**Osler, Hoskin & Harcourt LLP**

# Table of Contents

**A.   Introduction** ................................................................................................ 1

**B.   Differences Between U.S. and Canadian Civil Justice Systems** ................... 1

    1.   *Jurisdiction of Federal and Provincial (State) Courts* ............................ 1

    2.   *Judicial Selection Process* ...................................................................... 2

    3.   *Recourse to Jury Trials in Civil Cases* .................................................... 3

    4.   *Discovery Process* .................................................................................. 3

        (a)   Form of Discovery in Canada ........................................................ 3

        (b)   Documentary Discovery ................................................................ 3

        (c)   Examination for Discovery ............................................................ 4

        (d)   Discovery of Non-Parties ............................................................... 5

        (e)   Use of Evidence Obtained on Discovery ....................................... 5

**C.   Process for American Litigants Seeking to Obtain Evidence in Canada** ...... 6

    1.   *Policy Considerations* ............................................................................ 6

    2.   *The Statutory and Discretionary Factors* .............................................. 8

        (a)   The evidence sought is relevant ..................................................... 9

        (b)   The evidence is necessary for pre-trial discovery or trial of the U.S. action ......... 10

        (c)   The evidence cannot otherwise be obtained ............................... 10

        (d)   The order sought is not contrary to Canadian public policy ...... 11

        (e)   Documents sought are reasonably specified ............................... 12

        (f)   The order sought is not unduly burdensome ............................... 12

    3.   *Note on Potential Cost Consequences* ................................................. 13

**D.   Conclusion** ................................................................................................ 13

## A. Introduction

Given the extent of economic integration between Canada and the U.S., and the resulting potential for U.S.-based litigation to implicate a Canadian business or resident, it is relatively common for American litigants to find themselves interacting with the Canadian judicial system. In those cases, American lawyers will likely recognize the Canadian system as quite similar to their own. However, there are several important differences between the two regimes. These differences can be of particular importance for an American litigant seeking to obtain evidence (either oral or documentary) located in Canada for use in a U.S. proceeding.

While there is no treaty governing the taking of evidence in civil matters as between Canada and the U.S.,[2] Canadian courts can and generally will assist American litigants in compelling evidence from Canadians in the form of testimony, statements, or documents. This paper is designed as a high-level reference guide for U.S. counsel seeking to obtain evidence located in Canada for use in U.S. litigation. By way of background, we will first provide a brief overview of some of the relevant differences between the Canadian and American civil justice systems, with a particular focus on differences in the discovery processes that may bear directly on an effort to obtain evidence. We will then describe the process for obtaining evidence in Canada, highlighting procedural and practical considerations that U.S. counsel should keep in mind.

## B. Differences Between U.S. and Canadian Civil Justice Systems

Despite their overall similarities and shared roots in U.K. common law, there are several important distinctions between the Canadian and U.S. civil regimes. Those that may be most readily apparent to a U.S. litigator are discussed below.

1.          *Jurisdiction of Federal and Provincial (State) Courts*

Just as the U.S. has both federal and state court systems, Canada has both federal and provincial court systems. The most significant difference between the two is in how jurisdiction is divided.

Similar to the judicial systems that exist in the various U.S. states, there is a separate judicial system in each Canadian province. Within each province there is a trial court of general jurisdiction, commonly known as the "provincial superior court". Depending on the province, there may also be other provincial courts with specialized jurisdiction (*e.g.* small claims, family and criminal). In addition, within each province, there are intermediate and/or final provincial appellate courts that hear appeals from the provincial superior courts.

However, the provincial superior courts have three qualities that distinguish them from state courts in the U.S. First, the provincial superior courts are a hybrid federal creation, since the

---

[2]     Canada is not a signatory to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters [Hague Convention on the Taking of Evidence].

**Osler, Hoskin & Harcourt LLP**                              -1-

judges are appointed by the federal government but the courts are administered by the provincial government. Second, the provincial superior courts have general jurisdiction over matters of both provincial and federal law. Third, the provincial superior courts are subject to appeals to the Canadian court of final resort, namely, the Supreme Court of Canada. As such, and in contrast to the U.S., a provincial appellate court is not the final arbiter of provincial law in Canada; the Supreme Court of Canada has full authority to decide matters of provincial and federal law.

There is also a separate federal court system in Canada, which consists of courts that are appointed by and administered by the federal government. However, the jurisdiction of Canadian federal courts is quite limited, particularly in comparison to federal courts in the U.S. As a general proposition, the Federal Court of Canada's jurisdiction is restricted to those subject matters conferred upon it by statute, such as tax disputes, maritime law, immigration and refugee matters, and most intellectual property right cases.[3] In other words, absent some exceptional circumstances, a federal court in Canada would not have the competence to adjudicate matters arising under provincial law, including contractual disputes.

As a result of these features, most commercial cases and criminal trials in Canada are conducted before the provincial superior courts. A (very) simplified outline of Canada's court system is set out below:



2.  *Judicial Selection Process*

In addition to the differences in structure and jurisdiction between the court systems in Canada and the U.S., the process for judicial selection is also markedly distinct. All Canadian judges are appointed, as opposed to the U.S. where state judges may be elected. The federal government

---

[3] Peter W. Hogg, *Constitutional Law of Canada*, loose-leaf (consulted on 7 August 2012), 5th ed (Toronto: Carswell), ch 7 at 1-8, 26-28.

appoints judges to the provincial superior and appellate courts, as well as to the Federal Court, Federal Court of Appeal, and the Supreme Court of Canada. All judges of the provincial courts are appointed by the provincial governments.

3. *Recourse to Jury Trials in Civil Cases*

Almost all civil cases in Canada are tried by judges without a jury. The right to a jury trial for civil litigants in Canada is much more restricted than the constitutional rights enjoyed by litigants in the U.S. In most provinces, a party to a civil action in Canada may request a jury, but even when the claims at issue are permitted to be tried before a jury,[4] courts have broad discretion to strike the jury and proceed with a bench trial. In Québec, jury trials are not available in civil cases at all. It is generally accepted in Canada that it is not appropriate to have a jury decide cases involving complex legal or factual disputes, and instead these cases should be determined by a judge.

4. *Discovery Process*

For American litigants seeking to obtain evidence in Canada, the most significant difference between the two systems is the nature and scope of discovery. As stated above, the majority of civil claims in Canada are pursued in the provincial superior courts. Therefore, the Canadian discovery process is generally governed by provincial rules of civil procedure. Each province has its own rules of civil procedure but, with the exception of Québec, the rules are similar across the provinces.

    (a)    <u>Form of Discovery in Canada</u>

Requests for production and interrogatories, as they are used in American proceedings, are not a part of the discovery process in Canada. The discovery process in Canadian civil litigation has two principal components: document exchange and oral discovery (the latter referred to as "examination for discovery" as opposed to "deposition"). These are discussed below.

    (b)    <u>Documentary Discovery</u>

In most Canadian provinces, parties have a duty to search for and disclose all documents in their possession or under their control that are relevant to the issues in the action. As such,

---

[4] For example, in Ontario, section 108(2) of the *Courts of Justice Act*, R.S.O. 1990, c. C-43 lists the types of claims that cannot be tried by a jury which include claims for injunctive relief, partition or sale of real property, dissolution of a partnership, foreclosure or redemption of a mortgage, execution of a trust, specific performance, declaratory relief, and claims against municipalities.

unless the other side takes issue with the substance of the disclosure, the parties' own determination of what is relevant will stand.[5]

Importantly, the scope of discovery is also much narrower in Canada. Unlike the U.S., where information is considered discoverable as long as it is reasonably calculated to lead to the discovery of admissible evidence, to be discoverable in Canada information must actually be *relevant* to material facts at issue in the dispute. As a result, the volume of information exchanged between the parties is quite often significantly less in Canada than it would be in the U.S.

    (c)    <u>Examination for Discovery</u>

In all Canadian jurisdictions, a party has the right to examine for discovery any opposing party. In the case of a corporation, only one representative may be examined. Additional witnesses may only be examined with leave of the court, which can be difficult to obtain.

An examination for discovery may take place in person or by way of written questions and answers, but not by both, except with leave of the court. In practice, written examinations in Canada are rare.

All parties to the litigation, or their representative, are entitled to be present during an examination for discovery. In much the same way as a deposition, all evidence given during the examination is under oath and with a court reporter present for the purpose of creating a transcript. Examinations for discovery may be videotaped on consent or with leave of the court, but this practice is not common in Canada.

The scope of what is relevant in an examination for discovery is defined by the pleadings,[6] and the witness (*i.e.* deponent) may be asked questions relevant to any matter in issue as framed by the pleadings. To that end, a witness has a duty to make efforts to inform him or herself of the facts at issue in the litigation, and is required to give his or her knowledge, information, and belief in response to questions asked. A witness may also be required to disclose the names and last known contact information of persons who might reasonably be expected to have knowledge of transactions or occurrences in issue in the proceeding.

During the examination, a witness may be required to give an "undertaking" to provide, at some later date, answers to relevant questions asked during the examination that he or she cannot personally answer, or copies of relevant records requested that have not already been

---

[5] One exception is Québec, where disclosure of documents is only made upon specific request of the party seeking to obtain them. The request can take place both before the examination for discovery (by way of subpoena) and afterwards (by way of undertaking).

[6] In a typical action, these include a Statement of Claim (*i.e.* Complaint), Statement of Defence (*i.e.* Answer) and Reply.

produced. These undertakings take a similar form to written interrogatories in the U.S. The role of undertakings in Canada is particularly important in complex civil litigation given that, absent leave, only one representative of each corporate party can be examined.

The Canadian approach to objections is also different than that of the U.S. The general practice in most Canadian jurisdictions is for counsel for the party being examined to note their objection to a question on the record, and to instruct the witness not to answer it. Disputes are then generally resolved on a motion to court prior to trial, with the judge ruling on whether an answer to the question must be provided (this is generally called a "refusals motion"). Therefore, in contrast to the common practice in the U.S., a discovery witness is Canada is generally not required to answer any question that has been subject to an objection, unless or until there has been a ruling from the court directing the witness to do so.

(d) <u>Discovery of Non-Parties</u>

It is considerably more difficult to obtain documents and testimony from non-parties in Canada than it is in the U.S. To be entitled to examine or obtain documents from a non-party in Canada, litigants must first obtain leave of the court and must show that a non-party's evidence is sufficiently relevant to a material issue in the action. The court must also be satisfied that the party seeking the discovery of the non-party could not obtain the information elsewhere, that it would be unfair to require a party to proceed to trial without this information, and that the non-party discovery will not lead to undue delay or unreasonable expense.

(e) <u>Use of Evidence Obtained on Discovery</u>

In Canada, evidence obtained through discovery in a civil proceeding cannot generally be used in other proceedings or for other purposes. Most jurisdictions in Canada impose a default legal obligation on the respective parties not to use or disclose documents and information obtained during discovery for any purpose other than use in the proceeding in which it was obtained (this is often referred to as the "deemed undertaking rule", even though many provinces have now formally codified it in their procedural rules).[7] Due to the existence of this rule, Canadian courts issue protective or confidentiality orders much less frequently than courts in the U.S.[8]

---

[7] While the rule has not been expressly codified in Québec, the Supreme Court of Canada has held that it is nevertheless implied: *Lac d'Amiante du Québec Ltée v. 2858-0702 Québec Inc.*, [2001] 2 S.C.R. 743.

[8] There are exceptions to the deemed undertaking rule. For example, it does not apply if the information or evidence is already known to a party, or is known to a party through some means other than through the discovery process. In addition, it will no longer apply once evidence has been publicly filed in court.

## C. Process for American Litigants Seeking to Obtain Evidence in Canada

1.  *Policy Considerations*

There are no statutes or rules in Canada that bar or restrict foreign litigants from taking evidence from a willing person in private civil matters, and this routinely occurs without court involvement. The difficulty arises when a Canadian resident or corporation is unwilling to provide evidence for use in a U.S. proceeding. As noted above, Canada is not a signatory to the Hague Convention on the Taking of Evidence. As such, parties seeking to compel evidence located in Canada for use in a U.S. proceeding must do so by obtaining and enforcing letters of request *i.e.* letters rogatory.

First, the U.S. litigant must obtain a letter of request from a U.S. court, formally seeking the Canadian court's assistance in obtaining evidence from a Canadian witness.[9] The U.S. litigant must then apply to a Canadian court to seek to have the request enforced.

In general, Canadian courts will seek to enforce letters of request out of respect for the comity of nations and deference to decisions of foreign courts.[10] Further, the decision whether to do so is at a Canadian judge's discretion. Canadian courts, however, will not simply "rubber stamp" such requests.[11] Instead, judges typically look at the underlying reasons why the foreign court issued the request, and will only give effect to the request if it meets Canadian legal requirements and is not contrary to Canadian public policy. In considering the impact on Canadian public policy, the courts will be mindful of the fact that discovery rules in Canada are much more narrower than the comparable rules in the U.S.

More specifically, in exercising their discretion on an application to enforce letters of request, the courts in Canada will typically balance two broad considerations: "the impact of the proposed order on Canadian sovereignty" and "whether justice requires that the taking of

---

[9] As this paper is focused on assisting U.S. counsel in obtaining evidence through the Canadian court system, the process for bringing the initial motion in U.S. courts is not discussed.

[10] *Zingre et al. v. The Queen* [1981] 2 S.C.R. 392 at 401 [*Zingre*]: "It is upon this comity of nations that international legal assistance rests [...] A foreign request is given full force and effect unless it be contrary to the public policy of the jurisdiction to which the request is directed […] or otherwise prejudicial to the sovereignty or the citizens of the latter jurisdiction."

[11] See the following for examples of where courts have refused to enforce letters of request: *Fecht v. Deloitte & Touche* (1996), 28 O.R. (3d) 188 (Ct. J. – Gen. Div.) [*Fecht*], aff'd (1997), 32 O.R. (3d) 417 (C.A.); *Presbyterian Church of Sudan (Re)* (2006), 275 D.L.R. (4th) 512 (Ont. C.A.) [*Presbyterian Church*]; and *J2 Global Communications Inc. v. Protus IP Solutions Inc.*, 2010 QCCS 1052.

commission evidence be ordered."[12] This balance can be trickiest in circumstances where an American litigant seeks to obtain evidence from a Canadian non-party. As noted above, Canadian courts are considerably more reluctant than U.S. courts to allow for discovery of non-parties. However, the circumstances under which a Canadian court may enforce letters of request seeking to obtain evidence from non-parties should not be more rare than those in which a similar request may emanate from Canada to a court in the U.S. Importantly, a Canadian court is *not* required to confine its exercise of its discretion to circumstances in which it would make an order for discovery of non-parties in a purely *domestic* proceeding.[13] For example, in Ontario, rule 31.10 of the *Rules of Civil Procedure* outlines the requirements necessary for an Ontario court to grant leave to a party seeking examination for discovery of a non-party. While a Canadian court is not limited to granting of letters of request that only meet this criteria, these requirements may serve as "useful guideposts".[14]

Because the decision as to whether to enforce letters of request is entirely at the Canadian judge's discretion, the chances of having letters of request enforced in Canada are higher if the U.S. litigant addresses the specific factors underlying that discretion. It is therefore important that the materials and argument before not only the Canadian court, but the U.S. court on the initial motion,[15] address the statutory and discretionary factors a Canadian court will consider when deciding whether or not to enforce the request. These statutory and discretionary factors are discussed in the next section.

Another reason the materials filed on the initial motion in the U.S. will be important is that they will convey the scope of the requested discovery, and a Canadian court will assess that scope

---

[12] *Ontario Public Service Employees Union Pension Trust Fund (Trustees of) v. Clark* (2006), 270 D.L.R. (4th) 429 (C.A.) at 434-435 [*Clark*]; *Fecht v. Deloitte & Touche* (1997), 32 O.R. (3d) 417 (C.A.) at paras. 30, 48 [*Fecht* Appeal] citing *France v. DeHavilland* (1991), 3 O.R. (3d) 705 at 718.

[13] *Fecht*, *supra* note 11 at para. 25: "I conclude, therefore, that the circumstances in which an Ontario court will grant an order enforcing letters rogatory for purposes of pre-trial discovery of non-parties should not be any rarer, at least, than those in which a similar request might emanate from an Ontario court to a foreign jurisdiction. At the same time, the authorities support the proposition that the enforcement of letters rogatory by an Ontario court will not be limited to those in which an Ontario court would make an order for discovery of non-parties".

[14] *AstraZeneca v. Wolman*, [2009] O.J. No. 5344 at para. 20 citing *Fecht*, *supra* note 11 at para. 26: "While the court need not confine the exercise of its discretion in favour of enforcing letters rogatory where non-parties are the target of the request to those circumstances in which the requirements of Rule 31.10 have been met, those requirements can serve as useful guideposts because they contain within them elements which are acknowledged to be important criteria for determining whether an order should be granted to give effect to letters rogatory, and they also contain within them elements which are encompassed in the "Canadian sovereignty" aspect of the comity analysis with respect to letters rogatory".

[15] A Canadian judge will almost certainly look to the material before the U.S. court to understand the relevance or necessity of the evidence-gathering sought in Canada.

against Canadian law principles of discovery *i.e.* the "relevance" standard. Therefore, overly broad requests that may be perfectly answerable in the U.S. may be held to be "fishing expeditions" in Canada.

When drafting a letter of request to examine a Canadian orally, American litigants should be aware that, unless provided for differently in the letter of request, Canadian law will govern the examination for discovery conducted in Canada. American litigants can be granted the right to conduct an oral examination of a Canadian under the U.S. *Federal Rules of Civil Procedure*, provided however it is properly set out in the letter of request.

2.        *The Statutory and Discretionary Factors*

Following the issuance of the letter of request, the American litigant must bring an application for an order to enforce the request to a Canadian court located in the province where the requested witness resides. This application must be accompanied by the letter of request issued by the U.S. court and should be supported by one or more sworn affidavits outlining why a Canadian court should grant an order to enforce the letter of request. The application to a Canadian court must be filed and served by a lawyer licensed in that province.

The application for the enforcement of a U.S. letter of request is brought pursuant to the *Canada Evidence Act* and/or the various provincial evidence acts.[16] Under section 46 of the *Canada Evidence Act*, courts in Canada may respond to such requests and order an examination or compel production of documents. Similar provisions exist in the provincial legislation.

Canadian courts may give effect to a U.S. court's letter of request *only if* the following statutory preconditions are met:

(i)     a U.S. court has authorized the obtaining of evidence;

(ii)    the witness whose evidence is sought is within the Canadian court's jurisdiction;

(iii)   the evidence sought relates to a proceeding pending before the U.S. court; and

(iv)    the U.S. court is a court of competent jurisdiction.[17]

Once these preconditions are met, the Canadian court then has the discretion to grant or deny a request. In exercising its discretion, the Canadian court shall consider whether:

---

[16]   It is common practice when bringing an application for enforcement of a foreign letter of request, to rely on both section 46 of the *Canada Evidence Act* and the relevant section in the corresponding provincial statute.

[17]   *Canada Evidence Act*, s. 46(1); Ontario *Evidence Act*, s. 60(1); Québec *Special Procedures Act*, s. 9.

**Osler, Hoskin & Harcourt LLP**              -8-

(i) the evidence sought is relevant;

(ii) the evidence is necessary for pre-trial discovery or trial of the U.S. action;

(iii) the evidence cannot otherwise be obtained;

(iv) the order sought is not contrary to Canadian public policy;

(v) documents sought are reasonably specified; and

(vi) the order sought is not unduly burdensome.[18]

The affidavit(s) filed in support of the application for an order enforcing the letter of request should address all of the above factors. Further, while these are the factors most commonly cited as bearing upon a request for an order giving effect to letters of request, this is not an exclusive list. A Canadian court's analysis of these factors is also informed by the balance of "the impact on Canadian sovereignty and whether justice requires the taking of commission evidence"[19] as addressed above.

The discretionary factors are discussed individually below.

(a)   The evidence sought is relevant

The purpose of the relevancy requirement is to guard against "fishing expeditions".[20] A Canadian court will place the burden on the U.S. applicant to demonstrate, on a balance of probabilities, that the evidence sought in Canada is "likely relevant" to the determination of a claim or defence in the U.S. proceeding.[21]

In assessing whether the applicant has met the relevance requirement, a Canadian court will focus on the issues raised in the U.S. litigation and their connection to the evidence sought in

---

[18] *McFadden Lyon Rouse LLC v. Lookkin*, 2012 ONSC 2243 at para. 17. See also, *Friction Division Products, Inc. and E. I. Du Pont de Nemours & Co. Inc. et al. (No. 2)* (1986), 56 O.R. (2d) 722 (H.C.J.) at para. 25 [*Friction*], and *Ludmer v. Ludmer*, 2009 QCCA 1414 at para. 38.

[19] *Connecticut Retirement Plans and Trust Funds v. Buchan*, 2007 ONCA 362 at para. 7 [*Connecticut Retirement Plans*].

[20] *AstraZeneca, supra* note 14 at para. 23 citing *Presbyterian Church, supra* note 11 at para. 31: "Demonstrating relevance serves to guard against fishing expeditions and requiring a Canadian citizen to participate in a process that may be of no assistance to the foreign litigation".

[21] *Connecticut Retirement Plans, supra* note 19 at para. 10: "In using the phrase "likely relevant" in para. (a), the application judge was simply applying the first criterion [...] relevance, on a balance of probabilities."

Canada. Specifically, a Canadian court will look to the U.S. ruling on the issuance of the letter of request as well as the affidavit evidence filed in support of the application for the enforcement of the request when assessing relevance. It is helpful for the Canadian court to have before it copies of the pleadings in the U.S. litigation and a clear explanation as to the relevance of each document (or category of document) sought or proposed areas of examination to the U.S. litigation. Broadly worded letters of request containing boilerplate language unsupported by evidence are less likely to be enforced or may be altered by a Canadian court to allow for examination or production on a narrower basis.[22]

### (b) The evidence is necessary for pre-trial discovery or trial of the U.S. action

The criterion that the evidence sought is necessary for the U.S. litigation is closely tied to the applicant's ability to demonstrate that the evidence is relevant (discussed above) and not otherwise obtainable (discussed below).[23] Ultimately, necessity refers to whether the person or corporation being examined is the lone source of the information being sought. Canadian courts will consider whether it is necessary for the proposed witness to be examined, and whether it would be unfair to force a party to proceed to trial in the U.S. proceeding without the requested evidence. Canadian courts will inquire whether the person or corporation possesses "unique and specific knowledge touching on the matters complained of".[24]

Again, it is important that the material before the Canadian court outlines the *specific* factual and legal issues in the U.S. litigation and emphasizes that the evidence requested is necessary to allow the U.S. court to justly determine the issue before it.

### (c) The evidence cannot otherwise be obtained

This factor requires the consideration of whether the evidence sought is uniquely possessed by the targeted witness. However, "[e]vidence being otherwise unavailable does not mean no

---

[22] *Pecarsky v. Lipton Wiseman Altbaum & Partners*, [1999] O.J. No. 2004 at paras. 17-18 [*Pecarsky*]: "[...] the letter of request is overly broad. There are many items sought by the letter of request that are of marginal relevance [...] Others bear no relevance to the issues [...] However, the mere fact that the letter of request may be overly broad is not necessarily, and in and of itself, a reason for not enforcing the letter of request [...] [C]ourts in Ontario do have the power to narrow the request contained in the letter of request to that which the court views as relevant."

[23] *Presbyterian Church*, *supra* note 11 at para. 31: "The importance of these criteria is perhaps obvious. Without some showing of relevance, the court may be sanctioning a fishing expedition and requiring one of its citizens to participate in a process that may be of no assistance to the foreign litigation. The need to establish necessity serves much the same purpose, but is also closely related to the requirement that the evidence sought not be otherwise obtainable."

[24] *Clark*, *supra* note 12 at 435.

**Osler, Hoskin & Harcourt LLP**                     -10-

evidence on the subject in issue is otherwise available."[25] Instead, it should be considered whether "evidence of the same value as that sought from the person to be examined cannot otherwise be obtained".[26] Canadian courts will consider both the unique value of the evidence being sought in Canada and whether the witness from which the evidence is being sought is a unique source of this evidence.

In support of this requirement, an applicant should adduce evidence on the steps it has taken to obtain the evidence cooperatively or from other parties to the U.S. litigation (*e.g.* copies of any relevant correspondence), as well as evidence about the unique knowledge of the witness (*e.g.* that witness's particular role in factual matters at issue in the proceeding, or role and responsibilities within a company).

### (d) The order sought is not contrary to Canadian public policy

Canadian courts will not enforce letters of request that violate Canadian public policy either because of the object of the U.S. proceeding or because of the nature or scope of the evidence sought.[27] In general, a Canadian court will assess whether the request is contrary to the witness' constitutional rights, whether the request affects the rights of other third parties, and whether the request seeks to impose obligations on third parties that substantially exceed those they would have if the underlying litigation took place in Canada. In circumstances where a request would violate Canadian public policy if enforced, a Canadian court may, in exercising its discretion, amend, narrow, or place terms and conditions on the enforcement of letters of request instead of dismissing the application for enforcement altogether.[28]

The most common public policy concerns arise when the granting of an order would compel evidence which would constitute a breach of a fiduciary duty or a violation of confidentiality or privilege. In these circumstances, a Canadian court may order that the witness be entitled to the

---

[25] *AstraZeneca*, *supra* note 14 at para. 27.

[26] *Connecticut Retirement Plans*, *supra* note 19 at para. 19.

[27] *Zingre*, *supra* note 10 at 401: "A foreign request is given full force and effect unless it be contrary to the public policy of the jurisdiction to which the request is directed [...] or otherwise prejudicial to the sovereignty or the citizens of the latter jurisdiction."

[28] *Pecarsky*, *supra* note 22 at para. 37: "[...] I see no reason in principle why this Court, in the exercise of its discretion as to whether or not to enforce a letter of request, ought not to be able to place terms or conditions on the enforcement if it is of the opinion that such terms or conditions are necessary to do justice. It seems to flow naturally and logically from the same principle by which this court can narrow the request sought in the letter of request."

same protection that he or she would be granted if examined in a Canadian proceeding, including that all parties comply with the deemed undertaking rule discussed above.[29]

There are also statutory limits on the production of evidence for use in foreign proceedings. For example, the Ontario *Business Records Protection Act* protects potentially sensitive commercial information and may prevent the production of business records for use in litigation outside of Canada. Canadian courts have held that such legislation may be successfully invoked as a means of defending against orders issued pursuant to letters of request from foreign courts.[30]

    (e)    <u>Documents sought are reasonably specified</u>

The documents sought in the letter of request must be sufficiently identified. The degree of specificity required to meet this requirement will necessarily depend on the circumstances of each case. In as many circumstances as possible, documents should be identified by specific identification or, if necessary, by class.[31]

    (f)    <u>The order sought is not unduly burdensome</u>

Canadian courts will consider the time, effort, and expense required of witnesses if the letter of request was enforced. The courts will assess how this burden compares to the obligations the witness would have if the evidence was sought under Canadian rules.[32] Canadian courts may

---

[29] *Pecarsky*, *supra* note 22 at para. 30: "There cannot be any doubt that if such discovery was being sought from a non party who was in Ontario, the provisions of rule 30.1 would protect that party from such a use of the documents. I cannot see any rational or logical reason why a party who is subject to an application to enforce letters of request from a foreign court should be granted any less protection that it would be entitled to if subject to the same request in a proceeding in our court. To do otherwise, it seems to me, is to ignore that part of the test for enforcing a letter of request which requires that it not be contrary to our public policy or otherwise be prejudicial to the sovereignty of Ontario or its citizens."

[30] *Germany (Federal Republic) v. Canadian Imperial Bank of Commerce* (1997), 31 O.R. (3d) 684 at paras. 36-38: The court found that the request in this case did not violate the Ontario *Business Records Protection Act*.

[31] *AstraZeneca*, *supra* note 14 at para. 28: "Documents sought must be sufficiently identified, either by way of specific identification or by class [...] The degree of specificity required to meet this threshold may vary according to the circumstances of each case."

[32] *Friction*, *supra* note 18 at para. 34: "I do not think the two proposed witnesses are being asked to do anything which can be said to be burdensome or oppressive, measured against the witnesses' obligations in Ontario were this matter to be tried here."

also seek to alleviate the burden placed on witnesses by narrowing the scope of the request and/or ordering that the cost of producing the evidence be shared in part by the applicant.[33]

3.  *Note on Potential Cost Consequences*

Another reason why it is important that American litigants seeking to enforce letters of request in a Canadian court ensure that they meet the Canadian requirements for enforcement are the costs consequences for a party who successfully opposes issuance or enforcement of letters of request. In civil litigation matters in Canada, the court has broad discretion in awarding costs. However, the successful party on a motion will usually be entitled to receive a portion of its legal costs from the opposing party.[34]

## D. Conclusion

Canadian courts generally will try to assist American litigants who seek recourse to the Canadian legal system to obtain evidence from a Canadian for use in a U.S. proceeding. However, the process for enforcing a letter of request in Canada is far from a "rubber stamp", and understandably requires familiarity with not only Canadian procedural rules but fundamental principles of the Canadian discovery process. To that end, it is of great benefit for U.S. counsel to consult or retain Canadian counsel as soon as possible in the evidence-obtaining process, ideally even before preparing the materials for the motion in the U.S. to obtain the letter of request.

---

[33] *AstraZeneca*, *supra* note 14 at paras. 44, 49: "[The witness] objects to the overbreadth of these definitions which, when combined, would place significant obligations on him to search for documents. [...] In light of that evidence, I think the definition of "Documents" and the scope of section 5 of the Definitions and Instructions need to be narrowed in order to prevent imposing undue burdens".

[34] In practice, such costs awards are normally a fraction of the actual legal costs incurred by a party, but can still be substantial. In Québec, costs are established by tariff and have not been increased since 1981.

**Osler, Hoskin & Harcourt LLP** -13-

**Additional Resources**

Canada-United States Committee of the American College of Trial Lawyers, *Cross Border Litigation Manual* (California: American College of Trial Lawyers, 2010).

Christopher K. Tahbaz et al, "International Discovery: Around the World in Ninety Minutes" (Paper delivered at the ABA Annual Meeting, Section of Litigation, 7-10 August 2008).